**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Aung DOE, Nina DOE, Thura DOE, Khin Thet DOE, Chu Let DOE, and Maung DOE, on their own behalf and on behalf of others similarly situated, <br><br> *Plaintiffs*, <br><br> – versus – <br><br> Kristi NOEM, Secretary, United States Department of Homeland Security, in her official capacity; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; and UNITED STATES OF AMERICA, <br><br> *Defendants*. | **Case No.** 25-cv-15483 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYMS AND MAINTAIN THE FILED DESIGNATION SHEET UNDER SEAL**

Plaintiffs are six nationals of Burma who currently reside in the United States under the protection of Temporary Protected Status ("TPS"). Plaintiffs respectfully move this Court for leave to proceed under pseudonyms and to maintain their filed non-pseudonymous designation sheet (civil cover sheet) under seal. Counsel for the Defendants consents to this motion and good cause exists for such relief.

First, as the Seventh Circuit has recognized, pseudonymity is appropriate where, as here, public disclosure of Plaintiffs' identities would subject them to a substantial risk of retaliation by government officials. Second, should Plaintiffs be removed to Burma, their participation in this litigation, which highlights violent political repression by the Burmese military regime, would expose them to a credible and severe threat of physical harm, detention, or other forms of persecution. Third, this matter necessarily implicates Plaintiffs' immigration status and other highly sensitive personal information, the disclosure of which would invade their privacy and potentially compromise their safety. Fourth, permitting pseudonyms will not prejudice Defendants, as the crux of this case is class-wide legal questions, where anonymity will not impair their ability to defend against the claims asserted. Fifth, the public maintains a strong interest in judicial review of government actions affecting vulnerable immigrant communities—a public interest that would be chilled if individuals with legitimate claims were deterred from coming forward due to fear of exposure.

In sum, the totality of factors considered by the Seventh Circuit in evaluating pseudonym requests—including the gravity of the harm risked, the vulnerability of the parties, and the absence of prejudice to the opposing party—strongly favor granting Plaintiffs' request.

## ARGUMENT

Although the general rule under Federal Rule of Civil Procedure 10(a) requires that the names of all parties be stated in the complaint, courts retain discretion to permit parties to proceed anonymously where warranted by exceptional circumstances. *Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 658 F.3d 710, 724 (7th Cir. 2011)*, vacated on other grounds,* 687 F.3d 840 (7th Cir. 2012). "The presumption that parties' identities are public information… can be rebutted by showing that the harm to the plaintiff… exceeds the likely harm from concealment." *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004).

2

Although the Seventh Circuit has not established a specific test for this inquiry, the non-exhaustive factors relevant to this determination include but are not limited to:

1. whether the litigation involves matters that are highly sensitive and of a personal nature;

2. the risk of retaliatory physical or mental harm—or other harms—if the plaintiff's identity is disclosed;

3. whether the plaintiff is particularly vulnerable;

4. whether the suit challenges actions of the government or of private parties;

5. whether denying the motion would increase the likelihood that similarly situated plaintiffs would be chilled from bringing similar claims;

6. the nature and extent of any prejudice to the defendants from anonymity;

7. whether the plaintiff's identity has been kept confidential to date;

8. the strength of the public's interest in disclosure; and

9. whether alternative mechanisms exist to protect the plaintiff's confidentiality.

*Doe v. Cook Cnty., Illinois,* 542 F. Supp. 3d 779, 784 (N.D. Ill. 2021).

Federal courts across the country have applied these principles to protect vulnerable noncitizens litigating against the government, particularly when disclosure would expose them to serious risks such as deportation, detention, or targeted retaliation. *See, e.g.*, *Hisp. Int'l Coal. of Ala. v. Governor of Ala.*, 691 F.3d 1236, 1247 n.8 (11th Cir. 2012); *Lozano v. City of Hazleton*, 620 F.3d 170, 195 (3d Cir. 2010), *vacated on other grounds*, 563 U.S. 1030 (2011). Recognizing the dangers posed by volatile political conditions and aggressive enforcement practices, numerous courts have granted anonymity to noncitizens challenging restrictive immigration

measures—including at least four decisions this year involving challenges to TPS terminations. *See Dahlia Doe, et al. v. Noem, et al.,* No. 25-cv-08686 (S.D.N.Y. Oct. 20, 2025) (Failla, J.); Order, *Nat'l TPS All. v. Noem*, No. 3:25-cv-5687 (N.D. Cal. July 8, 2025) (Thompson, J.), ECF No. 26; Order Granting Administrative Motion of Plaintiffs M.H. and E.R. to Proceed Under Pseudonym, *Nat'l TPS All. v. Noem*, No. 3:25-cv-1766 (N.D. Cal. Mar. 12, 2025) (Chen, J.), ECF No. 70; Order, *Haitian-Americans United Inc. v. Trump*, No. 1:25-cv-10498 (D. Mass. Mar. 4, 2025), ECF No. 7.

