# Exhibit 7

## DECLARATION OF AARON REICHLIN-MELNICK

1. I, Aaron Reichlin-Melnick, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

2. I am a Senior Fellow at the American Immigration Council ("Immigration Council"), a nonprofit and non-partisan organization whose mission includes the use of facts to educate the public on the important and enduring contributions that immigrants make to America.

3. As a Senior Fellow at the Immigration Council, I have since 2018 tracked and analyzed trends in Department of Homeland Security ("DHS") policies and data. I have testified before Congress seven times between 2021 and 2025 on topics which rely on my knowledge of DHS immigration data and publications.[1] I have also previously submitted expert declarations analyzing government-produced immigration statistics and explaining immigration policy.[2]

4. Since 2018, I have been tasked with maintaining and updating the American Immigration Council's fact sheet on Temporary Protected Status ("TPS"),[3] which has required me to read and analyze every TPS designation and redesignation, extension, or termination in the past seven years. As part of my policy work, I have also analyzed and tracked the size of the TPS population through regular analysis of the relevant U.S. Citizenship and Immigration Data.[4] In

---

[1] *See, e.g.*, U.S. House of Representatives, Committee on the Judiciary, Subcommittee on Immigration Integrity, Security, and Enforcement, Testimony of Aaron Reichlin-Melnick for hearing on Presidential Power to Secure the Border (Mar. 24, 2024), *available at* https://docs.house.gov/meetings/JU/JU01/20240307/116925/HMTG-118-JU01-Wstate-Reichlin-MelnickA-20240307.pdf.

[2] *See, e.g.*, *Innovation Law Lab v. Wolf*, 3:19-cv-00807-RS (N.D. Cal. filed Feb. 14, 2019), *Padilla v. ICE*, No. 2:18-cv-00928-MJP (W.D. Wash. filed June 25, 2018), *East Bay Sanctuary Coalition II v. Wolf*, 3:19-cv-04073-JST (N.D. Cal filed July 16, 2019); *Miot v. Trump*, 1:25-cv-02471, ECF No. 26-7 (D.D.C. filed July 30, 2025); *Doe v. Noem*, No 1:25-cv-08686, ECF No. 20, Ex. 7 (S.D.N.Y filed Oct. 20, 2025).

[3] American Immigration Council, "Temporary Protected Status: An Overview," https://www.americanimmigrationcouncil.org/wp-content/uploads/2017/08/Temporary-Protected-Status-An-Overview-0925.pdf, *last updated* Sept. 25, 2025.

[4] *See, e.g.*, U.S. Citizenship and Immigration Services, "Form I-821, Application for Temporary Protected Status Receipts, Approvals, Denials, and Pending by Country of Designation (Fiscal Year 2025, Q3)," Oct. 8, 2025, https://www.uscis.gov/sites/default/files/document/data/i821_radp_fy2025_q3.xlsx.

preparation for this declaration I have reviewed every prior TPS designation and re-designation, extension, and termination, from 1990 through present.

5. My review of the 35-year history of TPS finds that before 2025, the sole rationale cited to justify termination of TPS has been an end to the temporary country conditions which authorized the initial designation. In 22 Federal Register Termination Notices from 1992 through 2018 that I reviewed, no Secretary or Attorney General has ever listed national interest as a rationale for termination.

6. In each of the 22 terminations of TPS from 1992 through 2018 that I reviewed, the Secretary or Attorney General has explained that the termination was an informed decision resulting from the interagency review process of the country conditions underlying the initial designation. This review determined whether there remained an armed conflict, environmental disaster (or other prerequisite under INA § 244(b)(1)(B)), or other "extraordinary and temporary conditions" in the foreign state.

7. References to "national interest" in Termination Notices prior to 2025 are rare and cursory. In total, the phrase is referenced in just three Termination Notices out of 22.

8. The first Termination Notice which references "national interest" is the June 1997 termination of TPS for Rwanda, and comes within a single sentence of boilerplate declaring compliance with the consultation requirement of INA § 244(b)(3).

