UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AUNG DOE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 25 C 15483 |
| | ) | |
| MARKWAYNE MULLIN,[1] in his official | ) | Judge Kennelly |
| capacity as Secretary of Homeland Security, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

The six plaintiffs in this proposed class action are natives and citizens of Burma (also known as Myanmar) with Temporary Protected Status ("TPS"). They challenge the Secretary of Homeland Security's determination to terminate TPS designation for Burma, along with its effective date. *See generally* Dkt. 1 ("Compl."); *see also* 90 Fed. Reg. 53,378 (Nov. 25, 2025). They now move to certify a class consisting of Burmese individuals of varied backgrounds, some of whom lack any plausible claim of injury whatsoever from the TPS terminations at issue. Dkt. 63 ("Pls.' Mot."). Specifically, plaintiffs seek to certify a nationwide class of more than 4,200 Burmese nationals: "All persons in the United States who were granted, or eligible for, Temporary Protected Status for Burma under 8 U.S.C. § 1254a and 8 C.F.R. § 244.2 prior to the November 25, 2025 termination notice." *Id.* at 1. But there are multiple flaws with plaintiffs' motion.

---

[1] Markwayne Mullin is now the Secretary of Homeland Security. He should thus be automatically substituted for his predecessor in accordance with Federal Rule of Civil Procedure 25(d).

1

First, plaintiffs cannot satisfy Federal Rule of Civil Procedure 23(a)'s commonality and typicality requirements because, at least on their theory, their constitutional claim depends on proof of discriminatory animus that must be evaluated against widely varying individual circumstances, and the six named plaintiffs—each with pronounced personal political profiles, unique family configurations, and pending alternative forms of immigration relief—are atypical of the ordinary Burmese TPS holder.

Second, the proposed class fits neither Civil Rule 23(b)(2) nor Rule 23(b)(1)(A) and *Jimenez Moreno v. Napolitano*, No. 11 C 5452, 2014 WL 4911938 (N.D. Ill. Sept. 30, 2014) (the principal authority plaintiffs rely upon for Rule 23(b)(1)(A) purposes) is inapposite. *See* Pl.'s Mot. at 15. This is because unlike the variable detainer practices at issue there, the single *Federal Register* notice challenged here cannot give rise to "incompatible standards of conduct" through piecemeal adjudication. Nothing about granting relief to plaintiffs alone, without certifying a nationwide class, would create inconsistent standards.

Finally, the Supreme Court's decision last year in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), underscores why careful attention to Rule 23's requirements matters. Having rejected the practice of issuing universal injunctions, the Court in *CASA* cautioned that district courts must apply "the rigors of Rule 23" with care. If they do not, class certification simply becomes "the universal injunction . . . return[ing] from the grave under the guise of 'nationwide class relief.'" *Id.* at 868 (Alito, J., concurring). With this concern in mind, this court should decline to certify a class where APA remedies fully protect every Burmese TPS holder, and plaintiffs fail to establish compliance with Rule 23(a) and (b).

### Background

Because the court is familiar with the relevant procedural and legal background, defendants incorporate the corresponding portions of their opposition memorandum to the plaintiffs' motion

2

for preliminary relief. *See* Dkt. 34 at 1–4. For present purposes, the only relevant update is how, on March 3, 2026, plaintiffs filed the present motion, seeking certification of a class defined as "[a]ll persons in the United States who were granted, or eligible for, Temporary Protected Status for Burma under 8 U.S.C. § 1254a and 8 C.F.R. § 244.2 prior to the November 25, 2025 termination notice." Pls.' Mot. at 1. Plaintiffs principally invoke Rule 23(b)(2), with Rule 23(b)(1)(A) as an alternative. *See id.* at 6–7.

### Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). The party seeking class certification bears the burden of demonstrating that they have satisfied all four of the prerequisites in Rule 23(a) and that their proposed class lawsuit falls within one of the three types of actions permitted under Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Bell v. PNC Bank, N.A.*, 800 F.3d 360, 373 (7th Cir. 2015). Rule 23(a) requires a party seeking to certify a class first to demonstrate that:

> (1) The class is so numerous that joinder is impractical [("numerosity"];
>
> (2) There are questions of law or fact common to the class [("commonality")];
>
> (3) The claims or defenses of the named plaintiffs are typical of claims or defenses of the class [("typicality")]; and
>
> (4) The named plaintiffs will fairly and adequately protect the interest of the class [("adequacy of representation")].

