# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| Aung DOE; Nina DOE; Thura DOE; Khin Thet DOE; Chu Let DOE; and Maung DOE, on their own behalf and on behalf of others similarly situated, | Case No. 1:25-cv-15483 |
| *Plaintiffs*, | Judge Kennelly |
| *– versus –* | |
| MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security, in his official capacity; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; and UNITED STATES OF AMERICA, | |
| *Defendants*. | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

**INTRODUCTION**

Plaintiffs' challenge to the termination of Temporary Protected Status ("TPS") for Burma is a prime case for resolution in a class action. The Named Plaintiffs raise identical questions of law and fact regarding Defendants' singular termination decision that can be resolved in one stroke by this Court, resolving all class members' injuries.

Defendants' Opposition makes much of the variation in the putative class members' ethnic backgrounds and immigration considerations as somehow precluding class certification. But Named Plaintiffs and the Proposed Class members all seek the same relief that can be issued by this Court, and all are at risk of losing TPS due to Defendants' termination decision, which is a concrete and universal injury. Responding to concerns raised in Defendants' opposition, Plaintiffs have proposed revising the class definition to ensure greater clarity that all class members were injured by Defendants' termination.

Defendants also raise arguments regarding Rule 23(b)(2) certification that have already been rejected by this Court. Defendants' citation of *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025) cuts against their argument rather than supports it— nationwide class certification remains available and appropriate here in light of the *CASA* decision.

Plaintiffs have met the requirements of Rule 23(a), (b)(2), and (b)(1)(a) and respectfully request that the Court certify the Proposed Class.

**ARGUMENT**

**I.      The Proposed Class Satisfies Rule 23(a) Commonality**

Defendants wrongly argue that both the nature of the equal protection claim in this lawsuit and the differences in the Named Plaintiffs' backgrounds impede the ability for this Court to resolve the common legal and factual questions at issue. *See* Defs.' Resp. in Opp'n to Pls.' Mot. for Class Cert. ("Opp. Br.") 4–7, Dkt. 72. But commonality is a "low hurdle," *Kohen*

*v. Pac. Inv. Mgmt. Co. LLC*, 244 F.R.D. 469, 476 (N.D. Ill. 2007), aff'd, 571 F.3d 672 (7th Cir. 2009) and "even a single common question will do" to satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (citation modified). The common questions of law here relate to both whether the Defendants followed the TPS statute's required process under the Administrative Procedure Act ("APA") and whether the Defendants' decision to terminate the program for all class members was motivated by unconstitutional racial animus. *See* Compl. ¶¶ 4–5, 28–36, 58–68, 71, 150–160, 202–206, Dkt. 1.

Defendants attempt to argue that the different backgrounds of the Named Plaintiffs preclude them from seeking class certification because of how their ethnic backgrounds will impact the analysis of their equal protection claim.[1] Opp. Br. 5–6, Dkt. 72. But Defendants' discussion confuses the nature of the claim. The equal protection claim is not alleged based on discriminatory animus toward every distinct ethnic group the named Plaintiffs are part of—it is based instead on broader animus toward non-white immigrants as part of a policy effort to limit non-white immigration. Compl. ¶¶ 58, 119–49, Dkt. 1. The fact that racial discrimination was a "motivating factor" of the termination impacts the policy as a whole. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977) (holding a policy may be unconstitutional even where racial discrimination was one of numerous motivating factors).

Defendants' reliance on *Wal-Mart* is misplaced— *Wal-Mart* involved potential certification of a class action involving approximately 1.5 million gender-based employment discrimination claims, each of which concerned individualized employment decisions. *See Wal-Mart,* 564 U.S. at 357 (gender disparities at the national level did not support the inference of a

---

[1] Defendants do not contest that Plaintiffs raise common questions in regard to their APA claims, and having common questions regarding these claims is sufficient to meet the commonality prong. Opp. Br. 5.

"uniform, store-by-store disparity" upon which plaintiff's theory depended). The *Wal-Mart* Court explained: "respondents have identified no 'specific employment practice'" that they were challenging, "much less one that ties all their 1.5 million claims together." *See id.* In other words, there were questions of fact that related to each individual employment decision and how it was potentially impacted by discriminatory intent. In contrast, this case does not hinge on any individualized decisions or assessment of facts as to each Burmese TPS holder. Rather, this case will resolve whether racial discrimination infected Defendants' singular decision to terminate Burma's TPS, and the answer to that question will either lead to the end or continuation of TPS benefits for the entire class as a whole.

## II. The Proposed Class As Modified Is Properly Bounded.

In their opposition, Defendants argued that the proposed class definition was overbroad insofar as it included individuals who would not benefit from the relief sought in this case because they had previously been granted TPS protection but had since lost it or no longer relied on it. Opp. Br. 6-7, Dkt. 72.

