| | | |
|---|---|---|
| AUNG DOE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 25 C 15483 |
| | ) | |
| MARKWAYNE MULLIN, in his official | ) | Judge Kennelly |
| capacity as Secretary of Homeland Security, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **DEFENDANTS' MOTION TO STAY PROCEEDINGS**

The six plaintiffs in this proposed class action are natives and citizens of Burma (also known as Myanmar) with Temporary Protected Status ("TPS"). They challenge the Secretary of Homeland Security's determination to terminate TPS designation for Burma (more specifically, the effective date). *See generally* Dkt. 1 ("Compl."); *see also* 90 Fed. Reg. 53,378 (Nov. 25, 2025). Defendants now respectfully move, under this court's inherent authority to control the disposition of the cases on its docket, to stay all further proceedings in this action (including plaintiffs' pending Motion to Complete the Administrative Record, Compel Extra-Record Discovery, and Enter a Protective Order, Dkt. 75) pending the Supreme Court's disposition of two cases that will likely control the questions presented here: *Noem v. Dahlia Doe*, No. 25-1083, and *Trump v. Miot*, No. 25-1084. This court's order postponing the effective date of Burma's TPS termination, Dkt. 51, would remain in effect throughout the stay. A stay at this time would therefore impose no hardship on plaintiffs, whose status quo is fully preserved, while sparing the court and the parties the burden of costly, intrusive, and potentially needless litigation over discovery and the administrative record, which the Supreme Court's forthcoming decisions may moot or fundamentally reshape.

By way of review, this court's jurisdiction over plaintiffs' claims, and the viability of those claims, rest on its construction of three judicial-review and remedial provisions within the Immigration and Nationality Act ("INA"): 8 U.S.C. §§ 1254a(b)(5)(A), 1252(a)(2)(B)(ii), and 1252(f)(1), and on the legal standard that governs plaintiffs' equal-protection claim. These questions are now before the Supreme Court in *Dahlia Doe* and *Miot*, which were argued on April 29, 2026, and which will be decided by the end of this month. Indeed, the plaintiffs themselves acknowledge that the "jurisdictional arguments in the Syria and Haiti cases are the same as those in the Burma case." Dkt. 75 at 2.

Moreover, the Seventh Circuit has already concluded that the proper course is to await the Supreme Court. To that end, it has held the government's appeal from this court's postponement order in abeyance pending the decisions in *Dahlia Doe* and *Miot*. And although class-certification is presently before this court (as it is not involved in defendants' appeal to the Seventh Circuit), it would make little sense for discovery and record-rule litigation to proceed in this court while the appeal from the very order that drives that litigation is paused for the same decisions. This same logic of judicial economy is why some other district courts confronting *materially identical* TPS challenges have reached the same conclusion and stayed their cases for precisely the same rulings. *See, e.g.*, *African Communities Together v. Mullin*, No. 26-cv-10278, Dkt. 61 (D. Mass. Apr. 20, 2026) (holding challenge to Ethiopia's TPS termination in abeyance pending *Dahlia Doe* and *Miot*, with the postponement order left in effect). The same course is warranted here.

**Background**

This court is familiar with the relevant background, and defendants incorporate the corresponding portions of their opposition to plaintiffs' motion for preliminary relief. *See* Dkt. 34 at 1–4. For present purposes, defendants will keep the relevant procedural history here brief.

On November 25, 2025, the Secretary of Homeland Security terminated Burma's TPS designation, effective January 26, 2026. *See* 90 Fed. Reg. 53,378 (Nov. 25, 2025). The plaintiffs sued on December 19, 2025, asserting two claims under the Administrative Procedure Act ("APA") and one equal protection claim under the Fifth Amendment's Due Process Clause. On January 23, 2026, this court granted plaintiffs' motion to postpone the effective date of the termination under 5 U.S.C. § 705, finding a likelihood of success on the APA claims and declining to reach the equal-protection claim. *See* Dkt. 51. In so doing, this court rejected defendants' arguments that §§ 1254a(b)(5)(A), 1252(a)(2)(B)(ii), and 1252(f)(1) foreclose review, holding that it retained jurisdiction over what it characterized as plaintiffs' "general collateral challenges" to a pattern and practice, but not over challenges to any "discrete TPS determination." *Id.*, slip op. at 17.

