**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Aung DOE, et al., on their own behalf and on behalf of others similarly situated, | |
| *Plaintiffs*, | Case No. 1:25-cv-15483 |
| – *versus* – | |
| Markwayne MULLIN, Secretary, United States Department of Homeland Security, et al. | Judge Kennelly |
| *Defendants*. | |

## PLAINTIFFS' OPPOSITION TO MOTION TO STAY PROCEEDINGS

### INTRODUCTION

For Burmese TPS holders at risk of losing their families and livelihoods in the gap between an appellate decision affecting preliminary relief and this Court's final decision, every day matters. The government has not met its burden of establishing that its interests in narrowing the questions at issue or reducing litigation burdens outweigh the life-altering, real world consequences to Plaintiffs, their families, and other Burmese community members that would result from a stay. Crucially, the government is wrong in its contention that the class would not be prejudiced by a stay: because this Court's preliminary relief was based on jurisdiction that the Supreme Court could negate, Plaintiffs could lose that preliminary relief before obtaining a decision on summary judgment on their remaining claims. Neither streamlining litigation nor minimizing the government's discovery burden merits prolonging the fear and uncertainty that Burmese TPS holders face every day that this dispute remains unresolved. The Court should deny the

1

government's request to stay proceedings pending the Supreme Court's decision in litigation challenging the termination of TPS for Haiti and Syria, as well as the Seventh Circuit's disposition of the government's appeal in this case.

## BACKGROUND

Plaintiffs, six Burmese TPS holders, filed this action on December 19, 2025, challenging the government's termination of TPS for approximately 4,200 Burmese nationals. Plaintiffs allege the termination is unlawful under the Administrative Procedure Act ("APA") and violates the Equal Protection Clause of the Fifth Amendment. *See* Compl. ¶¶ 191–206, Dkt. 1. Specifically, Plaintiffs contend that the government failed to conduct the required objective review of country conditions and interagency consultation, relied on impermissible considerations, departed from longstanding notice practice without explanation, and acted with discriminatory purpose towards non-white, non-European immigrants. *Id.* ¶¶ 4–5, 28–36, 71, 202–06.

On December 23, 2025, Plaintiffs moved to postpone the effective date of the termination to prevent irreparable harm while this case is pending. Pls.' Mem. in Supp. of Mot. to Postpone 1–2, Dkt. 27. In its opposition to the motion, the government raised several jurisdictional defenses, including that 8 U.S.C. § 1254a(b)(5)(A) completely bars judicial review of any TPS determination. Defs.' Resp. 5–9, Dkt. 34. On January 23, 2026, the Court ordered postponement. Order Granting Mot. to Postpone, Dkt. 52. Defendants filed a notice of appeal on February 12, 2026. Defs.' App. Not., Dkt. 56.

Around the same time, Plaintiffs began engaging the government in discussions about discovery, as well as the production of documents redacted or withheld from the certified administrative record. Pls.' Mot. to Compel 2, Dkt. 75. The discussions continued for several months before the parties reached an impasse. *Id.* at 2–5.

On March 16, 2026, the Supreme Court accepted the government's petitions for a writ of certiorari before judgment in two cases challenging the termination of TPS for two other countries. *See Trump v. Miot*, No. 25-1084 (U.S. cert. granted Mar. 16, 2026) (Haiti); *Mullin v. Dahlia Doe*, No. 25-1083 (U.S. cert. granted Mar. 16, 2026) (Syria). These cases were consolidated and argued before the Supreme Court on April 29, 2026. Though *Miot* and *Dahlia Doe* present substantially similar issues to this case in their respective district court proceedings, only a subset of those issues are before the Supreme Court. On jurisdiction, the only question before the Supreme Court is whether § 1254a(b)(5)(A) precludes judicial review of APA—not constitutional—challenges to TPS terminations. Brief for Petitioners at 18–35, *Mullin v. Dahlia Doe*, Nos. 25-1083, 25-1084 (U.S. filed Mar. 2026); Transcript of Oral Argument at 27, *Mullin v. Dahlia Doe*, No. 25-1083, 25-1084 (U.S. argued Apr. 29, 2026). And on the merits, the only constitutional challenge for the Supreme Court's consideration is the equal protection claim in *Miot*.

