Aung DOE, et al., on their own behalf and on behalf of others similarly situated,

*Plaintiffs*,

– *versus* –

Markwayne MULLIN, Secretary, United States Department of Homeland Security, et al.

*Defendants*.

Case No. 1:25-cv-15483

Judge Kennelly

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM

### INTRODUCTION

With the Supreme Court's decision in *Mullin v. Doe*, Nos. 25-1083 & 25-1084, 2026 WL 1825840 (U.S. June 25, 2026) in hand, the government can no longer justify delaying discovery, completion of the administrative record, and agreement to a limited protective order. Instead, resolution of Plaintiffs' requests has become all the more urgent as Burmese class members face the imminent possibility of losing TPS protection during the pendency of this litigation.

*Mullin*, a consolidated appeal of orders postponing the terminations of TPS for Haiti and Syria, foreclosed non-constitutional challenges to determinations under the TPS statute and has the potential to disrupt interim relief granted in this case. But it does not have the far-reaching impact on Plaintiffs' constitutional claims that the government mischaracterizes here. Plaintiffs' equal protection claim—which the Court did not reach in its postponement order—survives the *Mullin* decision, as does their entitlement to seek discovery in support of that claim. Indeed, the Supreme Court's equal protection analysis in *Mullin* only underscores Plaintiffs' need to develop

1

a full factual record for this Court to assess whether discriminatory animus infected the government's termination of TPS for Burma. Accordingly, Plaintiffs request the Court compel the government to complete the certified administrative record ("CAR"), respond to their pending discovery requests, Pls.' Mot. to Compel Disc. 4, Dkt. 75, and confer with Plaintiffs about a schedule for further discovery. And as the government rushes to unwind the preliminary relief granted to Burmese and other TPS holders, Plaintiffs reiterate the urgent need for a protective order to prevent undue retaliation as this litigation continues.

## ARGUMENT

### I. Plaintiffs' equal protection claim warrants discovery

The Supreme Court's decision in *Mullin* neither disposes of Plaintiffs' equal protection claim nor undermines their entitlement to discovery in support of that claim. *See* 2026 WL 1825840, at *10 (majority holding that the TPS statute's jurisdictional bar applies to "non-constitutional claims"). At bottom, the government's argument is that Plaintiffs cannot seek *any* discovery because *Mullin* makes the equal protection claim unlikely to succeed on the merits.

But applying ordinary discovery rules, Plaintiffs are entitled to a presumptively broad scope of discovery to unearth evidence that is relevant to their claim, regardless of whether they ultimately prevail. *See Deal Genius, LLC v. O2COOL, LLC*, 682 F. Supp. 3d 727, 732 (N.D. Ill. 2023) ("The scope of discovery in federal court is broad."). Moreover, the government overstates the effect of the *Mullin* decision, which was the reversal of a preliminary order postponing the termination of TPS for Haiti on an incomplete record, not a final ruling on the merits. A ruling, based on a developing factual record, that TPS holders from a different country are not entitled to interim relief does not foreclose Burmese TPS holders from pursuing their equal protection claim or discovery related to that claim. Indeed, the Supreme Court's decision in *Mullin* does not even

2

bar Haitian TPS holders from continuing to move their equal protection claim towards final resolution on the merits.

i. *Discovery is likely to reveal direct and circumstantial evidence relevant to the* Arlington Heights *inquiry*

Furthermore, the Supreme Court decision in *Mullin* increases, rather than decreases, the importance of discovery in this case. While not definitively settling the issue, the Supreme Court assumed that the *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) standard of review applied to equal protection challenges to TPS terminations.[1] *Mullin*, 2026 WL 1825840, at \*11-13. And under *Arlington Heights*, this Court must assess whether "invidious discriminatory purpose was a motivating factor" by conducting a "sensitive inquiry into such circumstantial and direct evidence of intent as may be available." 429 U.S. at 266. While *Mullin* foreclosed Plaintiffs' statutory claims, many of the facts underlying this Court's postponement order remain relevant to the question of whether discriminatory animus motivated the decision to terminate Burma's TPS. For example, the Secretary's failure to consult appropriate agencies and inclusion of irrelevant factors in the termination notice are not only evidence of pretext, but also precisely the kind of procedural and substantive "departures" *Arlington Heights* contemplates may be circumstantial evidence of discriminatory intent. *Id.* at 267. These irregularities that Plaintiffs have already identified based just on an incomplete CAR merit further

---

[1] Defendants attempt to refashion their own basis for opposing Plaintiffs' discovery requests—that the governing standard for evaluating the equal protection claim was still unsettled—into one that Plaintiffs supposedly used to support its discovery requests. *See* Defs.' Supp. Mem. 4, Dkt. 87. This is untrue. After Defendants raised this argument in their opposition to Plaintiffs' Motion to Compel, *see* Defs.' Opp'n Br. 3-4, Dkt. 77, Plaintiffs explained on reply that "the standard of review does not eliminate Plaintiffs' general entitlement to—or need for—discovery on their equal protection claim." Pls.' Reply 3, Dkt. 82; *see also* Pls.' Opp'n to Defs.' Mot. to Stay Proceedings 7, Dkt. 81 (similarly explaining that Plaintiffs' equal protection claim entitles them to their discovery requests "even if the Supreme Court rules that a more deferential standard of review governs."). The Supreme Court's application of heightened scrutiny in *Mullin* only increases the relevance of Plaintiffs' discovery requests.

discovery to ensure the Court can conduct a "sensitive inquiry" into the specific circumstances of this case. *Id.* at 266; *see* Pls.' Mot. to Compel Disc. 4, Dkt. 75.

