**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Aung DOE, et al., on their own behalf and on behalf of others similarly situated, | |
| *Plaintiffs*, | Case No. 1:25-cv-15483 |
| *– versus –* | |
| Markwayne MULLIN, Secretary, United States Department of Homeland Security, et al. | Judge Kennelly |
| *Defendants*. | |

**PLAINTIFFS' MOTION FOR ADMINISTRATIVE STAY PENDING CONSIDERATION OF FORTHCOMING APPLICATION FOR PRELIMINARY RELIEF AND MOTION TO ENTER BRIEFING SCHEDULE**

Plaintiffs Aung DOE, Nina DOE, Thura DOE, Khin Thet DOE, Chu Let DOE, and Maung DOE ("Plaintiffs") respectfully move this Court for an administrative stay to preserve status quo TPS protections, pending adjudication of Plaintiffs' forthcoming renewed motion for preliminary relief regarding the same. Specifically, Plaintiffs ask the Court to administratively stay the termination of TPS for Burma ("Termination") upon receipt of any Seventh Circuit mandate reversing the current postponement order.

Plaintiffs filed their Amended Complaint adding new claims that, along with the equal protection claim they already raised, are not barred by the TPS statute's jurisdiction stripping provision. *See Mullin v. Doe*, Nos. 25-1083 & 25-1084, 2026 WL 1825840, at *10 (U.S. June 25, 2026). Plaintiffs request this brief administrative stay in conjunction with a request for an expedited briefing schedule for consideration of a renewed preliminary relief motion. In light of

1

the government's efforts at the Seventh Circuit to stay or accelerate the reversal of the postponement order, Plaintiffs propose a schedule that requires briefing to be completed by July 31. Mot. for Summ. Reversal and Stay, *Aung Doe v. Noem*, No. 26-1294, Dkt. 27-2 (7th Cir. July 3, 2026) ("*Aung Doe*").[1]

Out of an abundance of caution, Plaintiffs seek an administrative stay to prevent irreparable harm to Burmese TPS holders and to ensure this Court has adequate time to fully consider the merits of their renewed request for preliminary relief. While the timing is uncertain, the Seventh Circuit may rule on the government's motion any day now. In the event the Seventh Circuit issues its mandate reversing the postponement order prior to this Court's adjudication of alternative grounds for preliminary relief, Plaintiffs will suffer irreparable harm. For this reason, Plaintiffs request the administrative stay be entered as soon as this Court receives the mandate reversing the current postponement order from the Seventh Circuit.[2]

Plaintiffs have good cause for seeking an administrative stay. Administrative stays are routinely used to "freeze legal proceedings until the court can rule on a party's request for expedited relief" and "permit time for briefing and deliberation." *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring). Those are the precise circumstances at issue here. In addition, as this Court recognized, the Termination "will cause irreparable harm to TPS holders." Order Granting Mot. to Postpone at 1, Dkt. 52. For example, Plaintiffs Chu Let Doe and Nina Doe each face the possibility of arrest and detention, family separation, and deportation to a country where they would be detained as political prisoners, all of which are irreparable harms. Compl. at

---

[1] Plaintiffs opposed immediate issuance of the mandate by the Seventh Circuit and requested at least 21 days between any reversal order and issuance of the mandate, in order to provide time to brief grounds for new preliminary relief in this Court. *See* Pls.' Position Statement, *Aung Doe*, Dkt. 31.

[2] Plaintiffs also recognize this motion may not be necessary if this Court is able to evaluate the entirety of briefing and argument on this issue prior to the Seventh Circuit issuing its mandate to reverse the postponement order.

¶¶ 166, 179-80, Dkt. 1. And even a brief lapse in TPS could permanently and irreparably harm some class members' ability to obtain other forms of immigration relief by stripping them of lawful status. *See, e.g.*, 8 C.F.R. § 248.1(b) (change of nonimmigrant status "may not be approved for an alien who failed to maintain" lawful status).

Plaintiffs respectfully ask the Court to enter an order granting the expedited briefing schedule set forth below. Plaintiffs also request the Court enter an administrative stay as soon as the Court receives the Seventh Circuit's mandate reversing the current postponement order.

