**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Aung DOE, et al., on their own behalf and on behalf of others similarly situated, <br><br><br> *Plaintiffs*, <br><br> – *versus* – <br><br> Markwayne MULLIN, Secretary, United States Department of Homeland Security, et al. <br><br> *Defendants*. | Case No. 1:25-cv-15483 <br><br><br> Judge Kennelly |

**JOINT STATUS REPORT**

The parties submit this Joint Status Report pursuant to this Court's Order dated July 9, 2026. Order, Dkt. 89.

**Plaintiffs' Position**

Counsel conferred on July 20, 2026 and July 21, 2026, in accordance with Local Rule 37.2.

The Court's order allows Plaintiffs to move forward with discovery but requires a request-by-request assessment from the Court after the parties have conferred and attempted in good faith to resolve or narrow any disputes, which the parties have now done, resulting in an ongoing impasse. The existing requests included the request to complete the certified administrative record, first sent on March 25, 2026, and to produce the following specific documents:

(1) the unredacted copy of the USCIS Decision Memorandum for Burma TPS, AR 106; (2) Records of Clearance and Approval for the TPS termination for Burma; (3) any reports on conditions in Burma authored by the Department of State after January 20, 2025.

1

The existing requests also included four Requests for Production ("RFP"), first sent on May 1, 2026, relevant to Plaintiffs' equal protection claim and recently added procedural due process claim.

Defendants communicated, both in email on July 16, 2026 and later at the meet-and-confer on July 20, 2026, that it is their position discovery should be stayed pending resolution of Defendants' forthcoming motion to dismiss. The parties conferred again on July 21, 2026, during which the parties confirmed the impasse and Defendants indicated that they intend to file their motion to dismiss and motion to stay discovery on or before July 24, 2026.

## I. Staying Discovery is Not Warranted

Plaintiffs are entitled to discovery, and Defendants' blanket position requesting a stay of discovery ignores the prior analysis from this Court's July 9, 2026 order. The fact that Defendants intend to file a motion to dismiss should not prevent discovery from moving forward.

First, this Court's rules indicated that "[t]he pendency of a motion, such as a motion to dismiss, does not operate as a stay of discovery. Discovery is not stayed unless the court orders it to be stayed." Judge Matthew F. Kennelly, Case Procedures: Discovery Motions, https://www.ilnd.uscourts.gov/judge_display.php?LastName=Kennelly (last accessed July 21, 2026); *see also SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 945, n.11 (7th Cir. 1988) ("[d]iscovery need not cease during the pendency of a motion to dismiss"). While there is no pending motion yet for the Court to evaluate, a pending motion should not substantially change the analysis.

Second, the Court already assessed and rejected the government's arguments that discovery cannot move forward on Plaintiffs' equal protection claim in light of *Mullin*. Following *Mullin*, the Court "overrule[d] the government's argument that the plaintiffs are completely barred from

pursuing discovery." Order at 13, Dkt. 89 ("*Mullin v. Doe* was an interim decision . . . Nothing in the decision suggests that the plaintiffs here cannot try to marshal the additional evidence necessary to prove their equal protection claim. . . [I]t is of course possible that evidence of internal decisionmaking may reveal a discriminatory motive not clearly reflected in public statements."). Each of Plaintiffs' requests is relevant to the equal protection claim, and some are also relevant to Plaintiffs' new claims. *See* First Am. Compl. ¶¶ 224-31, Dkt. 90.Where the Court has already ordered Plaintiffs can proceed on discovery here, a forthcoming motion to dismiss based on the same arguments will not change the equation.

Plaintiffs' attempts to confer with Defendants about the scope of the requests or relevant custodians have been fruitless, as Defendants have now for the second time argued for a blanket pause on all discovery. But nothing has materially changed since the Court's order permitting discovery on July 9, 2026 that would justify staying discovery now. Plaintiffs request the Court order discovery to proceed and specifically compel production of the following requests and documents. Plaintiffs describe below shared aspects of the requests that justify production and then describe the relevance of each particular request.

## II. Plaintiffs Are Entitled to Completion of the Administrative Record

Defendants have asserted deliberative process privilege over everything Plaintiffs have requested toward completion of the administrative record. The documents Plaintiffs request do not constitute deliberative process materials, *see* Mot. to Compel 9-12, Dkt. 75, and even if they do, Plaintiffs have demonstrated a "particularized need" for them. *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). Two of the factors relevant to a "particularized need" analysis—the seriousness of the litigation and the government's role in the litigation—are not in dispute, so Plaintiffs focus on the remaining factors that the Court's order indicates require further

clarification: the Plaintiffs' need for the documents balanced against the government's confidentiality interest.

