UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AUNG DOE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 25 C 15483 |
| | ) | |
| MARKWAYNE MULLIN, in his official | ) | Judge Kennelly |
| capacity as Secretary of Homeland Security, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MOTION TO STAY DISCOVERY

Defendants respectfully move to stay all discovery pending resolution of their motion to dismiss plaintiffs' amended complaint. The six plaintiffs in this proposed class action are natives and citizens of Burma (also known as Myanmar) with Temporary Protected Status ("TPS"). They challenge the Secretary of Homeland Security's determination to terminate TPS designation for Burma (more specifically, the effective date). *See generally* Dkt. 90 ("Am. Compl."); *see also* 90 Fed. Reg. 53,378 (Nov. 25, 2025). When this court entered its July 9, 2026 order regarding extra-record discovery, it did so against a legal landscape that no longer exists. Dkt. 89. That order's premise—that plaintiffs' equal-protection claim warranted extra-record discovery, informed by the court's preliminary assessment of pretext in connection with claims brought under the Administrative Procedure Act ("APA")—has been overtaken by two intervening decisions. First, the Supreme Court's holding in *Mullin v. Doe*, 609 U.S. ___, 2026 WL 1825840 (June 25, 2026), that non-constitutional challenges to TPS determinations are judicially unreviewable, and second, the Seventh Circuit's summary reversal of this court's postponement order in this case. Dkt. 103, 104. Informed by those developments, defendants have now moved to dismiss the amended

complaint in its entirety, on grounds that are threshold, jurisdictional in substantial part, and dispositive if accepted. A short stay of discovery pending resolution of that motion is therefore the proportionate course because it avoids compelling intrusive discovery into Executive Branch deliberations in a case that may not survive the pleadings, and it costs plaintiffs nothing that a prompt ruling on the motion cannot restore.

## Background

This court is familiar with the relevant background, and defendants refer the court to the corresponding portions of their most recent opposition to plaintiffs' renewed motion for preliminary relief. *See* Dkt. 105. For present purposes, defendants will keep the relevant procedural history here brief.

Plaintiffs filed this putative class action on December 19, 2025, Dkt. 1, asserting two APA claims and an equal protection claim, *see* Dkt. 51 at 8, and moved to postpone the TPS termination's effective date under 5 U.S.C. § 705, Dkt. 15. On January 23, 2026, this court granted § 705 relief and held the claims reviewable as pattern-and-practice challenges, found a likelihood of success on the APA claims (consultation, national interest, pretext, and change-in-position), and expressly declined to reach plaintiffs' equal protection claim. Dkt. 51 at 14–20, 28–51, 52; see *also* Dkt. 52. Defendants appealed. On July 9, 2026, the court granted in part plaintiffs' motion to compel, authorizing extra-record discovery in support of plaintiffs' initial equal protection claim on the strength of this court's January findings, deferring request-by-request rulings pending the parties' conferral on custodians and search terms, and directing the joint status report and a July 28th telephonic conference. *See generally* Dkt. 89.

However, two recent developments have disrupted the course of this litigation. On June 25, 2026, the Supreme Court held that § 1254a(b)(5)(A) bars all non-constitutional challenges to TPS determinations and that the Haitian TPS recipients' equal protection claim was unlikely to

2

succeed. *Mullin v. Doe*, 2026 WL 1825840, at \*7–13. Based on the Court's holdings in *Mullin v. Doe*, the Seventh Circuit summarily reversed this court's postponement order on July 16; the mandate issued on July 27, Dkt. 103, 104; but this court administratively stayed the termination's effect through August 7, Dkt. 97. Five days after this court's July 9th order, the plaintiffs filed their amended complaint, Dkt. 90, and shortly thereafter filed a renewed § 705 motion on July 20th, resting solely on two of their five total claims for relief (ultra vires action and a violation of due process), *see* Dkt. 98. Defendants' motion to dismiss will be filed today (within 14 days of plaintiffs' amended complaint of July 14, 2026).

**Legal Standard**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005) (same). The court has "extensive discretion" to decide discovery matters. *Motorola Solutions, Inc. v. Hytera Comms. Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019); *see also Searls v. Glasser*, 64 F.3d 1061, 1068 (7th Cir. 1995) ("Because the district court is far better situated to pass on discovery matters, [the Seventh Circuit] review[s] its discovery decisions for an abuse of discretion."). Courts may refuse discovery of matters "of 'marginal relevance,'" and it is an assessment of proportionality that is essential. *Motorola Solutions*, 365 F. Supp. 3d at 924 citation to internal quotations omitted).

