UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AUNG DOE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 25 C 15483 |
| v. | ) | |
| | ) | Judge Kennelly |
| KRISTI NOEM, in her official capacity as | ) | |
| Secretary of Homeland Security, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

ANDREW S. BOUTROS
United States Attorney for
the Northern District of Illinois

JOSHUA S. PRESS
Assistant United States Attorney
219 South Dearborn Street, Fifth Floor
Chicago, Illinois 60604
Tel: (312) 886-7625
e-Mail: joshua.press@usdoj.gov

TEMILADE F. ODUALA
Special Assistant United States Attorney
219 South Dearborn Street, Fifth Floor
Chicago, Illinois 60604
Tel: (312) 353-1998
e-Mail: temilade.oduala@usdoj.gov

**Table of Contents**         **Page**

Introduction................................................................................................................1

Background ................................................................................................................2

Legal Standards.........................................................................................................4

    I.      Motions to Dismiss for Lack of Subject Matter Jurisdiction.................................4

    II.     Motions to Dismiss for Failure to State a Claim......................................................4

Argument ..................................................................................................................5

    I.      8 U.S.C. § 1254a(b)(5)(A) Prohibits Judicial Review of Plaintiffs' Claims. ..........5

    II.     8 U.S.C. § 1252(f)(1) Precludes Plaintiffs' Requested Relief. ..............................10

    III.   Plaintiffs' Allegations Fail to State a Viable Claim For Relief. ...........................12

         A.     The Court Should Dismiss Count One........................................................12

         B.     The Court Should Dismiss Count Two.......................................................14

         C.     The Court Should Dismiss Count Three.....................................................15

         D.     The Court Should Dismiss Count Four........................................................18

         E.     The Court Should Dismiss Count Five. ......................................................18

Conclusion ..............................................................................................................20

**Table of Authorities**

**Page(s)**

**Cases**

*Adame v. Holder*,
762 F.3d 667 (7th Cir. 2014) ...................................................................................... 8

*AnchorBank, FSB v. Hofer*,
649 F.3d 610 (7th Cir. 2011) ...................................................................................... 4

*Arguello v. Noem*,
2025 WL 2896849 (D. Utah Oct. 9, 2025) ................................................................. 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................... 4, 5, 16, 17

*Bah v. Cangemi*,
548 F.3d 680 (8th Cir. 2008) .................................................................................... 10

*Bd. of Regents v. Roth*,
408 U.S. 564 (1972) ................................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................ 4, 17

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*,
239 U.S. 441 (1915) ................................................................................................... 7

*CASA, Inc. v. Noem*,
792 F. Supp. 3d 576 (D. Md. 2025) .......................................................................... 19

*City & Cnty. of San Francisco v. EPA*,
604 U.S. 334 (2025) ................................................................................................. 11

*City of Chicago v. Shalala*,
189 F.3d 598 (7th Cir. 1999) .................................................................................... 15

*Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*,
770 F.3d 586 (7th Cir. 2014) ...................................................................................... 4

*Czerkies v. U.S. Dept. of Labor*,
73 F.3d 1435 (7th Cir. 1996) ...................................................................................... 8

ii

*Dawson v. Milwaukee Housing Auth.*,
930 F.2d 1283 (7th Cir. 1991) ........................................................................ 8

*Dep't of Commerce v. New York*,
588 U.S. 752 (2019) ...................................................................................... 13

*FCC v. Prometheus Radio Project*,
592 U.S. 414 (2021) ...................................................................................... 12

*FDA v. Wages & White Lion Invs., LLC*,
145 S. Ct. 898 (2025) .................................................................................... 14

*Fiallo v. Bell*,
430 U.S. 787 (1977) ...................................................................................... 16

*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2022) ................................................................................ 10, 11

*Garland v. Ming Dai*,
593 U.S. 357 (2021) ...................................................................................... 12

*Gibson v. City of Chicago*,
910 F.2d 1510 (7th Cir. 1990) ........................................................................ 4

*Goros v. County of Cook*,
489 F.3d 857 (7th Cir. 2007) .......................................................................... 8

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995) ...................................................................................... 19

*Hernandez v. Sessions*,
884 F.3d 107 (2d Cir. 2018) .......................................................................... 10

*Hewitt v. Helms*,
459 U.S. 460 (1983) ........................................................................................ 9

*Jimenez-Nieves v. United States*,
682 F.2d 1 (1st Cir. 1982) ............................................................................... 7

*Ky. Dep't of Corr. v. Thompson*,
490 U.S. 454 (1989) ........................................................................................ 9

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ...................................................................................... 13

*Little Sisters of the Poor v. Pennsylvania*,
591 U.S. 657 (2020) ................................................................................................. 13

*Mathews v. Diaz*,
426 U.S. 67 (1976) ............................................................................................. 15, 16

*Mathews v. Eldridge*,
424 U.S. 319 (1976) .................................................................................................. 8

*McNary v. Haitian Refugee Center, Inc.*,
498 U.S. 479 (1991) .................................................................................................. 6

*Mejia Rodriguez v. DHS*,
562 F.3d 1137 (11th Cir. 2009) .............................................................................. 19

*Mullin v. Doe*,
609 U.S. ___, 2026 WL 1825840 (June 25, 2026) ........................................... passim

*Nat'l TPS All. v. Noem*,
150 F.4th 1000 (9th Cir. 2025) ............................................................................... 20

*Nat'l TPS All. v. Noem*,
166 F.4th 739 (9th Cir. 2026) ................................................................................. 20

*Nat'l TPS All. v. Noem*,
773 F. Supp. 3d 807 (N.D. Cal. 2025) .................................................................... 19