The same considerations are present here in even greater measure. In the past year, Defendants have engaged in widespread and indiscriminate detention and removal of noncitizens, including individuals who merely appeared at courthouses to seek lawful protection. *See, e.g.*, Compl., *Immigr. Advocs. Resp. Collaborative v. U.S. Dep't of Just.*, No. 25-cv-2279 (D.D.C. July 16, 2025), ECF No. 1. Defendants have also retaliated against noncitizen advocates and litigants who engage in First Amendment protected speech, as documented in recent habeas petitions and appellate decisions. *See, e.g.*, Pet. for Writ of Habeas Corpus, *Guevara v. Sterling*, No. 5:25-cv-86 (S.D. Ga. Aug. 20, 2025), ECF No. 1; *Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *3–4 (4th Cir. July 1, 2025); *Öztürk v. Trump*, 779 F. Supp. 3d 462, 489–92 (D. Vt. 2025).

In these circumstances, compelling Plaintiffs—Burmese nationals with TPS—to publicly reveal their identities to challenge government policy would pose an acute risk of harm. Rejecting anonymity here would have a chilling effect on similarly situated plaintiffs who face credible threats of relation from the United States government and threats outside the United States should Immigration and Customs Enforcement ("ICE") take efforts to deport them. Consistent with the factors considered by the Seventh Circuit and with analogous precedent

4

nationwide, the balance here overwhelmingly favors granting Plaintiffs leave to proceed under pseudonyms.

I.  **This Case Involves Highly Personal and Sensitive Matters, and Plaintiffs Face a Severe Risk of Harm if Their Identities Are Disclosed.**

Foremost among the factors favoring anonymity here is the grave and credible risk of physical, psychological, and retaliatory harm that Plaintiffs would face if their identities were publicly disclosed. As Burmese nationals holding TPS, each Plaintiff reasonably fears that public identification of sensitive information including their names and their immigration status would make them immediate and obvious targets for immigration enforcement actions—potential arrest, confinement, and deportation—solely because they have chosen to challenge U.S. government policy in court. McCoy Declaration Exhibit 1 ("Ex. 1, Aung Doe Decl.") ¶¶ 18-19; McCoy Declaration Exhibit 2 ("Ex. 2, Nina Doc Decl.") ¶¶ 26; McCoy Declaration Exhibit 3 ("Ex. 3, Thura Doe Decl.") ¶¶ 19, 21-22; 33-34; McCoy Declaration Exhibit 4 ("Ex. 4, Khin Thet Doe Decl.") ¶¶ 26-27; McCoy Declaration Exhibit 5 ("Ex. 5, Chu Let Doe Decl.") ¶¶ 20-22; McCoy Declaration Exhibit 6 ("Ex. 6, Maung Doe Decl.") ¶¶ 20-22. Several Plaintiffs currently have pending applications for other forms of immigration relief or are in the process of seeking lawful status through alternative avenues. Ex. 1, Aung Doe Decl. ¶ 7; Ex. 2, Nina Doe Decl. ¶ 23; Ex. 3, Thura Doe Decl. ¶¶ 8, 10, 15; Ex. 4, Khin Thet Doe Decl. ¶ 15; Ex. 5, Chu Let Doe Decl. ¶¶ 8, 10; Ex. 6, Maung Doe Decl. ¶ 8. They reasonably believe that public disclosure of their participation in this lawsuit could jeopardize those applications, either through direct retaliation or adverse discretionary decisions.