9. The second reference is contained in a March 1998 Termination Notice for TPS for Liberia, which contains substantively identical boilerplate.[5] Following a renewed outbreak of hostilities in

---

[5] *Compare* U.S. Department of Justice, Termination of Designation of Rwanda Under Temporary Protected Status Program After Final 6-Month Extension, 62 Fed. Reg. 33443 (June 19, 1997) ("pursuant to section 244(b)(3) of the Act, I have had consultations with the appropriate agencies of the U.S. Government concerning (a) the conditions in Rwanda; and (b) whether permitting nationals of Rwanda (and aliens having no nationality who last habitually resided in Rwanda) to remain temporarily in the United States is contrary to the national interest of the United States") *with* U.S. Department of Justice, Termination of Designation of Liberia Under the Temporary Protected Status Program, 64 Fed. Reg. 41463 (July 30, 1999) (same, substituting Liberia).

2

Liberia, that termination was mooted by September 1998 redesignation which does not reference national interest.[6] This was followed by a second Termination Notice in July 1999 which also did not reference national interest.[7]

10. The third reference occurs in a 2004 Termination and Redesignation Notice for Liberia. The Termination ends a 2002 designation of TPS under INA § 244(b)(3)(A) for the existence of an "ongoing armed conflict." Secretary Ridge first determined that the peace process following the Second Liberian Civil War had brought an end to the "armed conflict," which required termination of the 2002 designation. He then simultaneously re-designated TPS under INA § 244(b)(3)(C), and in so doing recited the statutory factors for a initial grant of TPS, including that the new grant was not contrary to national interest.

11. Similar references to the phrase "national interest" in designations, redesignations, and extensions are equally cursory. Until 2025, no Attorney General or Secretary has explained their conclusion that it is not "contrary to the national interest" to permit TPS beneficiaries to remain temporarily in the United States," or ever justified a termination on national interest grounds.

12. By contrast, Termination Notices, as well as extensions and designations, routinely provide a detailed explanation as to the existence (or lack thereof) of the country conditions which justify TPS. A comprehensive list of each TPS termination prior to 2025, as well as the dispositive rationale provided for termination in each case, is below.

    a.    **Kuwait (1991-1992)**: "I find after consultation with the appropriate agencies of the United States Government, that the extraordinary and temporary conditions found to exist in Kuwait on March 27, 1991, are not presently in existence, in that

---

[6] U.S. Department of Justice, Redesignation of Liberia Under Temporary Protected Status Program, 63 Fed. Reg. 51958 (Sept. 29, 1998).

[7] U.S. Department of Justice, Termination of Designation of Liberia Under the Temporary Protected Status Program, 64 Fed. Reg. 41463 (July 30, 1999).

substantial progress has been made toward the rebuilding of Kuwait society so that the temporary impediments to safe return posed on March 27, 1991, by the immediate aftermath of the Iraqi occupation and the subsequent military conflict no longer remain."[8]

b.     **Lebanon (1991-1993)**: "I find, after consultation with the appropriate agencies of the United States Government, that the extraordinary and temporary conditions found to exist in Lebanon on March 21, 1991, and on January 20, 1992, are not presently in existence. The United States embassy in Beirut reports that the security situation for Lebanese citizens is steadily improving. The Lebanese government's amnesty law specifically protects Lebanese citizens from prosecution for virtually all actions taken during the war years, and the majority of Lebanese go about their daily activity without hindrance."[9]

c.     **Rwanda (1994-1997):** "As a result of these consultations, I have determined that Rwanda no longer continues to meet the conditions for designation of TPS under section 244(b)(1) of the Act. The situation in Rwanda has greatly improved since the designation of TPS in 1994. … During the last half of 1996 and the beginning of 1997, approximately 1.3 million refugees returned to Rwanda. The ability of so many to return in relative safety demonstrates the end of the extraordinary circumstances that existed in 1994. While other avenues of immigration relief, including asylum, remain available to Rwandans in the United States who believe that their particular circumstances make return

---

[8] U.S. Department of Justice, Termination of Designation of Kuwait under Temporary Protected Status Program, 57 Fed. Reg. 2930 (Jan. 24, 1992).
[9] U.S. Department of Justice, Termination of Designation of Lebanon Under Temporary Protected Status Program, 58 Fed. Reg. 7477 (Feb. 8, 1993).

to Rwanda unsafe, we have determined that TPS is no longer appropriate for Rwandans in general."[10]

    **d.**    **Liberia (1991-1999)**: Liberian's first grant of TPS was terminated twice, first in 1998, after which the termination was rescinded following a renewed outbreak of civil unrest, and then again in 1999.