Fed. R. Civ. P. 23(a).

The Supreme Court has emphasized that "Rule 23 does not set forth a mere pleading standard" and, thus, a plaintiff "must affirmatively demonstrate [his] compliance with the Rule—

that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Consequently, the court must conduct a "rigorous" class certification analysis, which may "entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351. Although the court "should not turn the class certification proceedings into a dress rehearsal for the trial on the merits," the court "may not simply assume the truth of the matters as asserted by the plaintiff." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Where a material factual dispute exists, the Court "must 'receive evidence . . . and resolve the disputes before deciding whether to certify the class.'" *Id.* (quoting *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). If the court is not fully satisfied that all Rule 23 requirements are met, the court cannot certify the class. *See id.*; *Bell*, 800 F.3d at 373.

**Argument**

**I.      Class Certification Should Be Denied Because Plaintiffs Have Not Satisfied the Rigorous Requirements of Rules 23(a) and (b)(2).**

**A. Plaintiffs Cannot Satisfy Rule 23(a)'s Commonality and Typicality Requirements**

As alluded to above, the proposed class fails under Rule 23(a). Defendants do not dispute that the proposed class satisfies Rule 23(a)(1)'s numerosity requirement. Ironically, however, commonality and typicality founder on much the same issue: plaintiffs' equal protection claim (at least on their telling) requires individualized proof of discriminatory motive and effect, and the six named plaintiffs are conspicuously atypical of the broader class they now seek to represent.

**1.** Start with commonality under Rule 23(a)(2). On this point, plaintiffs argue that all the legal issues here are shared because there is a single DHS termination decision. *See* Pls.' Mot. at 8–9. But Rule 23(a)(2) requires more than the existence of a shared legal question. Instead, the Court's decision in *Wal-Mart* demands that a class's claims "depend upon a common contention"

4

whose "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 564 U.S. at 350. At the same time, however, "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (citation omitted); *see also Chicago Teachers Union, Loc. No. 1 v. Bd. of Educ.*, 797 F.3d 426, 434 (7th Cir. 2015) (same).

Plaintiffs' APA claims may present common questions (such as whether the United States Department of Homeland Security ("DHS") conducted an adequate country-conditions review, whether the 60-day wind-down was reasoned decisionmaking, etc.) that can be answered on a closed administrative record (more on that below). But plaintiffs' equal protection claim, which alleges that the termination was motivated by racial, ethnic, or national-origin animus, Compl. ¶¶ 202–06, does not yield to common proof in the same way.[2] An equal protection claim under *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266–68 (1977)—even assuming that this is the correct standard, which defendants dispute and is currently on review before the Supreme Court—requires examination of the specific decisionmaker's motivations, the historical background of the decision, and the disparate impact on identifiable groups. Thus, whether any given class member was targeted on the basis of race, ethnicity, or national origin depends on the relationship between DHS's alleged motive and that member's individual characteristics, which will vary widely across a class that includes persons of Burman, Karen, Chin, Kachin, Rohingya, Nepali, and other ethnic backgrounds, as well as persons of

---

[2] Defendants continue to maintain that the "facially legitimate and bona fide" standard of *Fiallo v. Bell*, 430 U.S. 787 (1977), or at most the rational-basis test of *Trump v. Hawaii*, 585 U.S. 667 (2018), supplies the proper standard. The Supreme Court is presently considering this question in the two TPS cases that will be argued in a week. *See Noem v. Doe*, No. 25-1083 (S. Ct.); *Trump v. Miot*, No. 25-1084 (S. Ct.),

Buddhist, Christian, Muslim, and other religious identities. *See* Compl. ¶¶ 9–14, 167, 175 (describing ethnic and religious diversity among named plaintiffs and other Burmese TPS holders).