In order to more narrowly tailor the scope of the class, Plaintiffs now offer the following revised class definition:

> All persons in the United States who have, or were eligible for, Temporary Protected Status for Burma under 8 U.S.C. § 1254a and 8 C.F.R. § 244.2 prior to the November 25, 2025 termination notice.

The proposed class is ascertainable because it identifies a particular group of Burmese persons who hold or are eligible for TPS, were harmed during a particular time frame (the November 25, 2025 termination), in a particular location (the United States), and in a particular way (loss of lawful status, work authorization, and protection from detention and removal). *See Mullins v. Direct Digital, LLC,* 795 F.3d 654, 660 (7th Cir. 2015) (stating that a clearly defined class should generally identify a particular group, time frame, location, and harm). The class

3

consists of Burmese nationals in the United States whose TPS interests the termination forecloses. Current TPS holders lose their status and protection from deportation. Pending applicants—236 of them by Defendants' count, 90 Fed. Reg. at 53,381—lose adjudication of their applications, as well as interim protection from deportation. Persons whose previously-granted TPS lapsed but who retained a regulatory pathway to seek late re-registration upon good cause lose that pathway. *See* 8 C.F.R. § 244.17(b). And persons who held qualifying statuses at the time of a prior initial registration period—including nonimmigrants, parolees, and person with pending applications for asylum or other relief from removal—retained registration rights under 8 C.F.R. § 244.2(f)(92) for any subsequent extension of the Burma designation. The termination forecloses each of these pathways.

Defendants' three hypothetical categories of individuals who would lack standing do not undermine the class. Opp. Br. 6–7, Dkt. 72. To the extent naturalized citizens and lawful permanent residents (LPRs) hold no TPS-based protections the termination can reach, they fall outside the revised definition. Persons no longer in the United States are excluded by the class's geographic limitation. And persons who failed to timely re-register remain in the class for the reasons explained above. Class members meeting these criteria are clearly identifiable from Department of Homeland Security ("DHS") records. The class is therefore clearly defined and ascertainable. *Mullins*, 795 F.3d at 659.

A class is impermissibly overbroad only when its definition "sweeps within it persons who could not have been injured." *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009); *see Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (distinguishing class members "who were not harmed" from those "who could not have been harmed"). The revised definition makes clear that the Proposed Class only includes individuals

4

who stand to face harm— namely the loss of TPS status, work authorization, and accompanying protections from deportation and detention— if TPS is terminated. Where minor overbreadth exists, the proper response is to refine the class definition—as Plaintiffs have done here— not deny certification. *Messner*, 669 F.3d at 825; *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014); *Scott v. Dart*, 99 F.4th 1076, 1093 (7th Cir. 2024). If the Court were to find any remaining overbreadth in the proposed definition, it retains authority to further narrow the certified class under Rule 23(c)(1)(C).

## III.  The Proposed Class Satisfies Rule 23(a) Typicality

The Named Plaintiffs' claims are typical of those of the members of the Proposed Class because they all seek the same relief from the same harm caused by Defendants' conduct— *i.e.*, relief under the Administrative Procedure Act and the Fifth Amendment from the threatened loss of TPS due to Defendants' wrongful termination of TPS for Burma. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokley–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983) (citation modified). Defendants attempt to penalize the Named Plaintiffs for sharing each of their stories and harms for the purposes of this litigation, arguing that these unique attributes make them atypical of other TPS holders, with potential pathways for other types of immigration relief. Opp. Br. 7–9, Dkt. 72. Defendants' speculation about the potential options for the Named Plaintiffs is irrelevant. The Named Plaintiffs' claims all arise from the same termination, and the same relief would apply to them and other class members should they prevail. If TPS is terminated, they will immediately be at risk of detention, which already is a harm sufficient to warrant class certification.

Even if other immigration relief were available to Named Plaintiffs as Defendants contend,[2] those options in no way would eliminate the harm caused by the loss of TPS or make that harm any less redressable by this litigation because other forms of immigration relief such as asylum or visas do not offer the same protection from detention and deportation as TPS. In any event, none of the Named Plaintiffs currently holds any immigration status other than TPS or has any immediate pathway to permanent legal status.

Defendants also repeat the false contention raised in their commonality arguments that Named Plaintiffs' different ethnic backgrounds make them "atypical" for the purposes of the equal protection claim. Opp. Br. 9, Dkt. 72. But as discussed previously, the equal protection claim is about the administration's policy of discrimination against non-white immigrants. The statements from the complaint that display racial animus demonstrate a pattern of discriminatory sentiments about a wide range of non-white communities, including statements directly related to non-white TPS holders.