Defendants moved to stay the postponement order pending appeal, and this court denied that motion. Dkt. 66. Defendants appealed, and their appeal is pending at the Seventh Circuit, where it has been held in abeyance pending the Supreme Court's disposition of *Dahlia Doe* and *Miot*. *See* Appeal No. 26-1294, ECF No. 24. Meanwhile, the Supreme Court granted the government's petition for certiorari before judgment in *Noem v. Dahlia Doe*, No. 25-1083, and *Trump v. Miot*, No. 25-1084. Those cases present challenges to TPS terminations for Syria and Haiti, respectively, and present the same INA judicial-review and remedial questions this court's injunction resolved, as well as the standard that governs equal-protection challenges to TPS terminations. The cases were argued on April 29, 2026, and decisions are expected by the end of this month.

Hoping to accelerate district-court litigation while defendants' appeal to the Seventh Circuit was stayed, the plaintiffs filed a motion, Dkt. 75, seeking far-reaching extra-record

discovery—four requests for production sweeping across the entire 2025–26 set of TPS terminations and the implementation of Executive Orders 14,159 and 14,163—along with "completion" of the administrative record and entry of a protective order.  This motion follows in the hopes of stemming any more litigation until the Supreme Court's rulings in *Dahlia Doe* and *Miot* are handed down.

**Legal Standard**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005) (same).  In exercising that authority, a court "must weigh competing interests and maintain an even balance" between its own interest in judicial economy and any hardship to the parties.  *Landis*, 299 U.S. at 254–55.  In particular, a stay is appropriate where the resolution of an independent proceeding is likely to "narrow the issues in the pending case[] and assist in the determination of the questions of law involved."  *Id.* at 253 (quotations omitted).

**Argument**

**I.      The Supreme Court's Decisions in Dahlia Doe and Miot Will Control or Substantially Narrow the Questions Presented In This Case.**

A stay is plainly warranted where, as here, a pending appellate decision will resolve the controlling legal questions.  This court's jurisdiction, along with the survival of plaintiffs' claims, depends on the same INA provisions at issue in *Dahlia Doe* and *Miot*.  This court read § 1254a(b)(5)(A) to bar review of "discrete" TPS determinations while permitting "collateral"

pattern-and-practice challenges; it held that § 1252(a)(2)(B)(ii) does not reach the Secretary's periodic-review and termination decisions; and it concluded that § 1252(f)(1) does not bar the relief plaintiffs seek. *See* Dkt. 51. The Supreme Court may resolve each of those questions differently. If it adopts the government's reading of any of them, plaintiffs' claims (or the relief available on them) may be eliminated. It makes little sense to litigate things until the Supreme Court's resolution of these bigger-ticket issues.

Even on the narrowest outcome, the Supreme Court's decisions will furnish controlling guidance. For example, the plaintiffs note that the government acknowledged in the Supreme Court that § 1254a(b)(5)(A) does not bar equal-protection claims. Dkt. 75 at 2. But the standard of review that governs such a claim is squarely presented in the two cases before the Supreme Court and will therefore be enormously significant over whether and how any equal-protection discovery could proceed. This is important here because the discovery plaintiffs seek is expressly built around the evidentiary categories of *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). *See* Dkt. 75 at 7–9. If the more deferential rational-basis standard of review controls, though, then that discovery will have been for nothing. There is no sound reason to undertake such discovery before the Court has spoken.

Simply put, this is a paradigmatic case for a *Landis* stay: a higher court is poised to decide questions in a matter of weeks that will "narrow the issues" and "assist in the determination of the questions of law involved" in this very litigation about identical points of law. 299 U.S. at 253.[1]

---

[1] Defendants maintain, as they have explained elsewhere, that 8 U.S.C. § 1252(f)(1) independently forecloses the class-wide injunctive, declaratory, and vacatur relief plaintiffs seek, regardless of the merits of their claims. Moreover, the scope of § 1252(f)(1) is itself among the questions presented in *Dahlia Doe* and *Miot*.