On April 23, 2026, the government moved to hold the Seventh Circuit appeal in abeyance, pending the Supreme Court's dispositions of *Miot* and *Dahlia Doe*. *Doe v. Mullin*, No. 26-1294 (7th Cir.), Dkt. 23. Plaintiffs did not oppose the government's motion, *id.*, and the Seventh Circuit subsequently granted the motion without providing its reasoning. *Doe v. Mullin*, No. 26-1294 (7th Cir.), Dkt. 24.

On May 21, 2026, Plaintiffs moved the Court to compel discovery and completion of the administrative record and to enter a protective order limiting disclosure of the Plaintiffs' identities. Pls.' Mot. to Compel, Dkt. 75. In response, the government filed a motion to stay proceedings, pending the Supreme Court's dispositions of *Miot* and *Dahlia Doe* and the Seventh Circuit's disposition of its appeal. Defs.' Mot. to Stay Proceedings, Dkt. 78.

**LEGAL STANDARD**

When considering a motion to stay proceedings, the Court must consider the need for a stay and the parties' competing interests. *See Landis v. North Am. Co.*, 299 U.S. 248, 254–55 (1936). Courts typically examine whether a stay will: (1) unduly prejudice or tactically disadvantage the non-moving party; (2) simplify the issues in question and streamline the trial; and (3) reduce the burden of litigation on the parties and the court. *See Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 15-cv-1067, 2017 WL 11812653, at *2 (N.D. Ill. Mar. 24, 2017). As the moving party, the government bears the burden of establishing the need for a stay. *Clinton v. Jones*, 520 U.S. 681, 708 (1997). And "if there is even a fair possibility" that a stay "will work damage" on Plaintiffs, the government must make out a "clear case of hardship or inequity." *In re Groupon Derivative Litig.*, 882 F.Supp.2d 1043, 1045 (N.D. Ill. 2012) (quoting *Landis*, 299 U.S. at 255); *see also Radio Corp. of Am. v. Igoe*, 217 F.2d 218, 220 (7th Cir. 1954). Moreover, courts disfavor stays of discovery "because they bring resolution of the dispute to a standstill." *New England Carpenters Health & Welfare Fund v. Abbott Labs.*, No. 12 C 1662, 2013 WL 690613, at *2 (N.D. Ill. Feb. 20, 2013) (citation modified). Here, where speedy resolution of the case would help mitigate grave harm to Plaintiffs from the termination of TPS, the Court must bear in mind its "paramount obligation to [timely] exercise its jurisdiction. . . ." *United States ex rel. Robinson v. Indiana Univ. Health, Inc.*, No. 1:13–cv–02009–TWP–MJD 2015 WL 3961221, at *1 (S.D. Ind. June 30, 2015) (citation modified).

**ARGUMENT**

The balance of relevant factors weighs against a stay. On one hand, the harms to Plaintiffs from "bring[ing] resolution of the [case] to a standstill," *New England Carpenters*, 2013 WL 690613, at *2, are potentially catastrophic. On the other, the potential benefits of a stay—

simplifying the issues in question and reducing the onus of litigation on the parties—are speculative, marginal, and ultimately insufficient to meet the government's burden.

## I.    Plaintiffs Would Suffer Significant Harm from a Stay.

A stay would harm Plaintiffs by delaying their progress towards final adjudication on the merits of their claims—a delay which could have devastating consequences for Plaintiffs, their families, and thousands of other Burmese TPS holders. *See* Mem. Op. & Order 52–54, Dkt. 51. (finding Plaintiffs would suffer "significant, irreparable harms"—including arrest, detention, deportation, and loss of livelihood—without preliminary relief). The government argues that a stay would not "cost" Plaintiffs any of the protections secured under the Court's postponement order. Defs.' Mot. Stay 7, Dkt. 78. But preliminary relief is just that—preliminary. And the very appellate proceedings that form the basis of the government's request for a stay make the postponement order vulnerable to dissolution. As the government acknowledges, the Supreme Court may rule that courts lack jurisdiction to review APA challenges to TPS determinations, an outcome that would likely lead the Seventh Circuit to reverse the Court's postponement order, putting Plaintiffs and other Burmese TPS holders at imminent risk of detention, deportation, and loss of employment. *See id.*

In that event, moving as quickly as possible for final relief on their equal protection claim—which is expected to survive the Supreme Court's dispositions of *Miot* and *Dahlia Doe*, *see infra* Section II—would give Plaintiffs the opportunity to recover critical protections for Burmese TPS holders. On the other hand, halting Plaintiffs' efforts towards obtaining discovery and completing the administrative record would delay final adjudication of this case and ultimately prolong the length of time that the lives of Burmese TPS holders would hang in the balance. For some, this delay could be a matter of life or death.