Notwithstanding *Mullin's* ruling about the sufficiency of evidence of discriminatory animus at the preliminary stage, discovery regarding the government's termination of TPS for Haiti itself underscores the critical need for discovery in this case. Specifically, discovery obtained after the grant of certiorari in *Mullin* revealed "contemporaneous emails among DHS officials confirm[ing] the last-minute, 180-degree reversal" from a recommendation to automatically extend Haiti's TPS to the decision to terminate it. *Miot* Pls.-Resp'ts' Mot. to Dismiss the Writ of Cert. as Improvidently Granted 9, *Mullin*, Nos. 25-1083 & 25-1084, 2026 WL 1825840. These revelations, which raise serious questions about the government's motivation in terminating Haiti's TPS, highlight why this Court cannot fully assess Plaintiffs' equal protection claim based on sanitized public statements and a curated administrative record alone. And even if the Supreme Court appears to have given more weight to possible race-neutral explanations in their equal protection analysis in *Mullin*, it notably declined to comment on the strength of any *Arlington Heights* factors other than decisionmaker statements. *Mullin* should therefore not preclude a fulsome consideration of all the factors here.

ii.     *Plaintiffs' initial discovery requests are relevant and proportional to the needs of the case*

Accordingly, Plaintiffs' initial discovery requests, which seek further circumstantial and direct evidence of the government's discriminatory intent, remain relevant to their equal protection claim. For example, Plaintiffs' request for communications and documents related to implementation of the Travel Ban—which includes Burma and was cited by the Secretary as a reason for ending Burmese TPS—may yield evidence of national origin animus against Plaintiffs. Likewise, discovery into the government's motivations for Executive Order 14,163 and subsequent

refugee admissions policies favoring white South Afrikaners may also uncover race- or national origin-based animus relevant to the Court's equal protection analysis here. And requests that get at undisclosed communications and documents concerning the administration's efforts to broadly end the TPS program may also be relevant to the question of animus. In short, Plaintiffs' ability to prove the requisite discriminatory intent requires discovery exclusively in the government's possession as to both the events and communications leading up to the termination of TPS for Burma and officials' subjective thoughts, knowledge, and beliefs at the time it terminated TPS for Burma.

Still, the government attempts to block Plaintiffs from obtaining any documents or information beyond the incomplete administrative record by arguing that the initial discovery requests they have sought are disproportionate to the needs of the case. The Court should reject this argument. Federal Rule of Civil Procedure 26(b)(1) specifically identifies six proportionality factors: the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. The only proportionality factor that the government argues weighs in its favor is whether the burden or expense of the proposed discovery outweighs its likely benefit. The government does not—nor can it—dispute the importance of the issues at stake in this case, its exclusive access to the relevant information, or its robust resources, as compared to the Plaintiffs. And its argument that the burden of the proposed discovery outweighs its likely benefit cannot overcome Plaintiffs' entitlement to discovery. First, the government's general statement about the "burden" of intrusion into "executive motivation" cannot carry the day, especially when used to oppose *any* discovery whatsoever. Defs.' Supp. Mem. 5, Dkt. 87. Second, the government asks the

Court to reject entire categories of documents and information as disproportionate to the needs of the case simply because the Supreme Court considered *some* evidence from those categories insufficient to prove likelihood of success at the preliminary stage based on a scant factual record.

**II.    Plaintiffs are entitled to completion of the Certified Administrative Record**

Defendants argue that Plaintiffs are no longer entitled to completion of the CAR because "*Mullin v. Doe* squarely concluded that plaintiffs' nonconstitutional APA claims are nonjusticiable." *Id.* at 3. However, Plaintiffs' *constitutional* APA claims explicitly survive *Mullin* and remain properly before this court. *See Make the Rd. New York v. Mullin*, No. 25-5320, 2026 WL 1792978, at *9 (D.C. Cir. June 23, 2026) (authorizing courts to set aside agency action that is "contrary to constitutional right" under the APA). Courts reviewing constitutional APA claims are charged with reviewing the entire record but are not limited to the administrative record alone. *See Cook Cnty., Illinois v. Wolf*, 461 F. Supp. 3d 779, 793 (N.D. Ill. 2020) (explaining that 5 U.S.C. § 706 requires review of the administrative record in a constitutional challenge but does not serve as a limit on additional discovery). Completion of the administrative record—including materials improperly omitted under the deliberative process privilege—is therefore necessary to adjudicate the remaining equal protection claims.