## BACKGROUND

Following Plaintiffs' motion to postpone the Termination on Administrative Procedure Act ("APA") and Fifth Amendment grounds, this Court ordered postponement, finding that the Termination would cause irreparable harm to TPS holders and that the balance of equities and public interest weigh in favor of Plaintiffs. Order Granting Mot. to Postpone, Dkt. 52. The Court held that Plaintiffs had shown a likelihood of success on the merits of their claims under the APA, Mem. Op. and Order, Dkt. 51 at 32, 37, 41, 46-47, 51, but did not reach or address Plaintiffs' claims under the Fifth Amendment. *Id.* at 52.

Defendants appealed the postponement order to the Seventh Circuit, Notice of Appeal, Dkt. 56, and the appeal was held in abeyance pending resolution of *Mullin*. Order, *Aung Doe*, Dkt. 24. In *Mullin*, the Supreme Court interpreted the TPS statute's jurisdiction stripping provision to apply only to non-constitutional challenges to TPS determinations. *See* Nos. 25-1083 & 25-1084, 2026 WL 1825840, at *7. Notably, *Mullin* did not hold that §1254a(b)(5)(A) precludes constitutional claims.

Based on this decision, on July 3, 2026, Defendants moved for summary reversal of this Court's order postponing Burma's TPS termination in the Seventh Circuit. *See* Mot. for Summ.

3

Reversal, *Aung Doe*, Dkt. 27. On July 10, 2026, the Seventh Circuit entered an Order instructing the Parties to file position statements addressing whether they oppose summary reversal and immediate issuance of the mandate. Order, *Aung Doe*, Dkt. 29. Plaintiffs filed a position statement opposing immediate issuance of the Seventh Circuit mandate on July 13, 2026, instead requesting that the Court issue the mandate on the normal timeline contemplated by the Federal Rules. Pls.' Position Statement, *Aung Doe*, Dkt. 31.

Plaintiffs filed an amended complaint in this Court on July 14, 2026. Pls.' First Am. Compl., Dkt. 90. In addition to the existing equal protection claim, Plaintiffs newly allege 1) that the Termination is *ultra vires* because the Attorney General, not the Secretary of Homeland Security, has the authority to terminate a TPS designation and 2) that the Termination deprives Plaintiffs of protected liberty and property interests without constitutionally adequate procedures, in violation of the Due Process Clause. *Id.* at ¶¶ 224-31. Plaintiffs plan to file a renewed motion for preliminary relief by July 20, 2026.

## ARGUMENT

A brief administrative stay is warranted given Plaintiffs' immediate plans to file a motion for preliminary relief on a proposed expedited schedule as follows: Plaintiffs' renewed motion for preliminary relief due by July 20, 2026; Defendants' opposition brief due by July 27, 2026; and Plaintiffs' reply due by July 31, 2026. To allow for meaningful adjudication of this motion—and to prevent imminent and significant harms to Plaintiffs and other Burmese TPS-holders in the meantime—Plaintiffs request that this Court enter the proposed briefing schedule and, upon receipt of any Seventh Circuit mandate reversing the existing postponement order, grant an administrative stay of the Termination pending resolution of the forthcoming motion.

**I.**     **This Court Possesses the Authority to Issue an Administrative Stay to Allow for Meaningful Adjudication of the Forthcoming Motion**

Administrative stays are a well-established procedural tool that permit courts to "freeze legal proceedings until the court can rule on a party's request for expedited relief" and "permit time for briefing and deliberation." *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring). District courts have authority to grant administrative stays through their inherent power to manage their dockets and under the All Writs Act. *See id*. at 798 n.1.

District courts nationwide routinely exercise their authority to preserve existing conditions while considering requests for emergency relief. For example, in *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, the District Court for the District of Columbia issued an administrative stay of agency action, pending receipt and consideration of the parties' expedited briefing on the plaintiffs' request for a temporary restraining order. 763 F. Supp. 3d 13, 17 (D.D.C. 2025) (citing Order, *Texas v. Dep't of Homeland Sec.*, No. 24-CV-306 (E.D. Tex. Aug. 26, 2024)). Courts also routinely issue administrative stays to preserve the status quo pending completion of briefing and ruling on parties' pending motions. *See, e.g., id.; Gallusz v. LLP Mortg., Inc.*, 2025 WL 1360771, at *2 (S.D. Cal. Apr. 15, 2025); *Dellinger v. Bessent*, 2025 WL 450488, at *1 (D.D.C. Feb. 10, 2025); *Richman v. United States*, 2025 WL 3505458, at *1 (D.D.C. Dec. 6, 2025). Multiple administrative stays have recently been granted to allow for full consideration of motions to postpone other TPS terminations. *See African Communities Together v. Noem*, 1:25-cv-13939, Dkt. 37 (D. Mass. Dec. 30, 2025) (granting administrative stay of the termination of TPS for South Sudan pending adjudication of pending motion to postpone); *African Communities Together v. Noem*, 1 1:26-cv-10278, Dkt. 36 (D. Mass. Jan. 30, 2026) (same for TPS for Ethiopia); *African Communities Together v. Noem*, 1:26-cv-11201, Dkt. 33 (D. Mass. Mar. 13, 2026) (same for TPS for Somalia). Under substantially similar circumstances, therefore, this Court can and should