In actions challenging agency action, courts are required to "review the whole record," 5 U.S.C. § 706, meaning "the full administrative record that was before the Secretary at the time [s]he made [her] decision." *Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). This includes constitutional challenges to agency action. *See* 5 U.S.C. § 706(2)(B) (court's obligation to review "the whole record" applies to challenges to agency action as "contrary to constitutional right"). Consequently, all documents that were "before the Secretary" at the time of her decisionmaking are not just relevant; they are *critical* to the Court's evaluation of the challenged agency action and cannot be substituted for any "other evidence" that would serve the same purpose. *See Myles v. Cook Cnty,* No. 21-cv-3935, 2023 WL 4976212 (N.D. Ill. Aug. 3, 2023), at \*5 (describing factors that establish requisite showing of "particularized need" for deliberative process materials). All of the documents that Plaintiffs request—the unredacted USCIS Decision Memorandum, the Record of Clearance and Approval, and any reports on conditions authored by the Department of State after January 20, 2025 (to the extent they exist)—were undisputedly "before the Secretary" at the time she terminated TPS for Burma and are therefore highly relevant to this litigation on that ground alone.

In addition, the requested documents are also relevant to an analysis under *Arlington Heights*, which this Court recently confirmed governs Plaintiffs' race-, ethnicity-, and national origin-based equal protection claims. Mem. Op. and Order 12, Dkt. 89. *Arlington Heights* requires courts to conduct a "sensitive inquiry into such circumstantial and direct evidence of intent as may be available." 429 U.S. 252, 266 (1977). Though not "exhaustive," *Arlington Heights* enumerates the following specific factors as "subjects of proper inquiry" to root out a decisionmaker's

4

discriminatory purpose: (1) the historical background of the decision; (2) the specific sequence of events leading up to the decision, including procedural and substantive departures from the normal process; and (3) the legislative or administrative history, including contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports. *Id.* at 267-268.

Finally, with respect to the proportionality analysis, because Defendants have refused to engage with Plaintiffs' requests to discuss each document or category over nearly a half dozen meet and confers, instead falling back on the position the Court has rejected that Plaintiffs are entitled to no discovery at all, Plaintiffs have attempted to provide an analysis of the relative burden of their requests, but do so with incomplete information. At this juncture, Plaintiffs respectfully submit that Defendants have waived the opportunity to articulate the burden and should be ordered to produce the following documents.

**USCIS Decision Memorandum**

The USCIS Decision Memorandum includes USCIS's final recommendation and supporting reasons, upon which then-Secretary Noem purportedly based her termination decision. *See* Not. of Corr. 1, Dkt. 80 (describing the agency's final, operative decision as the determination on the signature page of the Decision Memorandum). Therefore, it is a document that was: (1) undisputedly "before the Secretary" when she made her decision; and (2) an integral part of the decisionmaking process that may yield circumstantial evidence of Defendants' discriminatory intent in terminating TPS for Burma. For example, the Memorandum may uncover procedural and substantive departures from the established decisionmaking process, such as reliance on factors not usually considered important in TPS decisionmaking. Procedural irregularities are also relevant to Plaintiffs' newly added procedural due process claim. The USCIS Decision Memorandum may also include statements of members of the decisionmaking body that shed light

on intent, animus, and pretext. On the other side of equation is the government's confidentiality interest, which is minimal. The USCIS Decision Memorandum is not a rough draft but a final recommendation that was adopted by Noem as part of her final determination. And as noted in Plaintiffs' motion to compel, several courts have ordered production of the unredacted decision memoranda in parallel TPS litigation. Mot. to Compel 11, Dkt. 75. In those cases, Defendants have been able to readily produce the document, indicating the burden is low. Plaintiffs respectfully request the Decision Memo be produced within a week of the Court's order.