Although the filing of a motion to dismiss does not automatically stay discovery, a court may stay discovery through an exercise of its inherent authority to manage litigation or its authority under Rule 26(c). *See, e.g.*, *U.S. ex rel. Robinson v. Ind. Univ. Health Inc.*, No. 13-cv-2009, 2015 WL 3961221, at \*1 (S.D. Ind. June 30, 2015). When considering a stay of discovery,

courts consider whether the stay of discovery would (1) unduly prejudice or tactically disadvantage the nonmovant; (2) simplify the issues in question and streamline the trial; and (3) reduce the burden of litigation on the parties and on the court. *Robinson v. Walgreen Co.*, No. 20 C 50288, 2021 WL 2153069, at *1 (N.D. Ill. June 16, 2021) (citing *Sadler as Tr. of Larry R. Sadler Irrevocable Tr. v. Retail Properties of Am., Inc.*, No. 12 C 5882, 2013 WL 12333447, *1 (N.D. Ill. Sept. 27, 2013). And notably, a stay of discovery has been deemed proper, before expensive discovery, when a party raises a potentially dispositive issue. *See Alexander v. Take-Two Interactive Software, Inc.*, No. 18-cv-966, 2019 WL 2176321, at *1 (S.D. Ill. May 20, 2019); *see also U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 79–80 (1988) (it is appropriate for a court to limit discovery proceedings at the outset to a determination of jurisdictional matters). And this is especially true where threshold issues are raised. *See In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 337 (N.D. Ill. 2005) ("Stays are often deemed appropriate where the motion to dismiss can resolve the case . . . or where the issue is a threshold one, such as jurisdiction, standing, or qualified immunity." (internal citations omitted)); *Builders Ass'n of Greater Chi. v. City of Chicago*, 170 F.R.D. 435, 437 (N.D. Ill. 1996) ("[L]imitations [on the scope or sequence of discovery] can be appropriate when one of the parties raises a potentially dispositive threshold issue such as a challenge to the plaintiff's standing.").

Where the contemplated discovery reaches Executive Branch deliberations, the calculus tilts further: the Supreme Court has admonished that threshold legal objections should be resolved *before* the federal government is compelled to produce deliberative materials. *See In re United States*, 583 U.S. 29, 31–32 (2017) (per curiam); *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 385 (2004).

**Argument**

**I.    Defendants' Motion to Dismiss Presents Threshold, Dispositive Questions of Law That Should Be Resolved Before Discovery.**

As the aforementioned legal standard explains, a stay pending a dispositive motion to dismiss is most clearly warranted where the motion raises jurisdictional bars and pure questions of law that no discovery can affect. *See In re United States*, 583 U.S. at 31–32. That is this case. Counts One and Two, Am. Compl. ¶¶ 207–17, are barred by § 1254a(b)(5)(A) as construed in *Mullin v. Doe*—a point plaintiffs effectively conceded on appeal to the Seventh Circuit. Count Five—pleaded as "Ultra Vires / Administrative Procedure Act," *id.* at ¶¶ 229–31, and therefore non-constitutional on its face—is barred by that same provision, as the Court has ruled that "the TPS statute's judicial-review bar applies to all non-constitutional claims," *Mullin v. Doe*, 2026 WL 1825840, at *10, and foreclosed on the merits by the Homeland Security Act of 2002's ("HSA") transfer provisions and *Mullin*'s own confirmation that "[r]esponsibility for TPS decisions rests with the Secretary of Homeland Security," *id.* at *4. It is self-defeating besides, since on plaintiffs' own theory there was never a valid TPS designation for Burma to even terminate. Count Three fails under the reasoning of *Mullin v. Doe*'s equal-protection analysis, which found the same thirteen-country termination pattern (Burma included) supported a strong race-neutral explanation, 2026 WL 1825840, at *12–13; and Count Four, Am. Compl. ¶¶ 224–28, fails under settled due process doctrine because plaintiffs have no fundamental liberty or property interest in Burma being perpetually designated for TPS where that determination is in the Secretary's discretion.