*Nat'l TPS All. v. Noem*,
798 F. Supp. 3d 1108 (N.D. Cal. 2025) .................................................................. 20

*Nielsen v. Preap*,
586 U.S. 392 (2019) ................................................................................................ 19

*Nobles v. Mullin*,
177 F.4th 886 (7th Cir. 2026) ................................................................................. 14

*Olim v. Wakinekona*,
461 U.S. 238 (1983) ............................................................................................. 9, 18

*Patel v. Garland*,
596 U.S. 328 (2022) .................................................................................................. 5

*Portillo-Rendon v. Holder*,
662 F.3d 815 (7th Cir. 2011) ............................................................................... 8, 18

*Ramos v. Wolf*,
  975 F.3d 872 (9th Cir. 2020) ............................................................................. 17

*Regents of the Univ. of Cal.*,
  591 U.S. 1 (2020) ..................................................................................... 16, 17

*Romer v. Evans*,
  517 U.S. 620 (1996) ........................................................................................ 18

*Saget v. Trump*,
  375 F. Supp. 3d 280 (E.D.N.Y. 2019) ............................................................. 19

*Silha v. ACT, Inc.*,
  807 F.3d 169 (7th Cir. 2015) ............................................................................. 4

*Smith v. Garland*,
  103 F.4th 1244 (7th Cir. 2024) ........................................................................ 14

*Soni v. Jaddou*,
  103 F.4th 1271 (7th Cir. 2024) ........................................................................ 10

*Staub v. Proctor Hosp.*,
  562 U.S. 411 (2011) ........................................................................................ 17

*Tobar v. Garland*,
  65 F.4th 195 (5th Cir. 2023) ........................................................................... 10

*Town of Castle Rock v. Gonzales*,
  545 U.S. 748 (2005) .......................................................................................... 9

*Trump v. Hawaii*,
  585 U.S. 667 (2018) .................................................................................. 13, 15

*U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*,
  508 U.S. 439 (1993) ........................................................................................ 11

*United States v. Fla. E. Coast Ry. Co.*,
  410 U.S. 224 (1973) .......................................................................................... 8

*United States v. Texas*,
  597 U.S. 785 (2022) .................................................................................. 10, 13

*West Virginia v. EPA*,
  597 U.S. 697 (2022) ........................................................................................ 20

**Statutes**

5 U.S.C. § 705................................................................................................................ 3, 4

5 U.S.C. § 701(a)(2)........................................................................................................ 10

5 U.S.C. § 702................................................................................................................. 10

6 U.S.C. § 552(d) ........................................................................................................... 19

6 U.S.C. § 557 ................................................................................................................ 19

8 U.S.C. § 1103(a)(1)...................................................................................................... 19

8 U.S.C. § 1103(g) ......................................................................................................... 19

8 U.S.C. § 1252(a)(2)(B)(ii) .......................................................................................... 14

8 U.S.C. § 1252(f)(1) ........................................................................................ i, 1, 10, 11

8 U.S.C. § 1252(f)(2) ..................................................................................................... 11

8 U.S.C. § 1254a ....................................................................................................... 10, 11

8 U.S.C. § 1254a(a)(1)(A) .............................................................................................. 10

8 U.S.C. § 1254a(b)(1)(C) .......................................................................................... 2, 13

8 U.S.C. § 1254a(b)(3)...................................................................................................... 8

8 U.S.C. § 1254a(b)(3)(A) ...................................................................................... 9, 12, 13

8 U.S.C. § 1254a(b)(3)(B) .............................................................................................. 14

8 U.S.C. § 1254a(b)(5)(A) ....................................................................................... passim

8 U.S.C. § 1254a(d)(3).................................................................................................... 14

**Regulations**

8 C.F.R. § 244.2 ............................................................................................................. 10

8 C.F.R. §§ 244.13(b), 244.19 ....................................................................................... 14

**Other Authorities**

86 Fed. Reg. 28,132 (May 25, 2021) ........................................................................... 2

87 Fed. Reg. 58,515 (Sept. 27, 2022) .......................................................................... 2

89 Fed. Reg. 20,682 (Mar. 25, 2024) ........................................................................... 2

90 Fed. Reg. 53,378 (Nov. 25, 2025) ..................................................................... 2, 14

Pub. L. No. 104-208 .................................................................................................. 11

**Introduction**

Defendants move to dismiss plaintiffs' amended complaint, which asserts five claims asking this court to review and set aside the Secretary of Homeland Security's termination of Burma's Temporary Protected Status ("TPS") designation. Dkt. 90 ("Am. Compl."). The amended complaint should be dismissed because (1) 8 U.S.C. § 1254a(b)(5)(A) prohibits judicial review of plaintiffs' claims regarding a TPS termination; (2) 8 U.S.C. § 1252(f)(1) independently precludes courts from enjoining or restraining the operation of the TPS statute; and (3) plaintiffs' allegations fail to state a plausible claim under either the Administrative Procedure Act ("APA") or the Fifth Amendment (which does not provide its own built-in cause of action in any event). The court should therefore dismiss the amended complaint for lack of jurisdiction or, alternatively, for failure to state a claim.

The intervening legal landscape frames this motion. In *Mullin v. Doe*, 609 U.S. ___, 2026 WL 1825840 (June 25, 2026), the Supreme Court held that "the TPS statute's judicial-review bar applies to all non-constitutional claims," *id.* at \*10, and concluded that an equal protection challenge to a materially indistinguishable (indeed, if anything more provocative) record concerning the termination of TPS for Haiti was unlikely to succeed on the merits, *id.* at \*11–13. Weeks later, the Seventh Circuit summarily reversed this court's earlier postponement order in this very case based on *Mullin v. Doe*. Order, No. 26-1294 (7th Cir. July 16, 2026); *see also* Dkt. 103. Hoping to avoid the Supreme Court's holdings, the plaintiffs added Counts Four and Five (procedural due process and "Ultra Vires / Administrative Procedure Act" claims) to their amended complaint. But these new claims are merely the plaintiffs re-labeling the exact claims that the Supreme Court has concluded Congress placed beyond review, and they fail on their own terms just the same.