Courts have repeatedly recognized that such fears are not speculative. As one court explained, "the news is replete with reports of deportations, and the defendants have not assured the plaintiffs they will not retaliate against them." *CASA, Inc. v. Trump*, 793 F. Supp. 3d 703,

726 (D. Md. 2025); *Ozturk v. Trump*, 777 F. Supp. 3d 26, 29 (D. Mass. 2025). Other courts have specifically noted the risks of "retaliatory arrest, deportation, or other adverse immigration actions" when noncitizens publicly litigate against the government. *Does 1–158 v. Rubio*, No. 25-3032, 2025 WL 2709775, at *2 (D.D.C. Sept. 23, 2025); *Doe #1 v. Noem*, No. 25-cv-317, 2025 WL 1207190, at *1 (W.D. Wis. Apr. 25, 2025) (recognizing "imminent arrest and detention" and "the possibility of being deported to a country other than their country of origin"). Courts have further observed that high-profile immigration litigants have faced abuse, intimidation, and harassment as a direct result of their immigration status. *See Doe #1*, 2025 WL 1207190, at *1 (granting motion to proceed under pseudonym based on plaintiffs' "fear of reprisal in the form of arrest, detention, and removal, as well as the possibility of 'blacklisting' by DHS or ICE that would jeopardize future visa applications"); *see also Molina v. U.S. Dep't of Homeland Sec.*, No. 25-3417, 2025 WL 2800807, at *1 (D.D.C. Oct. 1, 2025) (granting motion to procced under pseudonyms where "Plaintiffs' participation in this litigation implicates their immigration statuses during a period of intense public scrutiny of immigration matters."). Accordingly, many courts have granted anonymity to noncitizens suing the government to protect against "harassment, intimidation, and/or doxing" by private actors. *See, e.g.*, *Doe v. Noem*, No. 2:25-cv-00633-DGE, 2025 WL 1295664, at *3 (W.D. Wash. May 5, 2025); *Doe 1 v. Noem*, No. 2:25-CV-00663, 2025 WL 1434925 (W.D. Wash. May 19, 2025); *Int'l Refugee Assistance Project v. Trump*, No. CV TDC-17-0361, 2017 WL 818255 (D. Md. Mar. 1, 2017). Here, Plaintiffs' fears of harassment as a result of their participation in this suit are well-founded. Ex. 1, Aung Doe Decl. ¶ 19; Ex. 3, Thura Doe Decl. ¶ 22; Ex. 5, Chu Let Doe Decl. ¶ 21; Ex. 6, Maung Doe Decl. ¶ 22. The circumstances here particularly warrant anonymity for Plaintiffs. The "danger of retaliation" is a "compelling ground" to allow the use of a pseudonym. *See Doe*

*v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004). This is particularly so where plaintiffs challenge government action. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008).

The threat to Plaintiffs is not limited to the United States. The Seventh Circuit recognized well-founded fear of violence in another country provides a compelling reason to proceed under pseudonyms. *See, e.g., Doe v. Gonzales*, 484 F.3d 445, 446 (7th Cir. 2007) (fear of retaliation in home country sufficient to allow petitioner to litigate with a pseudonym); *A.R.M.R., on her own behalf & on behalf of her minor child, A.P.D.M., v. United States*, No. 24-CV-2416-DWD, 2025 WL 3485705, at *1 (S.D. Ill. Dec. 4, 2025) ("[A]llegations of fleeing persecution and torture, coupled with the fear of violence if her identity is revealed, constitute compelling grounds for proceeding under a pseudonym.").

If returned to Burma, Plaintiffs would face a serious risk of retaliatory harm from the Burmese military junta and affiliated private actors who routinely target individuals perceived as dissidents or critics of the military regime. Plaintiffs' names alone in this context are highly sensitive. For example, Nina Doe is a medical professional who has treated victims of sexual violence by the Burmese military, placing her at great personal risk because medical professionals assisting minority communities in Burma are targeted, hunted, and disappeared by the junta. Ex. 2, Nina Doe Decl. ¶¶ 9-11 Since arriving in the United States, she has participated in political opposition to the military regime and has sent money to frontline doctors and displaced communities, in response to which the military has targeted Nina's family in Burma. *Id*. ¶¶ 15-17. Similarly, prior to leaving the country, Chu Let Doe was targeted by the Burmese military due to her long history of political advocacy in Burma on behalf of religious minorities and youth. She fears that past work, along with her participation in this lawsuit, put her at risk if

7

forced to return. Ex. 5, Chu Let Doe Decl. ¶¶ 5, 13, 22. Khin Thet Doe fears that her political activism in Burma and her participation in this lawsuit would be perceived as critical of the military and subject her and her family to harm in Burma. Khin Thet Doe Decl. Ex. 4, ¶¶ 10, 12, 19, 28. Likewise, Thura Doe's sworn statement reveals that he has advocated for democracy in Myanmar since coming to the United States, placing him in danger of immediate detention by the military regime. Ex. 3, Thura Doe Decl. ¶¶ 11-12. *See also* Ex. 6 Maung Doe Decl. ¶¶ 11, 23; Ex. 1, Aung Doe Decl. ¶¶ 10-12, 20.