        **i.**    1998 initial termination: "As a result of these consultations, I have determined that Liberia no longer continues to meet the conditions for designation of TPS under section 244(b)(1) of the Act. … In view of the Department of State's recommendation for termination, I have determined that TPS is no longer appropriate for Liberia in general."[11]

        **ii.**    1999 final termination: "the Attorney General has determined that conditions in Liberia no longer support a TPS designation."[12]

    **e.**    **Guinea-Bissau (1999-2000)**: "Based upon a more recent review of conditions within Guinea-Bissau by the Departments of Justice and State, the Attorney General finds that conditions no longer support a TPS designation. … I have consulted with the appropriate agencies of Government concerning conflict and security conditions in Guinea- Bissau. 8 U.S.C. 1254a(b)(3). Based on these consultations, I have determined that Guinea-Bissau no longer meets the conditions for designation of TPS under section 244(b)(1) of the Act."[13]

---

[10] U.S. Department of Justice, Termination of Designation of Rwanda Under Temporary Protected Status Program After Final 6-Month Extension, 62 Fed. Reg. 33443 (June 19, 1997).

[11] U.S. Department of Justice, Termination of Designation of Liberia Under Temporary Protected Status Program After Final 6-Month Extension, 63 Fed. Reg. 15437 (Mar. 31, 1998).

[12] U.S. Department of Justice, Termination of Designation of Liberia Under the Temporary Protected Status Program, 64 Fed. Reg. 41463 (July 30, 1999).

[13] U.S. Department of Justice, Six-Month Extension and Termination of Designation of Guinea-Bissau Under the Temporary Protected Status Program, 65 Fed. Reg. 15016 (Mar. 20, 2000).

      **f.**      **Kosovo (1998-2000)**: "Based upon a more recent review of conditions within the Kosovo Province by the Departments of Justice and State, the Attorney General finds that conditions in the Kosovo Province no longer support a TPS designation. … I have consulted with the appropriate agencies of Government concerning conflict and security conditions in the Kosovo Province. 8 U.S.C. 1254a(b)(3). Based on these consultations, I have determined that the Kosovo Province no longer meets the conditions for designation of TPS under section 244(b)(1) of the Act."[14]

      **g.**      **Bosnia-Herzegovina (1992-2001)**: "I have consulted with the appropriate agencies of Government concerning conflict and security conditions in Bosnia-Herzegovina. 8 U.S.C. 1254a(b)(3). Based on these consultations, I have determined that Bosnia-Herzegovina no longer meets the conditions for designation of TPS under section 233(b)(1) of the Act"[15]

      **h.**      **Angola (2000-2003)**: "Based upon a recent review of conditions within Angola by the Departments of Justice and State, the Attorney General finds that conditions in Angola no longer support a TPS designation. … For the foregoing reasons, the Attorney General determines that Angolan TPS beneficiaries may return safely to Angola at this time and, therefore, terminates the TPS designation for Angola."[16]

      **i.**      **Liberia (2002-2004)**: "Based upon this review, the Secretary of DHS, after consultation with appropriate government agencies, finds that the conditions that prompted

---

[14] U.S. Department of Justice, Termination of the Province of Kosovo in the Republic of Serbia in the State of the Federal Republic of Yugoslavia (Serbia-Montenegro) Under the Temporary Protected Status Program, 65 Fed. Reg. 33356 (May 23, 2000).
[15] U.S. Department of Justice, Termination of Bosnia-Herzegovina Under the Temporary Protected Status Program, 65 Fed. Reg. 52789 (Aug. 30, 2000).
[16] U.S. Department of Justice, Termination of Designation of Angola Under the Temporary Protected Status Program, 68 Fed. Reg. 3896 (Jan. 27, 2003).

designation of Liberia for TPS are no longer met. 8 U.S.C. 1254a(b)(3)(A) and (B). The armed conflict has ceased."[17]

  **j.**  **Montserrat (1997-2005)**: "Based upon this review, the Secretary of DHS, after consultation with appropriate government agencies, finds that Montserrat no longer continues to meet the conditions for designation under the TPS program. 8 U.S.C. 1254a(b)(3)(A). Because the volcanic eruptions are unlikely to cease in the foreseeable future, they can no longer be considered 'temporary' as required by Congress when it enacted the TPS statute."[18]