In *Wal-Mart*, the Court rejected certification of a Title VII disparate-treatment class precisely because the alleged common discriminatory policy—Wal-Mart's delegation of pay and promotion decisions to local managers—did not produce a "common answer" to the discrimination question for each class member. *See* 564 U.S. at 356–59. The same defect applies here. *See id.* at 352 ("Here respondents wish to sue about literally millions of employment decisions at once. Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." (emphases in original)). Even assuming, for argument purposes only, that some DHS actors harbored animus toward some group of immigrants, whether any such animus infected the Burma termination as to any particular class member depends on which racial, ethnic, or national-origin characteristic that member possesses, and how DHS's alleged motive relates to it. These are not questions susceptible to resolution "in one stroke," as they necessarily will call for a highly individualized assessment. *Id.* at 350.

With this principle in mind, plaintiffs' proposed definition of all persons "who were granted, or eligible for" TPS under the Burma TPS designation is so broad that it will include even former TPS holders who may now have another immigration status, such as those who now have lawful permanent residence, or even naturalized to U.S. citizenship. This means that the class definition is overbroad (even for plaintiffs' APA claims) because it encompasses individuals who may not (1) need TPS benefits, (2) currently qualify for TPS benefits, or who (3) lack injuries redressable by a singular injunction or declaratory relief. It is thus unclear how plaintiffs can

6

satisfy commonality within the class when it includes entirely members who cannot show injury.[3]

Additionally, defining the putative class as anyone who was ever granted, or even eligible for TPS under the Burmese designation, wholly fails to account for those who failed to timely re-register with DHS, or those who no longer live in the United States.

To be sure, "minor overbreadth problems [that] do not call into question the validity of the class as a whole" may best be resolved by "amend[ing] the class definition as needed to correct for the over-breadth" rather than "deny[ing] class certification entirely." *Scott v. Dart*, 99 F.4th 1076, 1093 (7th Cir. 2024) (quoting *Messner*, 669 F.3d at 826 n.15). However, the problem is exacerbated here by plaintiffs' failure to show that they have, in fact, suffered any injury from DHS's attempted termination of TPS that is in any way like what they allege other Burmese TPS holders may suffer. *See* Pls.' Mot. at 8–9. They have thus failed to show that common answers are likely to be found in litigating their claims. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). Accordingly, the proposed class does not meet the commonality requirement under Rule 23(a)(2).

**2.** Turning next to typicality under Rule 23(a)(3), the named plaintiffs' claims here are not typical. Typicality requires that a representative's claims arise from "the same event or practice or course of conduct" and be "based on the same legal theory" as the absent class members' claims. *Lacy v. Cook County, Ill.*, 897 F.3d 847, 866 (7th Cir. 2018). Here again, the plaintiffs argue that typicality is met because their "claims . . . stem from the same uniform DHS action[.]" Pls.' Mot.

---

[3] Defendants acknowledge that the Seventh Circuit has allowed classes that include a de minimis number of uninjured members (meaning they lack Article III standing). *See Messner*, 669 F.3d at 823–24. The circuits are split on this issue, *see In re Asacol Antitrust Litig.*, 907 F.3d 42, 46-47 (1st Cir. 2018), and the Supreme Court granted certiorari to address it, but dismissed the case as improvidently granted, *see Labcorp v. Davis*, No. 24-304 (June 5, 2025). Defendants maintain that the Seventh Circuit's side of that split is incorrect and wish to preserve further argument on this issue.

at 9. But even though "typical" does not mean identical, *see, e.g.*, *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983), typicality fails where the named representatives' factual circumstances are materially different from those of unnamed members in ways that bear on the merits or on available alternative relief, *see, e.g.*, *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724–26 (7th Cir. 2011) (reversing certification where named plaintiff's circumstances created atypical merits posture).