For these reasons, there is "congruence between the named representative[s'] claim[s] and that of the unnamed members of the class[.]" *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011).

**IV.** **The Proposed Class Satisfies the Requirements for Both a Rule 23(b)(2) and Rule 23(b)(1)(A) Class**

Plaintiffs meet the requirements for class certification under Rule 23(b)(2) class because

---

[2] This argument is undermined by Defendants' own actions. Defendants have paused consideration of United States Citizenship and Immigration Services ("USCIS") benefits applications, including the potential asylum and adjustment of status benefits discussed in Defendants' Opposition, Opp. Br. 8-9, Dkt. 72, for individuals from Burma and 39 other countries. Policy Memorandum from U.S. Citizenship and Immigration Services, *Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries* (Jan. 1, 2026), https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0194-PendingApplicationsAdditionalHighRiskCountries-20260101.pdf. This cuts off major avenues for affirmative immigration relief. In addition, if TPS ends, TPS holders would fall out of lawful status and be deemed ineligible for many types of immigration benefits. *See Compl.* at ¶ 155.

of the "indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (citation modified). Defendants' unlawful termination of TPS "appl[ies] generally to the class," and this Court's determination of equitable relief will resolve the issue for the entire class. Fed. R. Civ. P. 23(b)(2).

Defendants claim that Rule 23(b)(2) certification is inappropriate because "each individual class member may be entitled to a different injunction or declaratory judgment against the federal government, if any, or none at all." Opp. Br. 10, Dkt. 72. This is false— Plaintiffs' claims seek relief that would decide the validity of TPS for the entire class, and the speculative assertion that some members of the proposed class may have alternative paths for non-TPS forms of immigration relief does not change the calculus. Members of the Proposed Class need not all experience identical injuries to be certified. *See De La Fuente*, 713 F.2d at 232. ("The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members."). What is key for the (b)(2) inquiry is instead the indivisible nature of the remedy— Defendants cannot reasonably dispute that a single order would provide full, classwide relief— relief that would keep in place class members' status and benefits under TPS.

Defendants repeat already-rejected arguments that Plaintiffs' claims are barred by 8 U.S.C. § 1252(f)(1),[3] which precludes classwide injunction against the operation of certain

---

[3] This Court already held 8 U.S.C. § 1252(f)(1) does not apply to the provisions of the TPS statute. *See* Dkt. 51, Mem. Op. 23-25. As the Court explained, "[S]ection 1252(f)(1) applies only to operation of the provisions of part IV of this subchapter…The TPS statute is in part V of that subchapter, outside of section 1252(f)(1)'s reach." *Id.* at 24. (citation modified) Citing *CASA, Inc. v. Noem*, 792 F. Supp. 3d 576 at 594 (D. Md. 2025). Numerous additional courts have already held that 8 U.S.C. § 1252(f)(1) does not bar postponement or vacatur under the APA. *See Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022); *accord CASA*, 2025 WL 1907378, at *13.

provisions of the Immigration and Nationality Act. Moreover, such arguments speak to the availability of certain remedies, not the propriety of class certification. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999) (Section 1252(f) is "nothing more or less than a limit on injunctive relief.").

Defendants' arguments regarding why a Rule 23(b)(1)(A) class is inappropriate are also unilluminating. Opp. Br. 13-14, Dkt. 72. They argue there is no risk of "incompatible standards of conduct for the defendant" because of how "the binary character of the Secretary's TPS determination forecloses that possibility." *Id.* But Defendants fail to contend with what multiple courts making different determinations on the lawfulness of the termination would mean, and how Defendants would assess the validity of TPS status for each person in the midst of different rulings. *See* Mot. for Class Certification 13-14, Dkt. 63. Simply asserting that the TPS termination decision is binary does not adequately address the concern of different and inconsistent rulings leading to incompatible standards. *See Moreno v. Napolitano*, No. 11-C-5452, 2014 WL 4911938, *11–12 (N.D. Ill. Sep. 30, 2014) (certifying class where individual adjudications on the lawfulness of a single government policy "would create a risk of inconsistent results that would establish incompatible standards of conduct for Defendants").

## V. Nationwide Certification is Appropriate

Certification of a nationwide class for this action is proper. Plaintiffs challenge a single agency action with nationwide effect, and "[n]othing in Rule 23 … limits the geographical scope of a class action that is brought in conformity with that Rule." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (upholding a nationwide class certification against an agency's nationwide procedure).