**II.     A Stay Will Conserve Judicial and Party Resources and Avoid Duplicative, Premature, and Potentially Inconsistent Proceedings.**

Each component of plaintiffs' motion for discovery would be reshaped or mooted by the Supreme Court's decisions. Dkt. 75.  For example, the extra-record discovery plaintiffs seek, which would reach into the Secretary's deliberations and the mental processes of agency officials across a dozen TPS terminations, the "completion" of the administrative record, attendant litigation over the deliberative-process privilege, and plaintiffs' proposed protective order, all presuppose that plaintiffs' claims will go forward as they are presently constituted and that the relief plaintiffs seek is available.  If the Supreme Court holds otherwise, however, *none* of that work or discovery will serve any purpose.  Proceeding now thus risks performing the same tasks twice and generating rulings the court may be required to revisit shortly after the Supreme Court rules in less than a month.

The resulting burden would fall most heavily on defendants, which would be put to the considerable expense and intrusion of discovery into Executive Branch decisionmaking, which is the very subject of the pending appeal and the Supreme Court's review.  *See, e.g.*, *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (a stay is appropriate to avoid the "hardship [and] inequity" of being "required to go forward" while parallel proceedings are pending).  And "[l]itigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests." *Naegele v. Albers*, 355 F. Supp. 2d 129, 141 (D.D.C. 2005).  Allowing this court's docket and the Supreme Court's docket to advance on the same questions in tandem invites exactly the inconsistent rulings that a stay is intended to prevent.

Indeed, other courts have reached the same conclusion in indistinguishable circumstances. In *African Communities Together v. Mullin*, the District of Massachusetts held a challenge to the termination of Ethiopia's TPS designation in abeyance pending the decisions in *Dahlia Doe* and

*Miot*, and expressly left its postponement order in place during the abeyance. No. 26-cv-10278, Dkt. 61 (D. Mass. Apr. 20, 2026). That is the most sensible path, and this court should follow it here.

**III.    The Balance of Hardships and the Public Interest Favor a Stay, and Plaintiffs Face No Cognizable Prejudice.**

Finally, it is important to note that a stay of proceedings in this court would not cost plaintiffs anything they have won thus far. This court's § 705 postponement of the Burma TPS termination, Dkt. 51, would remain in effect, and the Seventh Circuit has not stayed it. Burmese TPS holders such as the plaintiffs therefore remain protected throughout defendants' proposed stay. Plaintiffs identify no harm from waiting for controlling law by the Supreme Court before taking discovery. Their stated objective (to "prepare to move for final relief," Dkt. 75 at 2), is not impaired by a pause. On the contrary, any motion for final relief is better litigated with the benefit of the Supreme Court's decisions than against the uncertainty that now surrounds the governing law.

On the other side of the balance, defendants and the public have weighty interests in avoiding premature intrusion into Executive Branch deliberations, in conserving scarce judicial resources, and in averting inconsistent rulings on questions the Supreme Court is about to decide. Where the government is a party, the assessment of harm to the opposing party and of the public interest merge. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both favor a brief, defined stay that allows the Supreme Court to speak first and respects the separation-of-powers concerns that attend judicial review of the Executive's immigration determinations. *See, e.g.*, *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210 (1953) ("Courts have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments *largely immune from judicial control*." (emphasis added)).

**Conclusion**

For the foregoing reasons, this court should stay all further proceedings in this action pending the Supreme Court's disposition of *Noem v. Dahlia Doe*, No. 25-1083, and *Trump v. Miot*, No. 25-1084, and the issuance of the Seventh Circuit's mandate in defendants' related appeal. The court's § 705 postponement order should remain in effect during that stay, and defendants respectfully propose that the parties submit a joint status report within fourteen days after the Supreme Court issues its decisions.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Joshua S. Press
    JOSHUA S. PRESS
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-7625
    joshua.press@usdoj.gov