### II.    No Litigation Burden to Defendants or the Court Outweigh Harm to Plaintiffs.

On the other side of the balance, the government argues, are the possibilities that a stay would narrow the questions presented in this case and save the government from engaging in discovery that the Supreme Court could render purposeless. But there is no Supreme Court outcome that would make the discovery Plaintiffs seek futile. Moreover, these arguments do not establish a "clear case of hardship or inequity" to the government, *Landis*, 299 U.S. at 255, or outweigh the possibility of substantial harm and undue prejudice to Plaintiffs.

On the issue of judicial economy, Plaintiffs concede that the Supreme Court's rulings in *Miot* and *Dahlia Doe* may impact the merits of their claims. Defs.' Mot. Stay 4–5, Dkt 78. Indeed, the possibility that the Supreme Court's decision could undo the postponement order, which rests on the likelihood of success on Plaintiffs' APA claims only, is precisely why a stay would be so harmful to Plaintiffs. But the government overstates the degree to which the Supreme Court's decision will bear on any issues currently before this Court. Practically speaking, a stay at this juncture of the case would delay class certification, discovery, and a protective order. None of these issues turn on the Supreme Court's resolution of the questions presented in *Miot* or *Dahlia Doe*.

While the Supreme Court's decision may ultimately weaken or invalidate some of Plaintiffs' APA claims, Plaintiffs' equal protection claim is almost certain to move forward. First, the government has conceded to the Supreme Court that courts may consider constitutional challenges to agency action. *See* Transcript of Oral Argument at 27, *Mullin v. Dahlia Doe*, Nos. 25-1083, 25-1084 (U.S. argued Apr. 29, 2026). Second, any Supreme Court ruling on the merits of the equal protection claim in *Miot* will not be dispositive here because this is a different case about a different country with a different set of facts. Therefore, Plaintiffs' equal protection claim

6

will remain intact. And that equal protection claim entitles Plaintiffs to both completion of the administrative record and extra-record discovery, including into the deliberative process of agency officials. *See Cook Cnty., Illinois v. Wolf*, 461 F.Supp.3d 779, 793 (N.D. Ill. 2020) (courts reviewing constitutional claims under 5 U.S.C. § 706(2)(B) must review the "whole record or those parts of it cited by a party" but are not limited to "*only* the administrative record."). This is true even if the Supreme Court rules that a more deferential standard of review governs. *See Trump v. Hawaii*, 585 U.S. 667, 704–05 (2018) (assuming the ability to look behind the face of the challenged proclamation and considering plaintiffs' extrinsic evidence as part of review). Defendants cite to no caselaw to support their argument that such a ruling on the ultimate legal standard would materially change the scope of discovery to which Plaintiffs are entitled. Defs.' Mot. Stay 5, Dkt.78. Nor can they. Even if the Court finds that the government's actions are subject to rational basis review, that inquiry still requires the Court to assess Defendants' intent and whether their actions stemmed from a "bare . . . desire to harm a politically unpopular group." *Hawaii,* 585 U.S. at 705 (citation modified). Plaintiffs would retain their right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), including discovery into Defendants' deliberative processes, which would remain relevant to assessing intent and animus. Therefore, the Supreme Court's decision will neither moot nor fundamentally reshape Plaintiffs' motion for discovery or to complete the administrative record. Likewise, the decision should have no bearing on Plaintiffs' requests for class certification or a protective order, as these are not issues before the Supreme Court in *Miot* or *Dahlia Doe.* Consequently, allowing district court proceedings to continue does not "invite[] . . . inconsistent rulings." Defs.' Mot. Stay 6, Dkt. 78. Nor is judicial economy served by delaying discovery when at least Plaintiffs' constitutional claim is likely to

7

survive the Supreme Court's decision.