Defendants attempt to cast Plaintiffs' requests for supplementation of the CAR as improper because they are "sought solely to probe the Secretary's APA decisionmaking." Defs.' Supp. Mem. 3, Dkt. 87. But as Plaintiffs retain an APA claim, the Secretary's decisionmaking remains directly relevant to Plaintiffs' equal protection claim. Without the completed CAR, the motivation behind the termination of Burma's TPS cannot be fully assessed. Far from a "pointless exercise" as described by Defendants, *id.*, Plaintiffs' requests seek to complete the record that this Court is required to review in adjudicating the equal protection claim.

**III.** *Mullin v. Doe* **only underscores the urgent need for a protective order**

The *Mullin* decision in no way undermines named Plaintiffs' continuing need for a protective order limiting the disclosure of their identify information. Nowhere in *Mullin* does the Supreme Court directly or indirectly address any legal questions relevant to the issue of Plaintiffs' entitlement to a protective order. The government admits as much. Nonetheless, the government essentially argues: Because *Mullin* weakens Plaintiffs' claims on the merits, it also weakens Plaintiffs' justification for a protective order. Not so. To the extent that *Mullin* bears on the issue of a protective order at all, it in fact underscores the need for one—and urgently. In the aftermath of the *Mullin* decision, the government has rushed to end preliminary relief for all TPS holders, including Burmese TPS holders. And should the government succeed in these efforts, Plaintiffs will imminently lose their TPS protections, making them vulnerable to retaliatory arrest, detention, and deportation. Consequently, Plaintiffs' fear of retaliation and harm has only increased in the face of the possible dissolution of the postponement order.

Yet, whether intentionally or not, the government continues to mischaracterize Plaintiffs' request for reasonable measures to protect them from government harassment and retaliation. As TPS holders, Plaintiffs have registered their names, addresses, and personal information with the government. Should ICE wish to prioritize Burmese TPS holders—including Plaintiffs—for immigrant enforcement in the future, the requested protective order in no way thwarts the government's ability to do so through ordinary means. All Plaintiffs request is that this Court limit the government's disclosure of their identities to only what is necessary for purposes of this litigation, thereby minimizing the risk of *retaliatory* enforcement activities against them. This fear of retaliation is neither speculative nor unfounded. *See, e.g.*, *Doe #1 v. Noem, No. 25-cv-317,* 2025 WL 1207190, at *1 (W.D. Wis. Apr. 25, 2025) (international students' fear of imminent arrest, detention, and deportation as reprisal for suing the government was more than speculative).

Without this protective measure, Plaintiffs face the threat of severe harms solely because they had the courage to challenge the termination of TPS for Burma as procedurally flawed and motivated by discriminatory animus on behalf of themselves and thousands of other Burmese TPS holders.

**CONCLUSION**

For the foregoing reasons, in addition to those articulated in Plaintiffs' discovery motion, Dkt. 75, and reply, Dkt. 82, the Court should authorize discovery on Plaintiffs' equal protection claim, order the government to respond to Plaintiffs' pending discovery requests and to complete the administrative record, and enter the proposed protective order at Dkt. 75, Ex. 8. In light of the delay already caused by waiting for the Supreme Court to issue its decision and the irreparable harm that Plaintiffs face if their preliminary relief is not sustained, Plaintiffs respectfully propose the following schedule for the discovery-related items:

- Defendants complete the CAR, or in the alternative, Defendants produce a privilege log and documents for in camera review: 7 days from the Court's order

- Defendants produce documents responsive to Plaintiffs' initial discovery requests in Dkt. 75 at 4: 14 days from the Court's order

- Parties meet and confer to develop a joint discovery plan: 21 days from the Court's order

- Parties submit a stipulated proposed order for further discovery (or if parties cannot agree on a schedule, a joint letter setting forth each party's position): 25 days from the Court's order

Dated: July 7, 2026

ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
*/s/ Helen Anne Schutz Lo*
Helen Anne Schutz Lo
Phi Nguyen
Dinesh McCoy
Razeen Zaman
Niji Jain
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932
alo@aaldef.org
pnguyen@aaldef.org
dmccoy@aaldef.org
rzaman@aaldef.org
njain@aaldef.org

THE LAW OFFICES OF JUNE J. HTUN
/s/ *June Htun*
June Htun
3643 West Belmont Avenue
Chicago, Illinois 60618
(773) 362-5000
june@htunlaw.com

INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
/s/ *Guadalupe Aguirre*
Guadalupe Aguirre
Ghita Schwarz*
Pedro Sepulveda
One Battery Park Plaza, Fl 33
New York, NY 10004
(929) 246-0154
laguirre@refugeerights.org
gschwarz@refugeerights.org
psepulveda@refugeerights.org

Megan Hauptman
650 Massachusetts Ave
NW Suite 600
Washington, D.C. 20001
(646) 939-7329
mhauptman@refugeerights.org

*Counsel for Plaintiffs*

*\*Application for admission Pro Hac Vice
forthcoming*

9