exercise its power to preserve the status quo to ensure the meaningful adjudication of Plaintiffs' forthcoming motion for preliminary relief.

Moreover, Plaintiffs need not demonstrate any likelihood of success on the merits of their claims for an administrative stay. *See United States v. Texas*, 144 S. Ct. at 798 ("Administrative stays do not typically reflect the court's consideration of the merits") (Barrett, J., concurring). Indeed, conducting a merits assessment at this juncture would undermine a central purpose of administrative stays: ensuring that courts are not forced to decide complex and consequential issues that are "not . . . easy to evaluate in haste." *Id.* The Supreme Court and courts of appeals frequently use administrative stays to buy "time to deliberate" on requests for expedited relief, including to assess the applicant's likelihood of success on the merits. *Id.* (collecting cases). And in so doing, the Supreme Court has "stressed that the administrative stay reflect[s] no view of the underlying merits." *Id.* (citing *June Medical Services, L.L.C. v. Gee*, 139 S. Ct. 661 (2019) (mem.)). Consequently, deferring any consideration of the merits until the Court *must* consider Plaintiffs' likelihood of success as part of the four-factor analysis for preliminary relief accords with the purpose and practice of administrative stays.

## II. The Court Should Grant an Administrative Stay to Preserve the Status Quo and Prevent Irreparable Harm.

The purpose of an administrative stay is to "minimize harm." *United States v. Texas*, 144 S. Ct. at 798 (Barrett, J., concurring). Even the shortest gap in interim relief will lead to substantial and irreparable harms for Plaintiffs and class members, and the Supreme Court's decision in *Mullin* did not undermine or change the analysis regarding the imminent and severe harms Burmese TPS holders would face. *See* Mullin, 2026 WL 1825840, at *17 (Kagan, J., dissenting) ("There is no dispute that the plaintiffs will suffer irreparable harm absent postponement of the TPS decisions."). Moreover, this Court has already recognized that "the risk of detention [of Burmese TPS

6

holders]—and thus loss of liberty—is particularly acute." Mem. Op. and Order at 52, Dkt. 51. The danger is imminent and considerable as Defendants rush to rapidly dissolve existing protections following *Mullin*. *See, e.g.*, Pls.' First Am. Compl. at ¶ 163, Dkt. 90. Absent interim relief, Plaintiffs and thousands of similarly situated Burmese nationals risk losing protections before the Court has an opportunity to consider Plaintiffs' forthcoming request for preliminary relief.

As this Court recognized, Plaintiffs would be immediately subject to arrest and detention pending deportation if the Termination goes into effect. Mem. Op. and Order at 52, Dkt. 51. That risk has only increased in light of the administration's recent push for mass immigration arrests, which has roughly doubled the rate of arrests to 2,000 a day. *See* Hamed Aleaziz, *Immigrant Arrests Surge to 10,000 in 5 Days as ICE Clamps Down*, N.Y. Times, July 1, 2026, https://www.nytimes.com/2026/07/01/us/politics/ice-immigrant-arrests-surge.html (describing major surge of arrests by federal immigration officials, including during traffic stops and on the streets). The Termination would also trigger the loss of Plaintiffs' permission to work and their ability to support or stay with their families— all "significant, irreparable harms." Mem. Op. and Order at 54, Dkt. 51.