**Record of Clearance and Approval**

Based on Plaintiffs' understanding, the Record of Clearance and Approval is a document that lists the various DHS officials who cleared a potential decision on TPS for Burma before Noem's final determination. *See CASA, Inc. v. Noem*, 2025 WL 3514378, at *13 (December 8, 2025) (describing Afghanistan Record of Clearance Approval as listing which advisors cleared the TPS decision and indicating when they cleared it). By the government's own admission, the Record of Clearance and Approval was also "before the Secretary" at the time she made her decision, Notice of Corr. at 2, Dkt. 80, which means she necessarily considered the record in her decisionmaking process. *See CASA*, 2025 WL 3514378, at *13 (citing *Overton Park*, 401 U.S. at 420). The Record of Clearance and Approval may reveal procedural or substantive departures from the ordinary decisionmaking process that are relevant under an *Arlington Heights* analysis. For example, it could show peculiarities regarding who did or did not clear the decision or when clearance occurred. In addition, the Record of Clearance and Approval discloses who advised Noem on the termination decision, information which could not only be probative of intent but could also help Plaintiffs identify potential custodians of relevant documents and communications and/or witnesses for deposition. As the Court noted, the government has not made clear whether it

6

intends to assert the deliberative process privilege, but if so, disclosure of a document that "merely memorialize[s] a decision that was made," Not. of Corr. 2, Dkt. 80, in no way "hinder[s] frank and independent discussion" of government decisions. *Holmes v. Hernandez*, 221 F. Supp. 3d 1011, 1018 (2016). Moreover, to date, Defendants have not identified any burden associated with production of this request, and as it appears to be a single, readily identifiable document, Plaintiffs request that it be produced within a week of the Court's order.

**Department of State Reports**

Historically, the Department of State compiles country conditions reports and recommendations to inform decisionmaking during TPS periodic review processes. U.S. Government Accountability Office, Temporary Protected Status: Steps Taken to Inform and Communicate Secretary of Homeland Security's Decisions, GAO-20-134, April 2020, Dkt. 16-1. In this case, the administrative record contains just three emails between Department of State and DHS officials, an exchange this Court deemed insufficient to satisfy the statutory interagency consultation requirement. Mem. Op. and Order 29, Dkt. 51. In light of the Department of State's historical practice of compiling country conditions reports, Plaintiffs seek any reports on conditions in Burma authored by the Department of State after January 20, 2025. This request is to assess whether Noem considered any Department of State analysis of Burma's country conditions as part of her termination decision. If so, that analysis should be considered part of the administrative record and a proper evidentiary source to probe for intent, animus, or pretext. If not, Noem's *lack* of consideration of a Department of State report on country conditions is a relevant "departure" under *Arlington Heights* that the government must confirm. And as with other procedural deficiencies, any failure to ask for or consider a country conditions report from the Department of State may also be relevant to Plaintiffs' procedural due process claim.

To date, Defendants have failed to confirm whether any such reports exist and were excluded from production, and if so on what basis. They also have not—and cannot—articulated any confidentiality interest. Accordingly, Plaintiffs request that the Court order Defendants to produce these reports within a week of the Court's order and to produce a privilege log of any reports they seek to withhold. To the extent they seek to withhold them on the basis of Deliberative Process Privilege, that claim should be rejected for the same reasons as discussed above and in Plaintiffs' motion to compel.

**III.    Plaintiffs' Requests are Relevant to Their Claims and Proportional to Their Evidentiary Needs**

As this Court recognized, Plaintiffs' discovery requests seek material relevant to their equal protection claims, regardless of whether the standard in *Arlington Heights* or *Trump v. Hawaii* applies. Mem. Op. and Order 12, Dkt. 89. Specifically, under either standard, Plaintiffs are entitled to seek additional evidence that may be probative of the government's discriminatory intent. Furthermore, evidence of a preordained motivation or consideration of an impermissible factor would support Plaintiffs' procedural due process claim. A decision based on an impermissible factor or bias violates the due process right to a neutral decisionmaker who has not made a preordained decision *before* reviewing the evidence. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (due process forbids practice that poses "risk of actual bias or prejudgment").

To facilitate resolution and ensure this Court can assess issues of proportionality regarding the four RFPs below, Plaintiffs request that the Court order Defendants to provide Plaintiffs with a proposed list of custodians, including their title, relevant responsibilities, and dates in the role, by July 23, 2026, and that Plaintiffs provide Defendants with a list of search terms by July 23, 2026. Plaintiffs request the Court order Plaintiffs to provide their position on the proposed

custodian list and Defendants to provide the number of documents identified based on Plaintiffs' search terms by July 27, 2026, prior to this Court's scheduled discovery conference on July 28, 2026. The parties can then provide more accurate information to this Court about proportionality and burden considerations.