Critically, every one of these grounds for dismissal is a question of law on the face of the pleadings and the public record. No document plaintiffs might obtain in discovery bears on whether § 1254a(b)(5)(A) withdraws jurisdiction, whether the HSA transferred TPS authority to

5

the United States Department of Homeland Security ("DHS"), or whether the amended complaint's own allegations of an across-the-board termination pattern defeat the plausibility of racial targeting under *Mullin v. Doe* for the purposes of pleading sufficiency after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

This court's prior discovery ruling rested on its assessment that plaintiffs had made a preliminary showing on their equal-protection claim warranting extra-record inquiry, an assessment which was intertwined with the court's earlier pretext analysis under the APA claims. This court was careful to describe that analysis as "only a preliminary determination . . . given the state of the record at this point and the brief period afforded to the Court to review the record." Dkt. 51 at 45. But since that time, the Supreme Court has held such APA claims unreviewable, and the Seventh Circuit has reversed the January order of this court embodying those preliminary findings. Dkt. 103. The sole remaining candidate for *Arlington Heights*-style discovery is the equal protection claim, which is a claim this court has never assessed even preliminarily, having expressly declined to reach it. *See* Dkt. 51 at 52. That is significant because *Mullin v. Doe* reached such a claim on a more developed record—with the parties' full evidentiary submissions before the Court, and with limited discovery—and held that the same claim was unlikely to succeed. 2026 WL 1825840, at *13. Where the only claim that could possibly form a basis for discovery is directly imperiled by intervening Supreme Court authority, sequencing this court's dismissal ruling first is not delay, but elementary case management. Indeed, this was partially why this court deferred request-by-request rulings pending the parties' conferral on next steps, contemplating precisely this kind of staged approach. *See* Dkt. 89.

6

**II.     The Discovery at Issue Is Exceptionally Burdensome and Implicates Serious Separation of Powers Concerns.**

As previously argued in defendants' prior motion for a stay, plaintiffs' outstanding requests get at the core of Executive Branch deliberations. Indeed, the extra-record discovery plaintiffs seek would reach into the Secretary's deliberations and the mental processes of agency officials across a dozen TPS terminations, the "completion" of the administrative record, and attendant litigation over the deliberative-process privilege all presuppose that plaintiffs' claims will go forward as they are presently constituted and that the relief plaintiffs seek is available. Compelled production of such materials before resolution of threshold jurisdictional objections inverts the proper order of operations the Supreme Court mandated in *In re United States*. There, as here, the federal government moved to dismiss on grounds that "if accepted, likely would eliminate the need for" a more fulsome administrative record or for discovery, and the Court held it was error to compel production without first resolving those threshold objections. 583 U.S. at 32.

The same concerns are heightened where, as here, discovery would probe the deliberations of a Cabinet Secretary and Executive Office of the President concerning a determination Congress expressly shielded from judicial review. *See Cheney*, 542 U.S. at 385 (separation of powers concerns are especially weighty where discovery targets the Executive's decisionmaking processes). Even apart from privilege and proportionality issues, the collateral litigation such discovery generates (including, inter alia, privilege logs, deliberative-process assertions declaration-by-declaration) is precisely the burden that a short stay avoids and that could never be undone if the case is dismissed.

**III.    The Balance of Hardships and the Public Interest Favor a Stay, and Plaintiffs Face No Cognizable Prejudice.**

Finally, it is important to note that a stay pending a ruling on the motion to dismiss delays nothing of consequence. As discussed above, the motion to dismiss presents pure questions of law

and can be resolved promptly on the briefing. Defendants do not seek to slow that schedule. Nor does the discovery bear on the emergency relief plaintiffs seek, as their renewed § 705 motion turns on the legal viability of the ultra vires and due process claims, not on facts to be developed. If any claim survives dismissal, discovery can resume exactly where it stands, with no evidence lost, with defendants' documents preserved.

By contrast, the burden to defendants of proceeding now is irrecoverable: privilege, deliberative-process, and separation-of-powers injuries from compelled disclosure cannot be remedied after the fact. A similar interest weighs in favor of conserving scarce judicial resources. Where the government is a party, the assessment of harm to the opposing party and of the public interest merge. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both such interests favor a short, defined stay of discovery that allows this court to decide critical threshold viability questions after plaintiffs' amended complaint and respects the separation-of-powers concerns that attend judicial review of the Executive's immigration determinations. *See, e.g.*, *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210 (1953) ("Courts have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments *largely immune from judicial control*." (emphasis added)).

**Conclusion**

For the foregoing reasons, defendants request that the court stay all discovery, and suspend the outstanding deadlines under the July 9, 2026 order, pending resolution of defendants' motion to dismiss plaintiffs' amended complaint.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Joshua S. Press
    JOSHUA S. PRESS
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-7625
    joshua.press@usdoj.gov

By: s/ Temilade F. Oduala
    TEMILADE F. ODUALA
    Special Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-1998
    Temilade.Oduala@usdoj.gov