1

**Background**

The court is familiar with this case's general background. As relevant here, the United States Department of Homeland Security ("DHS") is authorized to designate a foreign country for TPS if the DHS Secretary finds that "there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C). Initial designations are discretionary and must be periodically reviewed to determine whether the conditions underlying the designation continue to be met. *Id.* § 1254a(b)(2), (b)(3)(A). The Secretary must "consult[] with appropriate agencies," and, if he determines that a designation is no longer justified, must "terminate the designation by publishing notice in the Federal Register of th[at] determination," including "the basis for the determination[.]" *Id.* § 1254a(b)(3)(A), (B).

Burma was designated for TPS on May 25, 2021, on the basis of extraordinary and temporary conditions following the February 1, 2021 military coup. 86 Fed. Reg. 28,132 (May 25, 2021). Former Secretary Mayorkas extended and redesignated Burma for TPS in 2022, 87 Fed. Reg. 58,515 (Sept. 27, 2022), and again in 2024, through November 25, 2025. 89 Fed. Reg. 20,682 (Mar. 25, 2024). On November 25, 2025, following review, Former Secretary Noem terminated Burma's designation effective January 26, 2026. 90 Fed. Reg. 53,378 (Nov. 25, 2025). She cited improvements in Burma's governance and stability at the national and local levels (such as the end of the state of emergency in July 2025, planned elections, ceasefire agreements, and improved local governance, *id.* at 53,379), as well as visa-overstay data, advance-parole and removal statistics, as well as a Presidential proclamation restricting entry of Burmese nationals, *id.* at 53,380–81. The Secretary determined: "While some extraordinary and temporary conditions may exist, the Secretary has determined that, for the foregoing reasons of national

security, public safety, foreign policy, and immigration integrity, permitting Burmese nationals to remain temporarily in the United States is contrary to the U.S. national interest." *Id.* at 53,382. According to the amended complaint, approximately 3,969 Burmese nationals hold TPS and 236 applications are pending. Am. Compl. ¶ 202.

Hoping to have this court superintend Burma's TPS designation, the instant putative class action was filed on December 19, 2025. Dkt. 1. The plaintiffs are six Burmese TPS holders who originally asserted three claims: two under the APA and one for denial of equal protection. See *generally id.* Plaintiffs moved to postpone the termination's effective date under 5 U.S.C. § 705, Dkt. 15, and on January 23, 2026, this court granted them § 705 relief, resting exclusively on their APA claims (consultation, review of country conditions, national interest, pretext, and change in position), while expressly declining to reach their Fifth Amendment claim. Dkt. 51 at 25–52; *see also* Dkt. 52. Defendants appealed.

On June 25, 2026, the Supreme Court held that § 1254a(b)(5)(A) bars judicial review of all non-constitutional claims challenging the Secretary's TPS determinations—including claims of procedural error—reserving whether the bar reaches constitutional claims, and concluding that the Haitian TPS holders' equal-protection challenge was unlikely to succeed on the merits. *Mullin v. Doe*, 2026 WL 1825840, at *7–13. On July 16, 2026, the Seventh Circuit summarily reversed this court's postponement order. No. 26-1294, Dkt. 34. The mandate was issued on July 27, 2026, Dkt. 103, but this court administratively stayed the termination's effect through August 7, 2026, Dkt. 97. On July 14, 2026, plaintiffs filed the amended complaint, re-asserting their three original claims (Counts One through Three) and adding two new ones: a procedural due process (Count Four) and a claim captioned "Ultra Vires / Administrative Procedure Act" (Count Five). Am.

Compl. ¶¶ 207–31.  On July 20, the plaintiffs filed a renewed § 705 motion resting solely on their new claims.  Dkt. 98.  Defendants opposed that motion on July 27, 2026.  Dkt. 106.

**Legal Standards**

## I.      Motions to Dismiss for Lack of Subject Matter Jurisdiction

The standard of review under Rule 12(b)(1) for a motion to dismiss depends on whether a factual or facial challenge is being raised.  *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). If, on the one hand, a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction—a facial challenge—the court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor.  *Id.*  On the other hand, "a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met."  *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 589–90 (7th Cir. 2014).  "[W]hen evaluating a facial challenge to subject matter jurisdiction," courts employ "the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)," as described below.  *Silha*, 807 F.3d at 174.

## II.     Motions to Dismiss for Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint, not its merits.  *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, courts accept as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads

4

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Argument**

**I. 8 U.S.C. § 1254a(b)(5)(A) Prohibits Judicial Review of Plaintiffs' Claims.**

The TPS statute unambiguously provides that "[t]here is no judicial review of *any* determination of the [Secretary] with respect to the designation, *or termination* or extension of a designation, of a foreign state." 8 U.S.C. § 1254a(b)(5)(A) (emphases added); *see Mullin*, 2026 WL 1825840, at *7 (quoting the provision with the Secretary substituted). The statute commits TPS termination determinations to the Secretary's unreviewable authority. Plaintiffs' lawsuit seeks to challenge—indeed, to set aside or vacate—the Secretary's determination to terminate Burma's TPS. Am. Compl. ¶¶ 232–36 (Prayer for Relief). The court should dismiss this case based on a straightforward application of § 1254a(b)(5)(A).