Public disclosure of Plaintiffs' participation in this lawsuit would expose them to heightened danger from Burma's military junta. This is because the potential termination of their TPS status places Plaintiffs at risk of being forcibly returned to Burma, where they face potential retaliatory detention, torture, and other forms of persecution. The U.S. Department of State's *Country Report on Human Rights Practices for Burma* (2024), documents that the Burmese military regime engages in widespread and severe human rights abuses. *See* U.S. Dep't of State, Bureau of Democracy, H.R. and Lab., *Burma 2024 Human Rights Report* (2024), https://www.state.gov/wp-content/uploads/2025/07/624521_BURMA-2024-HUMAN-RIGHTS-REPORT.pdf. The State Department's findings detail a consistent pattern of egregious violations, including arbitrary and unlawful killings, enforced disappearances, torture and other cruel, inhuman, or degrading treatment or punishment, arbitrary arrest and detention, and acts of transnational repression targeting individuals abroad. *Id.* According to the U.N. Special Rapporteur on the Situation of Human Rights in Myanmar (Burma), of nearly 30,000 individuals arrested for their opposition to the military regime, more than 22,000 remain imprisoned as political detainees. *See Report of the Special Rapporteur on the Situation of Human Rights in Myanmar*, U.N. Doc. A/80/490 (Oct. 20, 2025).

In addition, Burmese nationals have faced retaliation from the military junta even when living outside the country. The State Department report notes: "Credible reports indicated the regime retaliated against citizens abroad by revoking their passports, thereby restricting their mobility and jeopardizing their legal status." *Burma 2024 Human Rights Report*. With their lawful status in jeopardy in the United States, these potential retaliatory actions by the military in Burma could render plaintiffs both stateless and physically trapped.

Other documented patterns of the junta's retaliation against dissidents and minorities underscores the necessity of protecting Plaintiffs' identities to safeguard their safety and fundamental rights.[1] For example, Thura Doe, a member of the LGBTQ community, is vulnerable to prosecution by the Burmese authorities because homosexuality is a crime in Burma. Ex. 3, Thura Doe Decl. ¶ 13. Nina Doe, Khin Thet Doe, and Maung Doe are each members of religious or ethnic minorities that are subject to discrimination, violence, and persecution in Burma. Ex. 2, Nina Doe Decl. ¶ 8; Ex. 4, Khin Thet Doe Decl. ¶ 4; Ex. 6, Maung Doe Decl. ¶ 14.

The danger extends to Plaintiffs' family members, both in the United States and abroad, who would likewise face a substantial risk of retaliatory harm if Plaintiffs' identities became public. Ex. 2, Nina Doe Decl ¶ 20; Ex. 3, Thura Doe Decl. ¶ 23; Ex. 4, Khin Thet Doe Decl. ¶ 28. *See* State Dept. Report ("The Human Rights Foundation of Monland reported regime authorities threatened family members of those forcibly disappeared, telling them not to share information about the abductions or risk their own well-being.").

---

[1] Courts have long recognized United Nations reports as credible and persuasive evidence of country conditions. *See Kholyavskiy v. Mukasey*, 540 F.3d 555, 565–66 (7th Cir. 2008).

Finally, Plaintiffs' identities have been kept confidential throughout the pendency of this matter, and there is no alternative mechanism that would permit disclosure of additional information while still ensuring their safety. These circumstances stand in stark contrast to cases such as *Doe v. United States,* No. 16-CV-7256 (JGK), 2017 WL 2389701, at *2 (S.D.N.Y. June 1, 2017) where the Plaintiff's privacy interests in certain medical information and his economic prospects could "be sufficiently addressed through the alternative mechanism of redaction and sealed submissions." Here, Plaintiffs face a documented and ongoing risk of retaliation by the Defendants and violent reprisal by the Burmese military junta should their identities become known, and no partial protective measures could mitigate that danger, particularly as it pertains to the Burmese regime, which is outside the jurisdiction of this Court. Both the maintenance of confidentiality to date and the absence of viable protective alternatives weigh heavily in favor of granting Plaintiffs leave to proceed under pseudonyms.

## II. Defendants Are Government Officials Who Will Not Be Prejudiced, and the Public Interest Will Be Served by Allowing Plaintiffs to Proceed Using Pseudonyms.