  **k.**  **Liberia (2004-2007)**: "Based upon this review, the Secretary, after consultation with appropriate Government agencies, determined that the extraordinary and temporary conditions that prompted the re-designation of Liberia for TPS no longer prevent Liberians (or aliens having no nationality who last habitually resided in Liberia) from returning to their home country in safety, and that the designation of Liberia for TPS should be terminated."[19]

  **l.**  **Burundi (1997-2007)**: "Based upon this review, the Secretary finds, after consultation with the appropriate Government agencies, that the armed conflict is no longer ongoing, that the extraordinary and temporary conditions that prompted the designation and re-designation of Burundi for TPS no longer prevent Burundians (or aliens having no

---

[17] U.S. Department of Homeland Security, Termination and Re-Designation of Liberia for Temporary Protected Status, 69 Fed. Reg. 52297 (Aug. 25, 2004).

[18] Termination of the Designation of Montserrat Under the Temporary Protected Status Program; Extension of Employment Authorization Documentation, 69 Fed. Reg. 40642 (July 6, 2004).

[19] U.S. Department of Homeland Security, Termination of the Designation of Liberia for Temporary Protected Status; Automatic Extension of Employment Authorization Documentation for Liberia TPS Beneficiaries, 71 Fed. Reg. 55000 (Sept. 20, 2006).

nationality who last habitually resided in Burundi) from returning in safety, and that the designation of Burundi for TPS should be terminated."[20]

    **m.**    **Guinea (2014-2017)**: "Based on the reviews and after consulting with DOS, the Secretary has determined that the termination of the TPS designation of Guinea, after a 6-month extension of TPS benefits for orderly transition, is required because the extraordinary and temporary conditions that prompted Guinea's designation for TPS have substantially resolved and no longer prevent nationals of Guinea from returning in safety."[21]

    **n.**    **Sierra Leone (2014-2017)**: "Based on the reviews and after consulting with DOS, the Secretary has determined that the termination of the TPS designation of Sierra Leone, after a 6-month extension of TPS benefits for orderly transition, is required because the extraordinary and temporary conditions that prompted Sierra Leone's designation for TPS have substantially resolved and no longer prevent nationals of Sierra Leone from returning in safety."[22]

    **o.**    **Liberia (2014-2017)**: "Based on the reviews and after consulting with DOS, the Secretary has determined that the termination of the TPS designation of Liberia, after a 6-month extension of TPS benefits for orderly transition, is required because the extraordinary and temporary conditions that prompted Liberia's designation for TPS have

---

[20] U.S. Department of Homeland Security, Termination of the Designation of Burundi for Temporary Protected Status; Automatic Extension of Employment Authorization Documentation for Burundi TPS Beneficiaries, 72 Fed. Reg. 61172 (Oct. 29, 2007).

[21] U.S. Department of Homeland Security, Six-Month Extension of Temporary Protected Status Benefits for Orderly Transition Before Termination of Guinea's Designation for Temporary Protected Status, 81 Fed. Reg. 66064 (Sept. 26, 2016).

[22] U.S. Department of Homeland Security, Six-Month Extension of Temporary Protected Status Benefits for Orderly Transition Before Termination of Liberia's Designation for Temporary Protected Status, 81 Fed. Reg. 66059 (Sept. 26, 2016).

substantially resolved and no longer prevent nationals of Liberia from returning in safety."[23]

     **p.**    **Sudan (1997-2018, termination blocked in court):** "Based on this review and consultation, the Secretary has determined that conditions in Sudan have sufficiently improved for TPS purposes. Termination of the TPS designation of Sudan is required because it no longer meets the statutory conditions for designation. The ongoing armed conflict no longer prevents the return of nationals of Sudan to all regions of Sudan without posing a serious threat to their personal safety. Further, extraordinary and temporary conditions within Sudan no longer prevent nationals from returning in safety to all regions of Sudan."[24]

     **q.**    **Nicaragua (1998-2018, termination blocked in court):** "Based on the review, including input received from other relevant U.S. Government agencies, the Secretary has determined that conditions for Nicaragua's 1999 designation for TPS on the basis of environmental disaster due to the damage caused by Hurricane Mitch are no longer met."[25]

     **r.**    **El Salvador (2001-2019, termination blocked in court)**: "Based on the review, including input received from other appropriate U.S. Government agencies, including the Department of State, the Secretary of Homeland Security has determined that the conditions supporting El Salvador's 2001 designation for TPS on the basis of