The six named plaintiffs here are strikingly atypical in multiple respects. Each has a purportedly unusual personal political or identity-based profile giving rise to an alleged individualized fear of persecution: Aung Doe is an alleged publicly identified religious leader who led disaster-relief fundraising; Nina Doe is an alleged Fulbright scholar who worked with Rohingya communities and with Doctors Without Borders; Khin Thet Doe allegedly participated in pro-democracy protests and bears a tattoo identified with the resistance; Thura Doe is allegedly openly bisexual (a criminal status under Burmese law) with family ties to a dissolved political group; Chu Let Doe was allegedly actively hunted by Burmese security forces after the coup and evacuated from the country by U.S. Embassy assistance; and Maung Doe claims to be an ethnic Nepali activist with continuing organizing work. *See* Compl. ¶¶ 9–14, 161–82. These profiles may support *individual* claims for withholding of removal, protection under the Convention Against Torture, or asylum.

But the ordinary Burmese TPS holder within the four thousand putative class members has no comparable profile. The proposed class sweeps in every person granted or eligible for TPS as of November 25, 2025—including individuals who entered on student, work, or tourist visas and who have no political or ethnic profile attracting any attention from the Burmese government. For some class members, TPS may be the *only* protection against removal. But the six named plaintiffs

8

have additional potential avenues to lawful status that most proposed class members will lack: Aung Doe has a pending visa petition with U.S. Citizenship and Immigration Services, *see* Compl. ¶¶ 9, 161; Nina Doe and Khin Thet Doe are each married to U.S. citizens with potential adjustment pathways to lawful permanent residence, *see id.* at ¶¶ 10–11, 164, 167; Thura Doe may have a claim for asylum based on his alleged family's membership in the former National League for Democracy and alleged sexuality, *id.* at ¶¶ 12, 173–74; and Chu Let Doe entered on humanitarian parole so she could apply for asylum "after the coup in March 2021," *id.* at ¶¶ 13,179. These possible alternative pathways to lawful status—whose availability to ordinary class members plaintiffs do not address—create divergent incentives regarding the pace and scope of relief. That divergence matters to the typicality analysis because it affects the strength, scope, and urgency of each member's stake in the litigation, as well as the terms on which any settlement might rationally be negotiated. *See Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011) (finding atypicality where named plaintiffs' distinct factual posture affected their litigation incentives).

The named plaintiffs' profiles make them atypical as representatives of the equal-protection claim. The complaint frames that claim around animus toward "non-white, non-European" immigrants, *see* Compl. ¶¶ 5, 204, but the evidence the complaint relies upon for this assertion consists of statements that are unrelated to Burmese nationals. *See* Compl. ¶¶ 85–86, 120–48. Plaintiffs' unusual backgrounds are not the profiles around which an equal protection question should be framed for an entire class. And typicality is not satisfied where the representatives' atypicality threatens to become the focus of the litigation. *See CE Design*, 637 F.3d at 726.

## B. Plaintiffs Cannot Satisfy Rule 23(b)(2)'s Requirements

For the same reasons that plaintiffs cannot satisfy the requirements of Rule 23(a), the court

should reject their assertion that Rule 23(b)(2) has been satisfied. *See* Pls.' Mot. at 12–13. Rule 23(b)(2) provides that a class action can be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (internal quotations and citation omitted). "It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id*. Stated differently, "if the proposed class includes members who are not at risk of injury based on the enforcement of the [termination] then injunctive relief sought on behalf of the class as a whole under Rule 23(b)(2) would be inappropriate." *Greater Chautauqua Fed. Credit Union v. Quattrone*, No. 22 Civ. 2753, 2025 WL 869729, at *12 (S.D.N.Y. Mar. 20, 2025); *see also Brown v. Kelly*, 609 F.3d 467, 482 (2d Cir. 2010) (denying Rule 23(b)(2) statewide class certification because the proposed definition of the class includes members who are not at risk of injury by the defendants). Therefore, the court must take into consideration whether the relief sought "is proper for each and every member of the group." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2nd Cir. 2020).

Class certification does not satisfy Rule 23(b)(2) here because each individual class member may be entitled to a different injunction or declaratory judgment against the federal government, if any, or none at all. As alluded to above, some putative class members may lack standing altogether—which is a problem. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) ("To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing."). To establish

10

standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* at 423. Here, the fact that certain putative class members would lack a concrete injury despite the termination of TPS necessarily runs afoul of the requirements of Rule 23(b)(2) as the remedy plaintiffs seek would not provide relief to all class members. *See Greater Chautauqua*, 2025 WL 869729, at \*12 ("The need for these individualized inquiries and the fact that the relief sought would be difficult, if not impossible, to apply on a classwide basis runs contrary to Rule 23(b)(2)."). Accordingly, plaintiffs have failed to meet the requirements of Rule 23(b)(2) for class certification.