Defendants rely on *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025) to caution against the certification of nationwide classes, but *CASA* explicitly affirms the continued availability of

nationwide class certification where appropriate. *CASA* concerned universal injunctions outside of the class action context and acknowledged that nationwide class certification remains a viable pathway for plaintiffs seeking nationwide relief.[4] *See id.* at 2566 (Alito, J., concurring) ("Of course, Rule 23 may permit the certification of nationwide classes[.]"); *id.* at 2569 (Kavanaugh, J., concurring) (observing district courts may "grant or deny the functional equivalent of a universal injunction—for example, by granting or denying a preliminary injunction to a putative nationwide class under Rule 23(b)(2)").

Despite Defendants' contention otherwise, Plaintiffs have advanced arguments for why nationwide relief is necessary in this case. *See See* Mot. for Class Certification 3–7, Dkt. 63 (describing the widespread, uniform harms shared by a putative class dispersed nationwide). Moreover, nationwide class certification is particularly suited to the TPS context. A TPS designation is created through a single agency action and available to eligible foreign nationals no matter where they reside in the United States. *See Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1028 (9th Cir. 2025) ("the TPS statute contemplates only a single binary determination for each country's TPS designation"); *see also Nat'l TPS All. v. Noem*, No. 25-CV-05687-TLT, 2025 WL 4110426 (N.D. Cal. Oct. 2, 2025) (granting nationwide class certification in challenge to the termination of TPS for Nepal, Honduras, and Nicaragua).

Defendants cannot harmonize their request for limited class certification with their admission that TPS designations are "binary" in nature. Opp Br. 14, Dkt. 72. Defendants claim "there is no scenario in which DHS would be bound to treat the same Burmese TPS holder as

---

[4] The availability of nationwide class actions in the wake of the Supreme Court's decision in *CASA* was immediately affirmed in the very same case, when on remand, the district court certified a nationwide class of children and parents harmed by the executive order ending birthright citizenship. *See CASA, Inc. v. Trump*, 793 F. Supp. 3d 687 (D. Md. 2025).

simultaneously removable or non-removable, or in which the agency would be ordered by one court to recognize TPS and by another to terminate it." *Id*. But these are precisely the scenarios that would arise should multiple courts reach divergent conclusions about the lawfulness of the termination. DHS officials would face questions about whether they could target a class member who lived within the judicial district but traveled for work outside of the district. Limiting the effect of the termination decisions in only certain parts of the country would result in a "judicially created patchwork" and "effectively mean rewriting [the termination] in a way that does not comply with the TPS statute." *Nat'l TPS All.*, 150 F.4th at 1028.

Defendants' remaining arguments for a more limited class certification fare no better. Nationwide certification here will not intrude on cases in other districts, Opp. Br. 15, because there are no cases challenging the termination of TPS for Burma elsewhere. And Defendants' citation to a single, unpublished, out-of-Circuit case, *Bova v. Cox Commc'ns, Inc.*, No. 7:01CV00090, 2001 WL 1654708 (W.D. Va. Dec. 12, 2001), is inapposite and misplaced. Plaintiffs in *Bova* sought class certification under Rule 23(b)(1)(A) and (b)(3), not (b)(2), and the Court also lacked personal jurisdiction over out-of-state authorities involved in enforcing the challenged cable internet fee scheme. *Bova*, 2001 WL 1654708, at *3–4.

## **CONCLUSION**

For the foregoing reasons and those set forth in the Motion, Plaintiffs respectfully request an order certifying the Proposed Class under Federal Rule of Civil Procedure 23(a) and 23(b)(2), or, in the alternative, under 23(b)(1)(A); appointing Plaintiffs Aung Doe, Nina Doe, Thura Doe, Khin Thet Doe, Chu Let Doe, and Maung Doe as Named Representatives for their respective countries; and appointing the undersigned counsel as Class Counsel.

Dated: May 6, 2026

Respectfully submitted,

ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
*/s/ Dinesh McCoy*
Dinesh McCoy
Phi Nguyen
Razeen Zaman
Helen Anne Schutz Lo
Niji Jain
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932
dmccoy@aaldef.org
pnguyen@aaldef.org
rzaman@aaldef.org
alo@aaldef.org
njain@aaldef.org

THE LAW OFFICES OF JUNE J. HTUN
*/s/ June Htun*
June Htun
3643 West Belmont Avenue
Chicago, Illinois 60618
(773) 362-5000
june@htunlaw.com

INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
*/s/ Guadalupe Aguirre*
Guadalupe Aguirre
Ghita Schwarz*
Pedro Sepulveda
One Battery Park Plaza, Fl 33
New York, NY 10004
(929) 246-0154
laguirre@refugeerights.org
gschwarz@refugeerights.org
psepulveda@refugeerights.org

Megan Hauptman
650 Massachusetts Ave
NW Suite 600
Washington, D.C. 20001
(646) 939-7329
mhauptman@refugeerights.org

*Counsel for Plaintiffs*

*\*Application for admission Pro Hac Vice
forthcoming*