The government likewise cannot establish "a clear case of hardship" that merits a stay of district court proceedings. *Landis*, 299 U.S. at 255. The government argues that it will suffer from "considerable expense and intrusion of discovery into Executive Branch decisionmaking," absent a stay. Defs.' Mot. Stay 6, Dkt. 78. This is a conclusory argument that does not meet the government's burden of justifying why all discovery should "grind to a halt," *Gookins v. Cnty. Materials Corp.*, No. 1:19-cv-00867-JPH-MJD, 2019 WL 3282088 at *1 (S.D. Ind. July 18, 2019), particularly since Plaintiffs' equal protection claim entitles Plaintiffs to seek evidence of racial animus outside the administrative record.[1] That being the case, the government has failed to show how, under any possible outcome of the appellate court proceedings, "*none* of . . . [the requested] discovery will serve any purpose." Defs.' Mot. Stay 6, Dkt. 78 (emphasis in original).

Finally, some courts have proceeded with TPS litigation even pending the Supreme Court's decisions in *Miot* and *Dahlia Doe*, including in cases where discovery is ongoing. *See Nat'l TPS All. v. Mullin*, No. 3:25-cv-01766-EMC (N.D. Cal. Apr. 24, 2026), Dkt. 415 (denying the government's motion to stay and allowing discovery to proceed); *Dahlia Doe*, No. 1:25-cv-08686 (S.D.N.Y. Apr. 20, 2026), Dkt. 77 (compelling production of unredacted USCIS Decision Memo on Syria after petition for writ of certiorari granted); *Miot v. Trump*, No. 1:25-cv-02471 (D.D.C July 30, 2025) (no stay of discovery pending Supreme Court proceedings). As the government notes, other courts have done the opposite, illustrating a split in how judges have exercised their broad discretion to manage their dockets. Of note, in the case the government cites as an example of stayed proceedings, Defs.' Mot. Stay 6, Dkt. 78; the parties jointly moved for the stay, and no

---

[1] Notably, this Court does not automatically stay discovery even when a motion to dismiss—which, unlike the appellate proceedings at issue here, *could* dispose of all claims—is pending. *See* J. Kennelly Case P., Disc. Mots. (N.D. Ill.) (last visited June 10, 2026).

deadlines were pending before the district court. *See Afr. Communities Together v. Noem*, No. 1:26-cv-10278-BEM (D. Mass. Apr. 17, 2026), Dkt. 60. That is not the case here. Consequently, *African Communities Together* is neither instructive of what the Court should do here nor representative of the only path that other courts have taken.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the government's motion to stay proceedings. Plaintiffs' motions to compel discovery and completion of the administrative record and for class certification, and all other matters before the Court, should proceed, pending the Supreme Court's decision in *Miot* and *Dahlia Doe* and the Seventh Circuit's disposition of the government's appeal of the postponement order.

Dated: June 12, 2026.

ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
*/s/ Phi Nguyen*
Phi Nguyen
Dinesh McCoy
Phi Nguyen
Razeen Zaman
Helen Anne Schutz Lo
Niji Jain
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932
dmccoy@aaldef.org
pnguyen@aaldef.org
rzaman@aaldef.org
alo@aaldef.org
njain@aaldef.org

THE LAW OFFICES OF JUNE J. HTUN
*/s/ June Htun*
June Htun
3643 West Belmont Avenue
Chicago, Illinois 60618
(773) 362-5000
june@htunlaw.com

INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
*/s/ Guadalupe Aguirre*
Guadalupe Aguirre
Ghita Schwarz*
Pedro Sepulveda
One Battery Park Plaza, Fl 33
New York, NY 10004
(929) 246-0154
laguirre@refugeerights.org
gschwarz@refugeerights.org
psepulveda@refugeerights.org

Megan Hauptman
650 Massachusetts Ave
NW Suite 600
Washington, D.C. 20001
(646) 939-7329
mhauptman@refugeerights.org

*Counsel for Plaintiffs*

*\*Application for admission Pro Hac Vice
forthcoming*

10