A temporary lapse in TPS protections could also permanently harm class members' ability to obtain other forms of immigration relief. For TPS holders who have no other lawful immigration status, the loss of TPS protections—even for a few days—may have long-term negative consequences on their ability to qualify for other forms of immigration relief. Stacy Tolchin Decl. at ¶ 25, Dkt. 16-61. Loss of a continuous status has negative implications for many seeking lawful permanent residence, and for many class members, TPS supplies that requisite continuous status. *See* 8 U.S.C. § 1254a(f)(4). If TPS termination even temporarily disrupts a class member's lawful immigration status, the government may argue that the class member has also lost their ability to

obtain lawful permanent residence. *See, e.g.*, 8 U.S.C. § 1255(c)(2) (an applicant who is not an immediate relative of a U.S. citizen generally may not adjust if they are "in unlawful immigration status on the date of filing" or have failed to "maintain continuously a lawful status since entry into the United States.").

Take Plaintiff Nina Doe, who currently has a pending waiver application that, if approved, will allow her to change her status without leaving the United States. Nina Doe Decl. at ¶ 23, Dkt. 16-55. Her TPS protects her from removal while her waiver is pending; if lost, she could be removed before she can obtain the waiver and adjust her status. *Id.* And even if she attempted to obtain lawful permanent residence through consular processing abroad, she would currently be barred as part of the Trump Administration's Travel Ban, which applies to all Burmese nationals. Proc. No. 10998 § 2(b), 90 Fed. Reg. 59717 (Dec. 19, 2025). Thus, losing her status for even a single day could make Nina particularly at risk of separation from her U.S. citizen husband and child with no current viable options for return to the United States.

Forced return to Burma due to a lapse in interim relief could also have devastating consequences for Plaintiffs and other TPS holders. For example, Plaintiff Thura Doe faces deportation to a country where homosexuality is a crime, and he is at risk of arrest and retaliation for both his political advocacy and identity. Mem. of Law in Support of Mot. Postpone at 35, Dkt. 27. Plaintiff Khin Thet Doe, faces potential separation from her U.S.-citizen husband as well as the threat of detention for her participation in protests against the military regime. *Id.* at 34. Burmese families of mixed immigration status, including families where some members are U.S. citizens, would face the difficult decision of separating or moving to a dangerous country where they face significant risk of harm. Mem. Op. and Order at 54, Dkt. 51.

These are harms that no later relief can repair, and they overwhelmingly support an administrative stay's preservation of the status quo.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court, upon receipt of the Seventh Circuit's mandate to reverse the postponement order, enter an administrative stay preserving the status quo to afford consideration of Plaintiffs' forthcoming motion for preliminary relief. In the alternative, Plaintiffs request such other interim relief as the Court deems proper to prevent irreparable harm and preserve its ability to meaningfully adjudicate Plaintiffs' claims.

Additionally, counsel for Plaintiffs conferred by email with defense counsel regarding a briefing schedule for the forthcoming motion for preliminary relief. While Defendants did not consent to the proposal, they expressed a position requesting at least one week to respond to the motion. Plaintiffs therefore propose the following schedule and requested page limits:

1. Plaintiffs file motion for preliminary relief by Monday, July 20, 2026. The supporting memorandum will not exceed 25 pages.

2. Defendants file their opposition brief by Monday, July 27, 2026, not to exceed 25 pages.

3. Plaintiffs file their reply brief by Friday, July 31, 2026, not to exceed 15 pages.

Plaintiffs respectfully request that this Court enter the briefing schedule and page limits proposed above.


Dated: July 15, 2026

Respectfully submitted,

ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
*/s/ Helen Anne Schutz Lo*
Helen Anne Schutz Lo

THE LAW OFFICES OF JUNE J. HTUN
*/s/ June Htun*
June Htun
3643 West Belmont Avenue

Phi Nguyen
Dinesh McCoy
Razeen Zaman
Niji Jain
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 922-5932
alo@aaldef.org
pnguyen@aaldef.org
dmccoy@aaldef.org
rzaman@aaldef.org
njain@aaldef.org

Chicago, Illinois 60618
(773) 362-5000
june@htunlaw.com

INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
/s/ *Guadalupe Aguirre*
Guadalupe Aguirre
Pedro Sepulveda
One Battery Park Plaza, Fl 33
New York, NY 10004
(929) 246-0154
laguirre@refugeerights.org
psepulveda@refugeerights.org

Megan Hauptman
650 Massachusetts Ave NW
Suite 600
Washington, D.C. 20001
(646) 939-7329
mhauptman@refugeerights.org

*Counsel for Plaintiffs*