Plaintiffs more specifically address the relevance of each request for documents below:

**RFP No. 1: All documents and communications concerning any effort to end or limit TPS as a program or form of immigration relief, generally, whether or not in relation to any particular country's TPS designation.[1]**

This request seeks documents that are highly relevant to Plaintiffs' equal protection claims. Though *Mullin* construed public statements about Haitians as not "overtly racial" and credited a race-neutral explanation for Noem's thirteen TPS terminations, internal documents may show the nexus between discriminatory animus and TPS decisionmaking that the Supreme Court found lacking in the limited factual record before it. Furthermore, in their amended complaint, Plaintiffs expanded their equal protection claim to include a theory that the TPS termination was motivated by a bare desire to harm TPS holders as a group. Therefore, even if this request does not yield further evidence of race-, national origin-, or ethnicity-based animus towards Burmese TPS holders, it will still help answer a central question in this litigation: whether the government violated Plaintiffs' equal protection rights and procedural due process rights in terminating TPS.

Plaintiffs request the Court order the relief described *supra* at 9, which ensures progress on assessing proportionality issues.

---

[1] The instructions with the time period were inadvertently omitted from Plaintiffs' submission, nor did Defendants seek to clarify or narrow the time period. They are: Unless otherwise indicated, the Requests cover the period from January 20, 2025, to the present.

**RFP No. 2: All documents and communications concerning Defendants' implementation of and compliance with Executive Order 14,159.**

Through this request, Plaintiffs seek evidence pertaining to the sequence of events leading up to the termination of Burma's TPS, which may be probative of intent, animus, or pretext and thus relevant to Plaintiffs' equal protection claim. Executive Order 14,159—issued in January 2025—refers to "a flood of illegal immigration into the United States" as an "invasion" and directs administration officials, including the Secretary of Homeland Security, to take action to ensure that TPS designations are "limited in scope." It is cited in several TPS termination notices as a reason for termination. *See, e.g.*, 90 Fed. Reg. 43,225 (Venezuela Termination), and documents and communications concerning its implementation are likely to yield information about the government's purposes in terminating TPS for Burma and other countries, which could reveal evidence of animus against TPS holders.

Plaintiffs request the Court order the relief described *supra* at 9, which ensures progress on assessing proportionality issues.

**RFP No. 3: All documents and communications concerning Defendants' implementation of and compliance with Presidential Proclamation "Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats" (Travel Ban) in relation to TPS holders.**

President Trump issued the Travel Ban on June 4, 2025, restricting the entry of nationals from several countries, including Burma. Noem cited the Travel Ban as a justification for terminating TPS for Burma and, a few days later, tweeted disparaging comments about immigrants from Travel Ban countries. In light of the stated relationship between the Travel Ban and termination of TPS for Burma, as well as Noem's contemporaneous statements about nationals from Travel Ban countries (which includes Burmese nationals), the Travel Ban-related documents and communications Plaintiffs seek are relevant to proving intent, animus, or pretext in connection

with Plaintiffs' equal protection claims. Plaintiffs limit this request to documents that bear a relationship to TPS holders.

Plaintiffs request the Court order the relief described *supra* at 9, which ensures progress on assessing proportionality issues.

**RFP No. 4: All documents and communications concerning Defendants' implementation of and compliance with §§ 2, 3(c), and 4 of Executive Order 14,163, including but not limited to proposals or policies to give preference within the United States refugee system to English speakers, white South Africans or Afrikaner, and Europeans who oppose migration or support "populist" political parties.**

President Trump's issuance of Executive Order 14,163 on January 20, 2025, is part of the "sequence of events" leading up to Noem's termination of TPS for Burma that is relevant under *Arlington Heights*. Specifically, the requested documents and communications that demonstrate and explain the administration's preference for certain immigrant and refugees may help Plaintiffs prove that race-, ethnicity-, or national origin-based animus was a motivating factor in Noem's termination of Burma's TPS.

Plaintiffs request the Court order the relief described *supra* at 9, which ensures progress on assessing proportionality issues.

**<u>Defendants' Position</u>**

**I.     There Have Been Numerous Material Changes to the Instant Litigation Since This Court's July 9 Order.**

Although plaintiffs maintain that "nothing has materially changed since the Court's order permitting discovery on July 9, 2026 that would justify staying discovery now," *supra*, that is simply not true.