The plain meaning of the statute's terms confirms its broad sweep. The modifier "any" encompasses determinations "of 'whatever kind.'" *Patel v. Garland*, 596 U.S. 328, 338 (2022). And "with respect to" "generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Mullin*, 2026 WL 1825840, at *7 (quotations omitted). All of plaintiffs' claims are barred. At minimum, as the Supreme Court has now held, § 1254a(b)(5)(A) "applies to all non-constitutional claims," substantive and procedural alike, including any subsidiary determinations. *Id.* at *7–10. That holding directly controls the outcome of Counts One and Two, which are APA claims, Am. Compl. ¶¶ 207–17, and of Count Five, which plaintiffs themselves caption "Ultra Vires / Administrative Procedure Act" and plead as action "in excess of statutory jurisdiction, authority, or limitations in violation of the" APA, *id.*¶ 231, which is non-constitutional on its face.

5

This court's January analysis read the judicial-review bar differently, relying on *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), to preserve jurisdiction over "general collateral challenges to . . . practices and policies." Dkt. 51 at 14–20. *Mullin* forecloses that reading and rejected any such reliance on *McNary*. As the Court put it, litigants and lower courts "read far too much into" *McNary*, and refused to "adopt the broad principle that the term 'determination' applies only to substantive matters." 2026 WL 1825840, at *8. Recasting a challenge to the Burma termination as an attack on a "pattern and practice" is precisely the "creative pleading or clever lawyering" that *Mullin v. Doe* holds cannot evade the judicial-review bar, *id.* at *10, and the Seventh Circuit's summary reversal of the postponement order resting on *Mullin v. Doe*'s jurisdictional analysis confirms as much. Dkt. 103.

Perhaps recognizing that non-constitutional claims are unreviewable under *Mullin v. Doe*, Plaintiffs frame their new Count Four as a procedural due process violation. More specifically, they assert that they have a protected liberty and property interest "in their TPS status and related benefits, including employment authorization and removal protection," Am. Compl. ¶ 226, of which they were deprived because the termination occurred "without following the statutorily mandated requirements," *id.* But plaintiffs' attempt to recast these statutory objections as constitutional flaws fails for four reasons.

*First*, § 1254a(b)(5)(A) bars review of such claims because its operation is not a matter of magic words or creative pleading. The provision bars "judicial review" of decisions to terminate TPS without distinguishing between statutory and constitutional claims any more than it distinguishes between procedural and substantive claims. True, the Supreme Court reserved the question whether the bar applies to constitutional claims. *Mullin*, 2026 WL 1825840, at *10–11. But even if some constitutional claims could theoretically proceed despite the blanket prohibition

6

on "judicial review" of TPS termination decisions, it is particularly clear that plaintiffs' "due process" claim here is barred, because it is a straightforward retread of the same claims the Supreme Court already held were foreclosed by the review bar. This is shown by how the *Mullin v. Doe* plaintiffs (like plaintiffs here) challenged a TPS termination "based on alleged procedural errors," including that the Secretary did not adequately consult with appropriate agencies and that the decision was pretextual, preordained, and politically motivated. *Id.* at *8; *see also* Am. Compl. ¶¶ 211, 226. The Court held that the judicial-review bar applied precisely to those claims, *id.* at *8–9, and took care to emphasize the "importan[ce]" of "ensur[ing] that challengers cannot avoid a judicial-review bar by creative pleading or clever lawyering," such as labeling as "procedural" claims that are substantive in nature. *Id.* at *10.

The plaintiffs' actions here illustrate the foresight of that decision, attempting to circumvent the judicial-review bar by challenging the *same* alleged procedural violations using constitutional labeling. This court should look beyond such labels and recognize these claims for what they are: challenges based on the Secretary's purported failure to adhere to *statutory* requirements. *See Jimenez-Nieves v. United States*, 682 F.2d 1, 6 (1st Cir. 1982) (Breyer, J.). It would be extraordinary if plaintiffs could—like the flip of a switch—sidestep § 1254a(b)(5)(A) by repackaging the same *previously unreviewable* procedural disputes as constitutional ones. On plaintiffs' theory, the Secretary's alleged failure to consult was unreviewable on June 25, but became reviewable the moment they re-style their same arguments as matters of "due process." That would mean that every claim *Mullin* took off the table could be reasserted via the Due Process Clause.

*Second*, the procedural due process constraints plaintiffs invoke do not apply to determinations of general applicability. *See, e.g.*, *Bi-Metallic Inv. Co. v. State Bd. of Equalization*,

7

239 U.S. 441, 445 (1915); *United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 245–46 (1973) (distinguishing adjudication of "disputed facts in particular cases" from "the formulation of a basically legislative-type judgment, for prospective application only"). A country-designation termination rests on country conditions, applies uniformly to all Burmese TPS beneficiaries, and adjudicates no individual's circumstances; the process due is legislative-style notice, which Congress supplied through Federal Register publication and a statutory wind-down. *See* 8 U.S.C. § 1254a(b)(3). Plaintiffs expressly invoke *Mathews v. Eldridge*, 424 U.S. 319 (1976), Am. Compl. ¶ 225 & n.192, but *Mathews* is entirely the wrong framework as it governs individual adjudications, and not legislative rulemaking, *see Dawson v. Milwaukee Housing Auth.*, 930 F.2d 1283, 1286 (7th Cir. 1991); *see also Goros v. County of Cook*, 489 F.3d 857, 859–60 (7th Cir. 2007) ("[I]t has been understood for a long time that the due process clauses do not require hearings to resolve disputes about the meaning and effect of laws, regulations, and contracts."). Plaintiffs thus have no prospect of succeeding on a *Mathews*-based challenge to the termination of Burma's TPS designation.