Allowing Plaintiffs to proceed under pseudonyms is particularly appropriate in this case because Defendants are government officials sued solely in their official capacities. "When a plaintiff challenges the government or government activity, courts are more likely to permit plaintiffs to proceed under a pseudonym than if an individual has been accused publicly of wrongdoing" because "anonymous litigation is more acceptable when the defendant is a governmental body because government defendants do not share the concerns about 'reputation' that private individuals have..." *Roe v. Doe,* 2019 WL 2058669, at *4 (D.D.C. May 7, 2019).

Moreover, Defendants will suffer no prejudice if Plaintiffs are permitted to proceed anonymously. Plaintiffs' identities are irrelevant to the issues before the Court. For purposes of standing, what matters is that each Plaintiff is a TPS holder directly and adversely affected by the

challenged termination decision. Plaintiffs' claims present purely legal challenges to a blanket government policy—claims that do not depend on, or vary with, the personal circumstances of any particular TPS holder. Therefore, anonymity will not impair Defendants' ability to mount a full and fair defense.

The public interest also strongly supports allowing Plaintiffs to proceed under pseudonyms. The public has a compelling interest in ensuring that actions challenging executive branch policies—particularly those affecting vulnerable noncitizen populations—can proceed without exposing plaintiffs to retaliation. Forcing Plaintiffs to reveal their identities in the face of credible threats of harm would risk chilling similarly situated individuals from bringing meritorious claims, thereby undermining judicial oversight of government conduct. *See Al Otro Lado, Inc. v. Nielsen*, No. 17-cv-02366-BAS-KSC, 2017 WL 6541446, at *7 (S.D. Cal. Dec. 20, 2017); accord *Lozano*, 620 F.3d at 195.

Permitting pseudonyms here will, in fact, advance the public interest by enabling this case to proceed on the merits. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1073 (9th Cir. 2000). Defendants' pattern of terminating TPS protections across-the-board, impacting nearly 4,000 TPS holders from Burma and hundreds of thousands of TPS holders living and working across the United States, implicates the public interest. Should plaintiffs face retaliation for their participation, the chilling impact could cause Defendants' violations of the Administrative Procedure Act and the Constitution to go unaddressed. And because the case raises purely legal questions—whether Defendants' conduct violates statutory or constitutional requirements—the countervailing public interest in knowing the litigants' identities is "atypically weak." *Sealed Plaintiff*, 537 F.3d at 190; accord *Doe v. Cuomo*, No. 10-CV-1534 (TJM/CFH), 2013 WL 1213174, at *7 (N.D.N.Y. Feb. 25, 2013).

**CONCLUSION**

For the foregoing reasons, Plaintiffs should be permitted to proceed in this suit using pseudonyms and, as is required by Local Rule 3.1, file the designation sheet (i.e., civil cover sheet) under seal. *See* Order Granting Pls' Mot. for Leave to File Unredacted Compl. Under Seal and to Proceed Under Pseudonym, *Doe D.B. v. The Church of Jesus Christ of Latter-Day Saints et al.*, No. 3:24-cv-50469 (N.D. Ill. May 7, 2025), Dkt. No. 43 (also allowing plaintiff to file designation sheet under seal).

Dated: December 22, 2025

Respectfully submitted,

| | |
|---|---|
| ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND<br>*/s/ Dinesh McCoy*<br>Dinesh McCoy*<br>Phi Nguyen*<br>Razeen Zaman*<br>Helen Anne Schutz Lo*<br>Niji Jain*<br>99 Hudson Street, 12th Floor<br>New York, NY 10013<br>dmccoy@aaldef.org<br>pnguyen@aaldef.org<br>rzaman@aaldef.org<br>alo@aaldef.org<br>njain@aaldef.org | THE LAW OFFICES OF JUNE J. HTUN<br>*/s/ June Htun*<br>June Htun<br>3643 West Belmont Avenue<br>Chicago, Illinois 60618<br>(773) 362-5000<br>june@htunlaw.com<br><br>INTERNATIONAL REFUGEE ASSISTANCE PROJECT<br>*/s/ Guadalupe Aguirre*<br>Guadalupe Aguirre*<br>Ghita Schwarz*<br>Pedro Sepulveda*<br>One Battery Park Plaza, Fl 33<br>New York, NY 10004<br>(929) 246-0154<br>laguirre@refugeerights.org<br>gschwarz@refugeerights.org<br>psepulveda@refugeerights.org<br><br>Megan Hauptman<br>650 Massachusetts Ave NW<br>Suite 600 |

Washington, D.C. 20001
(646) 939-7329
mhauptman@refugeerights.org

*Counsel for Plaintiffs*
*\*Application for admission Pro Hac Vice pending*