---

[23] U.S. Department of Homeland Security, Six-Month Extension of Temporary Protected Status Benefits for Orderly Transition Before Termination of Sierra Leone's Designation for Temporary Protected Status, 81 Fed. Reg. 66054 (Sept. 26, 2016).
[24] U.S. Department of Homeland Security, Termination of the Designation of Sudan for Temporary Protected Status, 82 Fed. Reg. 47228 (Oct. 11, 2017).
[25] U.S. Department of Homeland Security, Termination of the Designation of Nicaragua for Temporary Protected Status, 82 Fed. Reg. 59636 (Dec. 15, 2017).

environmental disaster due to the damage caused by the 2001 earthquakes are no longer met."[26]

     s.    **Haiti (2010-2019, termination blocked in court)**: "Based on the review, including input received from other appropriate U.S. Government agencies, the Acting Secretary of Homeland Security determined on November 20, 2017 that the conditions for Haiti's designation for TPS—on the basis of 'extraordinary and temporary conditions' relating to the 2010 earthquake that prevented Haitian nationals from returning in safety—are no longer met."[27]

     t.    **Nepal (2015-2019, termination blocked in court)**: "Based on the review—which considered input received from other appropriate U.S. Government agencies, including the Department of State—the Secretary of Homeland Security has determined that the conditions supporting Nepal's 2015 designation for TPS on the basis of environmental disaster due to the April 25, 2015 earthquake are no longer met."[28]

     u.    **Honduras (1998-2020, termination blocked in court)**: "Based on the review, which considered input received from other appropriate U.S. Government agencies, including the Department of State, the Secretary of Homeland Security has determined that the conditions supporting Honduras's 1999 designation for TPS on the basis of environmental disaster due to the damage caused by Hurricane Mitch in October 1998 are no longer met."[29]

---

[26] U.S. Department of Homeland Security, Termination of the Designation of El Salvador for Temporary Protected Status, 83 Fed. Reg. 2654 (Jan. 18, 2018).

[27] U.S. Department of Homeland Security, Termination of the Designation of Haiti for Temporary Protected Status, 83 Fed. Reg. 2648 (Jan. 18, 2018).

[28] U.S. Department of Homeland Security, Termination of the Designation of Nepal for Temporary Protected Status, 83 Fed. Reg. 23705 (May 22, 2018).

[29] U.S. Department of Homeland Security, Termination of the Designation of Honduras for Temporary Protected Status, 83 Fed. Reg. 26074 (June 5, 2018).

13.   In stark contrast to the unbroken 22-year history of TPS terminations from 1992 through 2024, in 2025 the Department of Homeland Security cited "national interest" as either one of multiple grounds, or the only ground, to terminate TPS in 11 separate notices.[30]

14.   Beyond the use of "national interest" as a dispositive factor, the termination notice for Burma contained the first-ever citation to a presidential proclamation under Section 212(f) of the Immigration and Nationality Act (8 U.S.C. § 1182(f)) as grounds to terminate TPS, declaring that allowing Burmese nationals to remain in the United States with TPS would be "contrary with the President's directive of fully restricting the entry of Burmese nationals."[31] The termination notice does not explain why a desire to restrict the entry of Burmese nationals requires the termination of status for those who are already lawfully present on TPS.

15.   In support of this argument, the termination notice cites Burma's high visa overstay rates. According to DHS, "[a]n overstay is defined as a nonimmigrant who was lawfully admitted to the