In addition, each form of relief plaintiffs seek under Rule 23(b)(2) is impermissible. Plaintiffs' request for a class-wide injunction or declaratory judgment is plainly barred by 8 U.S.C. § 1252(f)(1), which "prohibits federal [district] courts from granting classwide injunctive relief against the operation of" certain immigration statutes. *Jennings v. Rodriguez*, 583 U.S. 281, 313 (2018) (citation omitted); *see also Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022). Section 1254a is one of those covered provisions. Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), div. C, Pub. L. No. 104-208, §§ 306, 308, 110 Stat. 3009-546. Although Section 1254a appears in Part V of the U.S. Code, the U.S. Code is inconsistent with the Immigration and Nationality Act ("INA"), wherein the TPS provisions in Section 244 appear in Chapter 4. *Id*. When there is a conflict, the Statutes at Large prevail. *See U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993) ("Though the United States Code is 'prima facie' evidence that a provision has the force of law, 1 U.S.C. § 204(a), it is the Statutes at Large that provides the 'legal evidence of laws,' [1 U.S.C.] § 112[.]"). And INA § 244 lies within chapter 4 of title II of the INA, as amended, so § 1252(f)(1) applies to it here.

Regardless of how plaintiffs frame the relief they are seeking, an order that would have the effect of enjoining or restraining DHS's implementation of the TPS provisions in § 1254a is jurisdictionally barred under § 1252(f)(1). *See Biden v. Texas*, 597 U.S. 785, 797 (2022) (§ 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or *to refrain from taking* actions to enforce, implement, or otherwise carry out the specified statutory provisions" (emphasis added) (quoting *Aleman Gonzalez*, 596 U.S. at 544)); *see also* Black's Law Dictionary (12th ed. 2024) (An injunction is "[a] court order commanding or preventing an action"). To "restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action. *Aleman Gonzalez*, 596 U.S. at 549 (quoting 5 Oxford English Dictionary 756 (2d ed. 1989)).

Section 1252(f)(1) thus plainly bars class-wide injunctive relief (which would impermissibly "enjoin" the operation of a covered provision) and class-wide declaratory relief or relief under the APA (which would impermissibly "restrain" the covered provision's operation). *See California v. Grace Brethren Church*, 457 U.S. 383, 408 (1982) (holding that a similarly phrased provision barred declaratory relief). An order to "set aside" the termination determination for Burma here would also "restrict or stop official action," *Direct Mktg. Ass'n v. Borhl*, 575 U.S. 1, 13 (2015), by prohibiting officials from relying on the agency's determinations—the practical equivalent of an injunction compelling defendants to stop giving effect to the TPS termination. *See United States v. Texas*, 599 U.S. 670, 691 (2023) (Gorsuch, J., concurring) (questioning the validity of the district court's finding that § 1252(f)(1) does not bar vacatur orders and that § 706(2) authorizes courts to issue them). Setting aside the Secretary's determinations is thus barred by

§ 1252(f)(1) because it would coerce and restrain the agency's operation of covered statutes. *See Aleman Gonzelez*, 596 U.S. at 544.

Because § 1252(f)(1) bars the award of any class-wide relief, the court should deny class certification. And to the extent the court finds that some forms of relief are available on a class-wide basis, and others are not, the court should make clear that it certifies a class only with respect to the forms of relief that it concludes *are* available. In addition, the court should not certify a class under Rule 23(b)(2) for the purpose of seeking vacatur of the TPS termination under 5 U.S.C. § 706. Rule 23(b)(2) permits certification of a class to seek two specified forms of relief: "final injunctive relief or corresponding declaratory relief." By enumerating two forms of relief that parties can seek via Rule 23(b)(2) class, the rule excludes the possibility that parties may seek other forms of relief via Rule 23(b)(2) class. *See Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1076 (2011) (discussing *expressio unius, exclusio alterius* canon). And interpreting Rule 23(b)(2) to cover additional forms of relief would render the enumerated forms of relief in that provision (final injunctive relief and declaratory relief) "entirely superfluous," which would "violat[e] the settled rule that [courts] must, if possible, construe a statute to give every word some operative effect." *Cooper Indus., Inc. v. Aviall Servs. Inc.*, 543 U.D. 157, 167 (2004). The court should thus, at minimum, decline to certify a Rule 23(b)(2) class for the plaintiffs' APA claims.