First, this court has stayed this case pending the disposition of plaintiffs' renewed motion for postponement (as that is the inherent power plaintiffs drew from to support their motion for an administrative *stay* in this case), Dkt. 96 (ordering, *inter alia*, that "[t]he case is stayed until

11

8/7/2026"), which was filed just last night, Dkt. 98. That stay alone answers the present dispute; while this case is stayed, there is no discovery for the court to order, and plaintiffs identify no authority for compelling production, much less a court-ordered ESI schedule, in a stated case.

Second, on July 16, 2026, the Seventh Circuit summarily reversed this court's January 23, 2026 postponement order in light of the Supreme Court's decision less than a month ago in *Mullin v. Doe*, 609 U.S. —, 2026 WL 1825840 (June 25, 2026). *See* Order, No. 26-1294 (7th Cir. July 16, 2026). That means that the court of appeals has applied *Mullin* to this case and set aside the order embodying this court's own preliminary assessments of plaintiffs' claims, which were assessments that informed this court's July 9 Order's conclusion that extra-record inquiry was warranted. In this way, plaintiffs' seizure on this court's characterization of *Mullin* as merely an "interim decision" cannot be squared with the Seventh Circuit's final disposition of the appeal *in this very case*.

Third, plaintiffs filed an amended complaint, which replaces the complaint they originally filed. Dkt. 90. That means that whatever discovery they wanted to support their initial complaint has been reset, as the operative pleading now rests in substantial part on claims (ultra vires action and procedural due process), that no court has evaluated, and plaintiffs acknowledge above that their Requests for Production are directed in part at these new claims. Defendants are entitled to test the legal sufficiency of newly pleaded claims under Rule 12 before being compelled to produce Executive Branch materials in service of them. *See, e.g.*, *In re United States*, 583 U.S. 29 (2017) (per curiam) (granting mandamus and holding that the district court, before ordering the federal government to complete the administrative record, was required to first consider the government's threshold arguments in their Rule 12 motion regarding reviewability under the APA and jurisdiction).

Fourth, the July 9 Order addressed the pendency of a hypothetical future motion. Defendants note that by July 24, 2026, there will be an actual motion to dismiss presenting concrete threshold grounds based on binding Supreme Court precedent. More specifically, defendants will argue that 8 U.S.C. § 1254a(b)(5)(A), as construed in *Mullin*, deprives this court of jurisdiction over Claims One, Two, and Five; that *Mullin*'s merits holding forecloses plaintiffs' equal protection claim at the pleading stage; and that plaintiffs' newly constructed due process claim fails as a matter of law. As plaintiffs note above, this court's case procedures provide that a motion to dismiss does not stay discovery "unless the court orders it to be stayed," and that is precisely the order defendants will pursue by filing a substantial, potentially case-dispositive motion presenting pure questions of law. Plaintiffs, in contrast, wish to pursue exceptionally burdensome discovery into Executive Branch deliberations, while suffering no cognizable prejudice from a brief stay given this court's recently granted administrative stay. *See, e.g., In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 337 (N.D. Ill. 2005) (discussing how "[s]tays are often deemed appropriate where the motion to dismiss can resolve the case—at least as to the moving party . . . or where the issue is a threshold one, such as jurisdiction" (citing cases)). Because every ground defendants will raise for dismissal will turn on the pleadings and public record, *no* document plaintiffs now seek could affect that motion's outcome, and the Supreme Court has directed that such threshold objections be resolved before the United States is compelled to disclose deliberative materials. *In re United States*, 583 U.S. at 31; *cf. also U.S. DOGE Serv. v. CREW*, 145 S. Ct. 1981, (2025) (per curiam) ("[S]eparation of powers concerns counsel judicial deference and restraint in the context of discovery regarding internal Executive Branch communications[.]"); *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 385 (2004) (noting how "special considerations control when the Executive

Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated").