*Third*, plaintiffs' allegations turn exclusively on statutory procedural requirements and thus fail on their own terms. As the Seventh Circuit has explained, "it is appropriate to consider the Constitution only if the statute and regulations are deficient": an agency's failure to provide the "process required by the statute" sounds in statute, and "intoning 'due process'" adds nothing. *Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011); *accord Adame v. Holder*, 762 F.3d 667, 672 (7th Cir. 2014); *Arguello v. Noem*, 2025 WL 2896849, at *6 (D. Utah Oct. 9, 2025). Plaintiffs nowhere allege that the Due Process Clause itself (independent of the TPS statute) would require interagency consultation or *Federal Register* publication before a TPS termination. Their due process claim is thus a statutory claim dressed up as a constitutional one. *Cf. Czerkies*

*v. U.S. Dept. of Labor*, 73 F.3d 1435, 1443 (7th Cir. 1996) (en banc) (dismissing "a case . . . cloaked in constitutional terms," where the plaintiff "affixed the constitutional label to a garden-variety claim for benefits plainly barred by" a statute). It is barred by § 1254a(b)(5)(A) and, in any event, fails on the merits.

*Last*, to assert a procedural due process claim, plaintiffs must "first" show that "there exists a liberty or property interest" to which they have "a legitimate claim of entitlement." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *see Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself."). Where a statute creates a benefit, the plaintiff must "have more than a unilateral expectation of it," *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972), and "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). A statute gives rise to an entitlement only where it places "substantive limitations" on the government's discretion, *Wakinekona*, 461 U.S. at 249, and "mandat[es] the outcome to be reached upon a finding that the relevant criteria have been met." *Thompson*, 490 U.S. at 462.

The plaintiffs here have no legitimate claim of entitlement to Burma's TPS designation being extended. In deciding whether to extend or terminate, the Secretary "shall determine whether the conditions for such designation under this subsection continue to be met," 8 U.S.C. § 1254a(b)(3)(A), but that statute imposes no substantive limitations on that determination; it mandates *termination* in specified circumstances while never mandating *extension* upon any finding, and it does not channel discretion by providing that if "substantive predicates are present, a particular outcome must follow." *Thompson*, 490 U.S. at 463 (citing *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)). The extension "default" operates only absent the Secretary's own determination — determination committed to the Secretary and insulated from judicial review—and the grant of

9

TPS to any individual is itself discretionary. *See* 8 U.S.C. § 1254a(a)(1)(A); 8 C.F.R. § 244.2. This is why courts of appeals uniformly treat TPS and comparable statuses as discretionary relief supporting no protected interest, *e.g.*, *Tobar v. Garland*, 65 F.4th 195, 196 (5th Cir. 2023); *Bah v. Cangemi*, 548 F.3d 680, 685 (8th Cir. 2008); *cf. Hernandez v. Sessions*, 884 F.3d 107, 112 (2d Cir. 2018) (concluding that there is no liberty or property interest in a discretionary waiver), which is why Justice Thomas observed that TPS is "a government-created privilege, not a core private right." *Mullin v. Doe*, 2026 WL 1825840, at *16 (Thomas, J., concurring).

Finally, it should be noted that plaintiffs cannot invoke the APA's waiver of sovereign immunity, Am. Compl. ¶ 20, to press such claims where, as here, that statute another statute takes such jurisdiction away, or where, § 701(a)(2) withholds review of action "committed to agency discretion by law." 5 U.S.C. §§ 701(a)(2), 702; *see also Soni v. Jaddou*, 103 F.4th 1271, 1273 (7th Cir. 2024). Section 1254a(b)(5)(A) is precisely such a limitation, and must be followed. If that were not plain from the face of the statute, it would be unmistakable when the Supreme Court recently reversed two other district courts for failing to give effect to the review bar.

## II. 8 U.S.C. § 1252(f)(1) Precludes Plaintiffs' Requested Relief.

In addition, granting plaintiffs' requested relief would impermissibly restrain the operation of the TPS statute in violation of 8 U.S.C. § 1252(f)(1), which strips every court "(other than the Supreme Court)" of "jurisdiction or authority to enjoin or restrain the operation of" the covered provisions, "[r]egardless of the nature of the action or claim," except as to an individual foreign national in removal proceedings. As the Supreme Court has explained, the provision "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022); *accord United States v. Texas*, 597 U.S. 785, 797 (2022). Section 1254a is covered: although codified in part V of the

10

subchapter, the enacted text places the Immigration and Nationality Act's ("INA") § 244 within chapter 4 of title II—the chapter § 1252(f)(1) shields—and the Statutes at Large control over the Code. *See* IIRIRA, div. C, Pub. L. No. 104-208, §§ 306, 308, 110 Stat. 3009; *see also U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993).

This court rejected the enacted-placement reading in January on two grounds: that the Supreme Court has consistently cited § 1252(f)(1) by reference to the U.S. Code, and that the individual-alien exception fits the U.S. Code's removal provisions. *See* Dkt. 51 at 23–25. Defendants respectfully preserve their position. The cited decisions quoted the U.S. Code in cases where the enacted-placement question was neither presented nor briefed; none holds that the U.S. Code controls over the Statutes at Large, and where the two diverge, the Supreme Court has specifically ruled that is the enacted text that is supposed to govern. *U.S. Nat'l Bank of Or.*, 508 U.S. at 448. And the individual-alien exception fits the enacted placement equally well: chapter 4 of title II of the INA is itself the removal chapter, and Congress placed INA § 244 within it.