---

[30] U.S. Department of Homeland Security, Termination of the October 3, 2023 Designation of Venezuela for Temporary Protected Status. 90 Fed. Reg. 9040, 9042-43 (Feb. 5, 2025); U.S. Department of Homeland Security, U.S. Department of Homeland Security, Partial Vacatur of 2024 Temporary Protected Status Decision for Haiti, 90 Fed. Reg. 10511, 10513-14 (Feb. 24, 2025); U.S. Department of Homeland Security, Termination of the Designation of Afghanistan for Temporary Protected Status, 90 Fed. Reg. 20309, 20311 (May 13, 2025); U.S. Department of Homeland Security, Termination of the Designation of Cameroon for Temporary Protected Status, 90 Fed. Reg. 23697, 23698 (June 4, 2025); U.S. Department of Homeland Security, Termination of the Designation of Haiti for Temporary Protected Status, 90 Fed. Reg. 28760, 28762-64 (July 1, 2025); U.S. Department of Homeland Security, Termination of the 2021 Designation of Venezuela for Temporary Protected Status, 90 Fed. Reg. 43225, 43228-30 (Sept. 8, 2025); U.S. Department of Homeland Security, Termination of the Designation of Syria for Temporary Protected Status, 90 Fed. Reg. 54398, 45401-02 (Sept. 22, 2025); U.S. Department of Homeland Security, Termination of the Designation of South Sudan for Temporary Protected Status, 90 Fed. Reg. 50484, 50486-87; U.S. Department of Homeland Security, Termination of the Designation of Burma for Temporary Protected Status, 90 Fed. Reg. 53378, 53379-81 (Nov. 25, 2025); U.S. Department of Homeland Security, U.S. Department of Homeland Security, Termination of the Designation of Haiti for Temporary Protected Status, 90 Fed. Reg. 54733, 54735-36 (Nov. 28, 2025); Termination of the Designation of Ethiopia for Temporary Protected Status, 90 Fed. Reg. 58028, 58030-58032 (Dec. 15, 2025).

[31] Termination of the Designation of Burma for Temporary Protected Status, 90 Fed. Reg. 53378, 53380-53381 (Nov. 25, 2025). DHS subsequently cited President Trump's 212(f) proclamation barring the entry of Haitians in its second attempt to terminate TPS for Haiti, despite not having cited it in the first attempt. *Compare* Termination of the Designation of Haiti for Temporary Protected Status, 90 Fed. Reg. 28760 (July 1, 2025) (no reference to the June 10 Presidential Proclamation restricting the entry of Haitians on immigrant and nonimmigrant visas) *with* Termination of the Designation of Haiti for Temporary Protected Status, 90 Fed. Reg. 54733, 54736 (Nov. 28, 2025) (citing the June 10 Presidential Proclamation restricting the entry of Haitians on immigrant and nonimmigrant visas as justification for terminating TPS for Haiti).

United States but remained in the United States beyond the authorized period of admission."[32] This definition sweeps in individuals who entered the United States lawfully and then applied for asylum or another status (including Temporary Protected Status), but had not received the status within the reporting period for the annual DHS Entry/Exit reports.[33] It may also include individuals granted a change in status which was not accurately recorded in DHS data at the time of the report.

16.    As a result, since DHS began publishing the Entry/Exit Overstay Report in 2016, academics and researchers have criticized it as an imperfect measurement of visa overstays.[34] A more recent 2025 analysis from the National Foundation for American Policy found that the Entry/Exit report "significantly inflated" reported visa overstay rates for countries included in President Trump's proclamations, in part because "it takes time for DHS systems to catch up and properly record people who have changed status or left the country."[35]

17.    In addition, given the deteriorating security situation in Burma following the outbreak of civil war in 2021, it is possible that a significant portion of recent Burmese overstays are individuals who lawfully entered the United States and then applied for asylum, but whose cases remained pending at time of reporting, such that they were counted as overstays.[36]

12/21/2025
_____

DATE:

_____

AARON REICHLIN-MELNICK

---

[32] U.S. Department of Homeland Security, "Entry/Exit Overstay Report, Fiscal Year 2024 Report to Congress," July 16, 2025, at iii, https://www.dhs.gov/sites/default/files/2025-09/25_0912_cbp_entry-exit-overstay-report-fiscal-year-2024.pdf

[33] *Id.* ("This report presents the overstay rates of those who remained in the United States beyond their authorized period of admission with no evidence of an extension to their period of admission or adjustment to another immigration status.").

[34] Robert Warren, Center for Migration Studies, "DHS Overestimates Visa Overstays for 2016; Overstay Population Growth Near Zero During the Year," Journal on Migration and Human Security, Vol. 5 No. 4 (2017), https://journals.sagepub.com/doi/pdf/10.1177/233150241700500403.

[35] National Foundation for American Policy, "An Analysis of the DHS Overstay Reports," June 2025, at 1, https://nfap.com/wp-content/uploads/2025/06/Analysis-of-DHS-Overstay-Report.NFAP-Policy-Brief.2025.pdf.

[36] *Id.* at 2 (stating that "DHS systems may record and treat [] as overstays" people who are "from countries experiencing violence [who] may not have overstayed their visas but applied for asylum, received Temporary Protected Status, or remained in the country via other lawful means, such as marriage.")