## II. The Court Should Not Certify a Nationwide Class.

Even if the court concludes that class certification is appropriate, it should not certify a nationwide class action under Rule 23(b)(1)(A). Plaintiffs argue on this score that there is a risk of incompatible treatment where, as here, immigration status is at issue. *See* Pls.' Mot. at 13–15. But "[t]hat part of the rule is concerned with the risk of inconsistent or varying adjudications that might establish incompatible standards of conduct for the defendant." *Spano v. The Boeing Co.*,

13

633 F.3d 574, 588 (7th Cir. 2011). That concern does not exist here because there is no scenario in which DHS would be bound to treat *the same* Burmese TPS holder as simultaneously removable or non-removable, or in which the agency would be ordered by one court to recognize TPS and by another to terminate it. This is because of how the binary character of the Secretary's TPS determination forecloses that possibility.

Further, the Supreme Court has previously cautioned against the certification of nationwide class actions. *See Califano*, 442 U.S. at 702. And recently, *CASA* recognized that Rule 23's predecessor, the equitable bill of peace, "involved a 'group [that] was small and cohesive,' and the suit did not 'resolve a question of legal interpretation for the entire realm.'" *CASA*, 606 U.S. at 848. Relatedly, several justices cautioned against reflexively certifying nationwide class actions to provide "nationwide class relief" that would be an end-run around the now forbidden universal injunction. *Id.* at 868 (Alito, J., concurring). "[D]istrict courts should not view [*CASA*] as an invitation to certify nationwide classes without scrupulous adherence to the rigors of Rule 23." *Id.* "Putting the kibosh on universal injunctions does nothing to disrupt Rule 23's requirements." *Id.*; *see also N.H. Indonesian Cmty. Support v. Trump*, 765 F. Supp. 3d 102, 112 (D.N.H., 2025) (recognizing the need the need to limit relief only as necessary when it previously declined to issue a universal injunction in a prior challenge an executive order).

This court should heed that caution here. Despite seeking nationwide class relief in the wake of *CASA*, plaintiffs offer no argument about why nationwide relief is actually necessary to resolve their APA claims. At most, then, the court should certify a class limited to this judicial district. *See, e.g.*, *Bova v. Cox Commc'ns, Inc.*, No. 01-cv-90, 2001 WL 1654708, at *4 (W.D. Va. Dec. 12, 2001) (limiting the class action to the Western District of Virginia). Congress exercised its power to create lower courts by devising a system under which most issues are resolved within

14

12 geography-based circuit courts of appeals. It is a feature of this system that district judges within each circuit can reach different opinions on the same question of law before the circuit rules. And even once a circuit rules, the issue can continue to percolate within other circuits until the matter is taken up by the Supreme Court. Congress recognized the need for nationwide uniformity on some questions of law; the U.S. Court of Appeals for the Federal Circuit, for example, serves that purpose for some questions. But Congress decided against giving those courts jurisdiction over the subject of this suit, instead preferring a system where different circuits may opine on particular legal questions and leave uniform resolution of legal questions to the Supreme Court.

Certifying a nationwide class, with no possibility of opt-outs, would foreclose any possibility of percolation of TPS for Burmese nationals in other judicial districts, ensuring that no such plaintiff can sue elsewhere. Accordingly, the class should be limited to this judicial district. And if the court concludes that plaintiffs can obtain class certification, the court should still not certify a nationwide class without a showing from plaintiffs of why nationwide class certification is necessary.

## Conclusion

For the foregoing reasons, the court should deny plaintiffs' motion for class certification.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Joshua S. Press
JOSHUA S. PRESS
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-7625
joshua.press@usdoj.gov

15