## II.     Plaintiffs' Record-Completion Demands Rest on a Form of Review That No Longer Exists in This Case.

Equally confused is plaintiffs' argument for "completing" the administrative record, as such a need proceeds entirely from the premise of *APA* record review, which this court has already concluded does not apply. Dkt. 89 at 7–8. Moreover, the Supreme Court and the Seventh Circuit have just ruled that there can be no review of a TPS termination decision under the APA. *See Mullin*, 2026 WL 1825840, at *10 ("[W]e hold that the TPS statute's judicial-review bar applies to all non-constitutional claims."). If, as this court has ruled, the APA's record rule does not apply, it is unclear why plaintiffs need completion of the administrative record at all. And that is especially unclear where 5 U.S.C. § 706 prescribes the scope of judicial review under the APA, which is review that 8 U.S.C. § 1254a(b)(5)(A), as construed in *Mullin*, withdraws for the Secretary's TPS determinations. There should thus be no occasion to complete, supplement, or un-redact a record compiled for claims this court lacks jurisdiction to adjudicate. *Cf. Soni v. Jaddou*, 103 F.4th 1271, 1273 (7th Cir. 2024) ("[Plaintiff] tells us that the Administrative Procedure Act presumptively allows judicial review . . . . That is true, . . . but this grant of authority comes with an exception: it does not apply when 'statutes preclude judicial review'. 5 U.S.C. § 701(a)(1). Section 1182(a)(9)(B)(v) does just that, so by its own terms the APA drops out. No review means no review; the statute does not need to list all of the many potential legal theories that are not reviewable."). Indeed, plaintiffs' reliance on § 706(2)(B) underscores this point, as that provision is a component of APA review, not a freestanding warrant for record discovery. This is why this court ruled that plaintiffs' equal protection claim (to the extent it proceeds at all) should be subject

14

to ordinary civil rules, Dkt. 89 at 7, which is precisely what defendants' motion to dismiss the recently filed amended complaint will do.

The specific documents the plaintiffs demand (discussed more below) confirm this same problem. The unredacted USCIS Decision Memorandum and the Records of Clearance and Approval are quintessentially predecisional, materials reflecting internal recommendations and inter-agency clearance of a determination Congress placed beyond judicial review. And they are outside of the record because they are not considered by the Secretary at the time of decision. Further, the plaintiffs cannot demonstrate the "particularized need" that *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993), requires when the claims those materials would ostensibly serve are the subject of an imminent, potentially dispositive motion presenting pure questions of law. Similarly, plaintiffs' request for State Department reports "to the extent they exist" is exploratory by its own terms. *See Clark v. Creative Hairdressers, Inc.*, No. 05-cv-103, 2005 WL 3008511, at *15 (D. Md. Nov. 9, 2005) ("[A] request for discovery will not be granted if the party merely wishes to conduct a 'fishing expedition' in search of evidence that may be helpful."). Defendants preserve all applicable privileges and objections, including the deliberative-process privilege, as to each request, and incorporate their prior briefing in opposition to plaintiffs' motion to compel. Dkt. 77.

Plaintiffs' new document-specific arguments do not cure this defect. As to the Decision Memorandum, plaintiffs contend that the deliberative-process privilege dissolved when the Secretary "adopted" USCIS's final recommendation. But a decisionmaker's concurrence in a recommendation's bottom line is not an adoption of the entirety of the underlying reasoning; the privilege yields only where the agency expressly adopts or incorporates the deliberative analysis itself as the basis for its decision. *See Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421

15

U.S. 168, 184–85 (1975); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161 (1975). The signature page reflects the determination that was made; the redacted recommendations reflect the candid discussion, analysis, and advice that preceded it, which is precisely what the privilege exists to protect. Nor do production orders entered by other district courts in parallel TPS litigation (which predate *Mullin*'s confirmation that no APA record review is available for these determinations) supply a rule of decision for this court where both the Decision Memorandum and the Record of Clearance and Approval (discussed below) are not even part of the administrative record and this court has not yet ordered discovery to commence.

The Record of Clearance and Approval fares no better. Plaintiffs describe it as a document that "discloses who advised" the Secretary and say it would help them "identify potential custodians" of documents "and/or witnesses for deposition." *Supra*. That is a candid admission that plaintiffs seek discovery in aid of further discovery into the Executive Branch's internal advisory process. The problem with that admission is that is the very interest to which *Cheney* directs "special considerations," 542 U.S. at 385, and is itself problematic where the advisory chain behind a TPS determination is within the process that the Supreme Court just decided Congress shielded from judicial review.