Nor is the jurisdictional provision limited to orders labeled as injunctions. It reaches any order that would "enjoin *or restrain*" the statute's operation—and "restrain" must carry meaning independent of "enjoin," as the neighboring § 1252(f)(2) speaks only of "enjoin[ing]." *See City & Cnty. of San Francisco v. EPA*, 604 U.S. 334, 344 (2025) (discussing what is a restriction or restraint); *Aleman Gonzalez*, 596 U.S. at 549 ("restrain" means to "check, hold back, or prevent"); *see also Mullin v. Al Otro Lado*, 146 S. Ct. 2079, 2097-99 (Thomas, J., concurring) (endorsing this reading of § 1252(f)(1) and concluding that the Supreme Court should address lower courts' "apparent end-run around § 1252(f)(1) and *Aleman Gonzalez*" in a "future case" where the government has preserved the argument). Plaintiffs' own Prayer for Relief removes any doubt about what they are asking for: this Court to "[e]njoin and restrain" defendants from enforcing the

11

TPS termination, which are the operative words of § 1252(f)(1) itself, and to vacate or postpone the termination's effect. Am. Compl. ¶¶ 233–35. An order vacating the Burma termination or postponing its effect would check the Secretary's exercise of his § 1254a authority, whatever its label. At minimum, § 1252(f)(1) bars class wide injunctive relief as to non-parties, and no class has been certified.

### III. Plaintiffs' Allegations Fail to State a Viable Claim For Relief.

Even if any of plaintiffs' claims were reviewable, they fail on the merits.

#### A. The Court Should Dismiss Count One.

Plaintiffs assert that the Secretary's termination of Burma's TPS was procedurally improper and arbitrary because the Secretary failed to consult appropriate agencies, did not conduct an objective review of country conditions, relied on impermissible factors, and acted on a predetermined, pretextual basis. Am. Compl. ¶¶ 207–13. Those allegations fail to state a plausible claim.

**Consultation**. The termination notice confirms the Secretary acted "after consulting with appropriate U.S. Government agencies," 90 Fed. Reg. at 53,379, and the administrative record confirms correspondence between DHS and the State Department in July 2025, months before the termination: DHS identified Burma's upcoming September 26 review deadline, and the State Department confirmed it had "no foreign policy concerns with ending" the listed designations. AR 291–92. The TPS statute requires nothing more. Nothing in its text requires face-to-face meetings, a particular number of exchanges, a prescribed depth of discussion, or set topics; imposing such requirements would contravene the principles that courts may not substitute their judgment for the agency's, *see, e.g.*, *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021), and are "generally not free to impose additional judge-made procedural requirements on agencies that Congress has not prescribed," *Garland v. Ming Dai*, 593 U.S. 357, 365 (2021). This court's

12

contrary preliminary conclusion imported a "meaningful exchange of information" gloss from the Ninth Circuit's construction of a different statute, Dkt. 51 at 28–32, but that was based on language that § 1254a(b)(3)(A)'s text does not contain. No definition of consultation requires a specific level of consultation. In any event, *Mullin v. Doe* held this very species of claim unreviewable. *See* 2026 WL 1825840, at \*8.

**Predetermination and pretext.** There is no such thing as a "predetermination" claim. An agency's "*ex ante* preference" for a policy outcome "should not be held against" its ultimate decision, *Biden v. Texas*, 597 U.S. 785, 812 (2022), and the APA requires no "open-minded attitude," *Little Sisters of the Poor v. Pennsylvania*, 591 U.S. 657, 674, 685 (2020). Pretext is cognizable only on plausible allegations that the agency's "sole stated reason" was "contrived," as it is "typical" for an agency to have "both stated and unstated reasons for a decision." *Dep't of Commerce v. New York*, 588 U.S. 752, 756, 781 (2019). The amended complaint pleads an administration-wide policy preference—which is not unlawful—and does not plausibly allege that every stated reason in the agency's notice was contrived. And here again, *Mullin v. Doe* bars such a claim under the APA.

**National interest.** Consideration of the national interest was not an "impermissible factor," but was statutorily required. Burma was designated under § 1254a(b)(1)(C), Am. Compl. ¶ 44, the one ground as to which the amended complaint concedes the national-interest proviso applies, *see id.* at ¶ 25. Because periodic review asks whether "the conditions for such designation . . . *continue* to be met," § 1254a(b)(3)(A) (emphasis added), review of a subsection (C) designation necessarily encompasses looking back at that same national-interest proviso to see what should (or should not) be *continued*. Nothing in the statute constrains what the Secretary may weigh in making that judgment, which itself supplies "no meaningful standard against which

13

to judge the agency's exercise of discretion." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993); *see also Trump v. Hawaii*, 585 U.S. 667, 684–86 (2018).

**Evidence weighing.** Plaintiffs' remaining quarrel is with how the Secretary weighed country-conditions evidence for Burma—alleging cherry-picking and disregard of contrary reports. *See* Am. Compl. ¶¶ 59–71, 211(b). But a reviewing court "may not substitute its judgment for that of the agency," as this court recognized. Dkt. 51 at 33 (the court "may not make its own determination regarding whether extraordinary and temporary conditions persist in Burma"); *id.* at 37 n.7 (declining Plaintiffs' invitation to compare the record reports). That is correct because courts are supposed to "review[ ] agency determinations with great deference . . . and . . . cannot substitute [their] judgment for that of the agency[.]" *Smith v. Garland*, 103 F.4th 1244, 1252 (7th Cir. 2024).