Plaintiffs' theory of a dilemma for the State Department reports fails for the same reason. Preliminarily, defendants note that the administrative record provides the Secretary's consultation with the State Department. Regarding the first horn of plaintiffs' dilemma theory (if any such reports were considered by the Secretary), the plaintiffs say they belong in the "administrative record." But that is APA record-completion reasoning, and *Mullin* forecloses APA review of this determination. On the second horn, plaintiffs say the absence of any such report would itself be an *Arlington Heights* "departure" and a procedural due process defect. But that argument

16

presupposes the legal sufficiency of a due process claim that will be the subject of defendants' imminent Rule 12 motion and fails as a matter of law. A "particularized need" under *Farley* cannot be built on claims the court lacks jurisdiction to hear or cannot survive the plausibility requirements for pleading. And a request whose stated object is to "confirm" whether documents exist remains exploratory however it is framed.

### III. Plaintiffs' Requests for an Order Compelling Production and for a Court-Ordered ESI Schedule Are Not Properly Before the Court.

Plaintiffs ask this court to "specifically compel production" through this *status report*. *See supra*. But the July 9 Order contemplated a request-by-request assessment upon proper presentation, and a joint status report is not a motion to compel. Nor is it a vehicle for the affirmative scheduling order plaintiffs now propose, under which defendants would be required to produce a list of Executive Branch custodians—with titles, responsibilities, and tenures—by July 23, 2026, exchange search terms the same day, and report resulting document counts by July 27, 2026. All at the same time this court stayed this case to accommodate plaintiffs' so-called emergency request for another preliminary injunction and set an expedited briefing schedule for the parties to complete. Dkt. 96.

With this backdrop in mind, plaintiffs' proposed accelerated discovery schedule is not a mechanism for "assessing" proportionality, but is the discovery itself. Identifying custodians, negotiating and running search terms across Executive Branch systems, and collecting and counting the results is the front end of the very ESI production process that must await resolution of defendants' threshold Rule 12 objections, *In re United States*, 583 U.S. at 31, and plaintiffs would have it undertaken while this case is stayed (which they asked for). Dkt. 96.

Plaintiffs' related assertion that defendants have "waived the opportunity to articulate the burden" of these requests, *supra*, is likewise mistaken. Defendants conferred in accordance with

17

Local Rule 37.2 on July 16, July 20, and July 21, 2026, and articulated their position each time: threshold questions of jurisdiction and legal sufficiency must be resolved before request-by-request burden negotiations can be meaningful. Adhering to a good-faith threshold legal position during conferral does not forfeit Rule 26(b)(1)'s proportionality limits, which the court applies in all events, and defendants' burden and privilege objections are preserved in their prior briefing. Dkt. 77.

Defendants therefore submit that the court should defer any request-specific rulings until it resolves plaintiffs' motion for postponement (filed last night), along with defendants' forthcoming motions to dismiss and to stay discovery, and propose that the parties submit a further joint status report within seven days of the court's ruling on defendants' motion to dismiss. Defendants will be prepared to address the appropriate sequencing of these issues at the discovery conference presently set for July 28, 2026.

## IV.    The RFPs Are Untethered to the Burma Termination and Disproportionate.

Finally, each of the four requests for production of documents seeks "all documents and communications" concerning government-wide immigration policies. Those are overbroad because none is specific to Burma, and none is even tied to the TPS determination being challenged here.

Start with RFP No. 1 (all efforts to "end or limit TPS as a program," as to any country), which is a demand for the complete internal history of this administration's TPS policy. The court's ruling on a motion to dismiss regarding this issue could easily prove self-defeating for plaintiffs, as *Mullin* held that precisely this across-the-board, program-wide posture—encompassing terminations affecting countries in Asia, Africa, the Middle East, and Latin America—supplies the obvious lawful explanation that defeats a plausible inference of racial targeting. 2026 WL 1825840, at *12–13. Discovery into program-wide intent cannot rescue a claim that the program-

18

wide pattern itself refutes. *See id.* at \*12 ("Ironically, both *Doe* and *Miot* respondents identify a strong, race-neutral explanation of these officials' statements: the present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies.").

Plaintiffs' rejoinder that *Mullin* spoke only to the limited factual record before it inverts the Supreme Court's logic in that decision. The breadth of the record before the Court was not the problem, as the breadth of the *policy* was the answer. *See id.* The more comprehensively plaintiffs document an administration-wide effort to end or limit TPS as to every country and region, the more complete the race-neutral explanation the Supreme Court credited becomes. Nor does plaintiffs' new theory that the termination reflects "a bare desire to harm TPS holders as a group" justify the request. This is because TPS holders as such are not a suspect class but the beneficiaries of a discretionary statutory program, and the across-the-board withdrawal of a discretionary benefit from all who hold it is the antithesis of invidious targeting of any protected group.