### B. The Court Should Dismiss Count Two.

Plaintiffs next claim that the 60-day wind-down (from over a half-year ago) was an unacknowledged departure from decades of practice. Am. Compl. ¶¶ 214–17. At the threshold, both the judicial-bar analysis from *Mullin v. Doe* and 8 U.S.C. § 1252(a)(2)(B)(ii) shield this decisionmaking from review. Aside from what has already been discussed, § 1252(a)(2)(B)(ii) strips jurisdiction to review "any . . . decision or action . . . the authority for which is specified under this subchapter to be in the discretion of" the Secretary, and the transition-period choice is exactly that: the Secretary "may" provide a longer period, § 1254a(d)(3), a point this Court itself recognized, *see* Dkt. 51 at 47–48 ("the Secretary has discretion to provide for more than sixty days"). In other words, the length of the wind-down is discretionary by the statute's plain terms, and § 1252(a)(2)(B)(ii) thus independently precludes review of it as it is within the range of statutes covered by § 1252(a)(2)(B)(ii)'s ambit, *see Nobles v. Mullin*, 177 F.4th 886, 890 n.1 (7th Cir. 2026).

14

The claim fails on the merits regardless. The statute and regulations expressly authorize a 60-day period. 8 U.S.C. § 1254a(b)(3)(B); 8 C.F.R. §§ 244.13(b), 244.19. The agency has never made a "hard-and-fast commitment" to longer periods that could ground a reliance interest, *FDA v. Wages & White Lion Invs., LLC*, 145 S. Ct. 898, 920 (2025), and the notice acknowledged both the Secretary's discretion and putative reliance interests, *see* 90 Fed. Reg. at 53,381 & n.28. This court applied the change-in-position doctrine while candidly acknowledging that its application to unwritten practice is "unsettled" after *Wages & White Lion*, Dkt. 51 at 48–50, and other courts have held the doctrine inapplicable to precisely this practice, *see id.* at 49. Defendants preserve their position.

## C. The Court Should Dismiss Count Three.

Plaintiffs next allege that the Secretary's termination of Burma's TPS designation violated equal protection because it was motivated by racial and national-origin animus and by a bare desire to harm TPS holders as a group. Am. Compl. ¶¶ 218–23. This count fails to state a viable claim for relief,especially after *Mullin v. Doe*.

Assuming this claim is not covered by the judicial-review bar discussed above, plaintiffs demand "exacting scrutiny." Am. Compl. ¶ 219. But *Trump v. Hawaii* prescribes rational-basis review for constitutional challenges to Executive immigration policy: such measures stand so long as they are "plausibly related" to legitimate objectives, in deference to judgments that "implicate relations with foreign powers" and involve "classifications defined in the light of changing political and economic circumstances." 585 U.S. at 702, 704–05. A country-conditions termination is the paradigm of such a judgment, and nationality-based classifications in the immigration laws receive rational-basis review in any event. *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976) (applying rational basis review). And applying rational-basis review to such immigration-related distinctions is already the established law in the Seventh Circuit. *See City of*

15

*Chicago v. Shalala*, 189 F.3d 598, 609 (7th Cir. 1999) ("We conclude that the citizenship requirements in § 402 of the Welfare Reform Act do not offend equal protection. We hold that *Mathews v. Diaz* requires the application of rational basis review and that the Act survives that level of scrutiny because it is rationally related to legitimate governmental purposes.").

Making categorical distinctions based on nationality is permitted in immigration law, as are many other forms of line-drawing. *See Fiallo v. Bell*, 430 U.S. 787, 793 (1977) (rejecting an equal protection challenge to a sex-based immigration policy and recognizing a "need for special judicial deference to congressional policy choices in the immigration context"). While defendants categorically deny that any racial, ethnic, or national-origin animus motivated any TPS determination, it is no secret that defendants believe the program is actually meant to be temporary and not designed to be perpetual. Allowing such a policy to inform the choice to terminate Burma's TPS designation, as well as the national-interest balancing that was undertaken here, is plausibly related to enforcing the program's temporary nature, allow for greater immigration enforcement, and intricately tied to foreign-policy objectives vis-à-vis Burma, and therefore easily passes rational basis review.

Even under *Arlington Heights*, however, the plaintiffs' allegations fail. The amended complaint's assertion that the termination cannot be explained except by animus is classic conclusory pleading and thus should not be credited. *See Iqbal*, 556 U.S. at 678. The cited statements are largely "remote in time and made in unrelated contexts," and thus "do not qualify as 'contemporary statements' probative of the decision at issue." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 35 (2020) (opinion of Roberts, C.J.). The Supreme Court considered materially similar statements in *Mullin v. Doe* and observed that none "was overtly racial, and in substance all expressed policy views that could rest on race-neutral justifications"; the termination of every

16

designation that came up for review—13 countries of racially diverse populations, including Burma—supplied "a strong, race-neutral explanation," and respondents were "unlikely to prove that race was a motivating factor." 2026 WL 1825840, at *12–13. And *Mullin v. Doe* reached that conclusion on full evidentiary submissions; at the pleading stage, the same across-the-board pattern (and echoed in the amended complaint) is an "obvious alternative explanation" defeating plausibility. *See Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567.

The Burma-related allegations are weaker still, as the statements pointed to principally concern other countries. Am. Compl. ¶¶ 123–64. The amended complaint alleges that the President (six years ago) did not know where Burma was, and therefore, this establishes animus. *Id.* at ¶ 132. But the amended complaint's own account concedes the pattern has non-racial exceptions, such as how South Sudan's TPS designation was extended in May 2025 and Lebanon's automatically extended. *See id.* at ¶ 5 & n.1. Nor can Presidential statements establish animus *by the Secretary*, who is the actual decisionmaker. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 418 (2011); *see also Ramos v. Wolf*, 975 F.3d 872, 897 (9th Cir. 2020) (doubting "cat's paw" transposition to TPS terminations), *vacated on reh'g en banc*, 59 F.4th 1010 (9th Cir. 2023). A contrary rule would invite intrusion on privileged Executive deliberations.