So too with RFP Nos. 2 and 3, which seek all documents concerning implementation of a general immigration-enforcement Executive Order and a Presidential Proclamation restricting entry. These requests are classic fishing expeditions, as they relate to measures of government-wide application, resting on distinct legal authorities, and neither of which affected the Burma TPS termination. That a *Federal Register* notice or a contemporaneous public statement references such a government-wide measure does not convert "all documents and communications" concerning its implementation—across every agency, program, and country—into evidence proportional to claims about a *single* TPS determination. And at most, it would support narrowly targeted requests (which these are not). Simply put, these RFPs are simply disproportionate to whatever might be relevant to Burma.

19

This same pattern exists with RFP No. 4, which seeks all documents concerning refugee-admissions policies under Executive Order 14,163, including asserted preferences within the refugee system. But that executive order does not even mention TPS or Burma. And the refugee-admissions program is a completely separate statutory scheme administered under separate statutory authority. Internal documents about the refugee-admissions program have no tendency to show that the Secretary's Burma TPS determination—one of more than a dozen materially identical TPS terminations—was motivated by animus toward Burmese nationals. They are instead requests that seek circumstantial atmospherics of the kind the *Mullin* Court found insufficient against the termination pattern, on a record that included far more pointed material than *anything* alleged as to Burma. *See* 2026 WL 1825840, at *11–12.

Plaintiffs' authorities point in the same direction. *Trump v. Hawaii* resolved a constitutional challenge to a Presidential entry restriction under a deferential standard of review and on extrinsic, publicly available evidence—without ordering discovery into internal Executive deliberations. 585 U.S. 667, 704–06 (2018). And *Withrow v. Larkin* started from the "presumption of honesty and integrity in those serving as adjudicators, 421 U.S. 35, 47 (1975). Moreover, that case does not graft an adjudicative "neutral decisionmaker" requirement onto a general policy determination affecting an entire class of foreign nationals. Rather, its principle of neutral decisionmaking governs adjudications of individual rights, not legislative-type policy judgments. *Cf. Bi-Metallic Inv. Co. v. State Bd. of Equalization of Colo.*, 239 U.S. 441, 445–46 (1915) ("There must be a limit to individual argument in such matters if government is to go on.").

In sum, the plaintiffs' pursuit of discovery when they have recently filed an amended complaint, stayed this litigation, and are moving (again) for preliminary relief, is improper. And a joint status report is not the place for such litigation or provide objections to RFPs. Whatever the

20

ultimate scope of permissible discovery if any claim survives, requests of this breadth (which reach White House-level policy deliberations across four distinct policy instruments) are disproportionate under Rule 26(b)(1) while threshold motions are pending, and the proper course under *In re United States* is to resolve those threshold issues first.

Dated: July 21, 2026

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Joshua S. Press
    JOSHUA S. PRESS
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-7625
    joshua.press@usdoj.gov

    *Attorney for Defendants*

    ASIAN AMERICAN LEGAL DEFENSE
    AND EDUCATION FUND
    */s/ Phi Nguyen*
    Phi Nguyen
    Dinesh McCoy
    Helen Anne Schutz Lo
    Razeen Zaman
    Niji Jain
    99 Hudson Street, 12th Floor
    New York, NY 10013
    (212) 922-5932
    pnguyen@aaldef.org
    dmccoy@aaldef.org
    alo@aaldef.org
    rzaman@aaldef.org
    njain@aaldef.org

THE LAW OFFICES OF JUNE J. HTUN
/s/ *June Htun*
June Htun
3643 West Belmont Avenue
Chicago, Illinois 60618
(773) 362-5000
june@htunlaw.com

INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
/s/ *Guadalupe Aguirre*
Guadalupe Aguirre
 Pedro Sepulveda
One Battery Park Plaza, Fl 33
New York, NY 10004
(929) 246-0154
laguirre@refugeerights.org
psepulveda@refugeerights.org

Megan Hauptman
 650 Massachusetts Ave NW
Suite 600
Washington, D.C. 20001
(646) 939-7329
mhauptman@refugeerights.org

*Counsel for Plaintiffs*

22