Plaintiffs' asserted disparate-impact theory proves nothing: as nearly every country ever designated for TPS has a majority non-white population, so on plaintiffs' logic "virtually any generally applicable immigration policy could be challenged on equal protection grounds." *Regents*, 591 U.S. at 34; *see also Ramos*, 975 F.3d at 898. And plaintiffs' theory of hostility, Am. Compl. ¶ 221, equally fails because hostility *to a program* is policy disagreement, not animus toward persons. Put another way, terminating a temporary humanitarian program under a statute's review criteria is rationally related to legitimate purposes, and *Mullin v. Doe*'s

characterization of this very pattern forecloses the inference of bare animus under *Romer v. Evans*, 517 U.S. 620, 635 (1996). *See* 2026 WL 1825840, at *12.

### D. The Court Should Dismiss Count Four.

Plaintiffs' procedural due process claim in Count 4 fails for the reasons discussed above, as there is no protected liberty or property interest involved in this case. *See Olim*, 461 U.S. at 250 ("Process is not an end in itself."). And the TPS determination here is one of general applicability under Justice Holmes's century-old decision in *Bi-Metallic*. Finally, plaintiffs' supposed due process theory rests exclusively on asserted statutory procedural shortfalls, which do not state a claim, let alone a constitutional violation in themselves. *Portillo-Rendon*, 662 F.3d at 817; *see* Section III.A-B. Count Four should thus be dismissed.

### E. The Court Should Dismiss Count Five.

As alluded to above, plaintiffs' ultra vires claim is unreviewable from the start because it is admittedly another non-constitutional claim (by plaintiffs' own caption and pleading, see Am. Compl. ¶¶ 229–31), and the Supreme Court unequivocally held that "the TPS statute's judicial-review bar applies to *all* non-constitutional claims." *Mullin*, 2026 WL 1825840, at *10 (emphasis added). This court cannot and should not proceed further.

Even if Plaintiffs' ultra vires claim were reviewable, it fails on the merits. In 2002, Congress created DHS and reorganized responsibility for numerous Executive Branch immigration functions. A straightforward reading of the statutes, the Supreme Court's decision last month, every lower-court decision for the past 24 years, and longstanding Executive Branch practice confirm that the DHS Secretary holds the statutory authority to designate countries for TPS and to extend or terminate those designations.

**Statutes.** The Homeland Security Act of 2002 ("HSA") charged the DHS Secretary with the "administration and enforcement" of all laws "relating to the immigration and naturalization

18

of aliens." 8 U.S.C. § 1103(a)(1). Section 1103(a) carves out functions conferred upon the Attorney General, but § 1103(g) specifies that those reserved functions are only those previously exercised by or with respect to the Executive Office for Immigration Review ("EOIR"), which is revealing because EOIR never administered the TPS statute. If, as plaintiffs contend, § 1103(a) reserved to the Attorney General all functions he previously exercised, § 1103(g) would prove redundant, because § 1103(a) would already have reserved the EOIR functions—and courts must "avoid" readings that render "some words altogether redundant." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995). Congress did not change the TPS statute's text to refer to the Secretary because it did not need to: 6 U.S.C. § 557 deems statutory references to officials whose functions were transferred to refer to the Secretary, completing the shift by operation of law.

**Judicial Constructions.** Reflecting the HSA's clarity, every court to discuss the issue for the last 24 years has recognized the transfer of TPS authority from the Attorney General to the Secretary. It is controlling that the Supreme Court has stated: "[R]esponsibility for TPS decisions rests with the Secretary of Homeland Security." *Mullin*, 2026 WL 1825840, at *4. That was no offhand or unreasoned statement—the Court cited 6 U.S.C. §§ 552(d) and 557, and throughout its decision interpreted the TPS statute as pertaining *to the Secretary. See id.* at *4, *7; *see also Nielsen v. Preap*, 586 U.S. 392, 398 n.2 (2019) ("We replace 'Attorney General' with 'Secretary' because Congress has empowered the Secretary to enforce the Immigration and Nationality Act.").

Lower courts have universally adopted this construction, too. *Mejia Rodriguez v. DHS*, 562 F.3d 1137, 1140 n.3 (11th Cir. 2009); *Saget v. Trump*, 375 F. Supp. 3d 280, 297 (E.D.N.Y. 2019); *CASA, Inc. v. Noem*, 792 F. Supp. 3d 576, 582 (D. Md. 2025) (describing § 557 as "conferring certain authorities granted by statute to the Attorney General, including those relating to TPS, to the Secretary of Homeland Security"); *Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807

19

(N.D. Cal. 2025); *Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1108 (N.D. Cal. 2025); *Nat'l TPS All. v. Noem*, 150 F.4th 1000 (9th Cir. 2025); *Nat'l TPS All. v. Noem*, 166 F.4th 739 (9th Cir. 2026) (all proceeding on this same understanding). In this regard the complaint cannot point to a single decision concluding that the DHS Secretary lacks authority to designate a country for TPS or to terminate a designation. That dog not barking is telling.

**Executive Branch Constructions.** Moreover, DHS's consistent exercise of TPS authority—designating, extending, and terminating TPS for dozens of countries over more than two decades—is a long-standing administrative construction of the transfer. *See Mullin*, 2026 WL 1825840, at *7 (quoting the provision with the Secretary substituted).

## Conclusion

For the foregoing reasons, the amended complaint should be dismissed with prejudice. This is because any further amendment would be futile. No amount of re-pleading can alter *Mullin v. Doe*'s construction of § 1254a(b)(5)(A), the HSA's transfer of authority, or the across-the-board termination pattern for TPS that the amended complaint itself alleges.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Joshua S. Press
JOSHUA S. PRESS
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-7625
joshua.press@usdoj.gov

By: s/ Temilade F. Oduala
TEMILADE F. ODUALA
Special Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-1998

20