**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Aung DOE; Nina DOE; Thura DOE; Khin Thet DOE; Chu Let DOE; and Maung DOE, on their own behalf and on behalf of others similarly situated,

*Plaintiffs*,

– *versus* –

Markwayne MULLIN, Secretary, United States Department of Homeland Security, in his official capacity; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; and UNITED STATES OF AMERICA,

*Defendants*.

Case No. 1:25-cv-15483

Judge Matthew F. Kennelly

**PLAINTIFFS' MOTION TO RECONSIDER DISMISSAL**

## INTRODUCTION

Plaintiffs ask this Court to reconsider its dismissal of all but one of their claims before they had a full and fair opportunity to oppose the government's motion to dismiss. Plaintiffs limit their request for reconsideration to only two claims: (1) their animus claim, which they have never briefed in any context, and (2) their procedural due process claim, which the Court dismissed based, at least in part, on a misunderstanding of Plaintiffs' arguments.

The Court's dismissal of Plaintiffs' animus claim was erroneous in both substance and procedure. Substantively, the Court summarily dismissed the claim solely based on the Supreme Court's reasoning in *Mullin* that the government acted out of animus against TPS policy. This analysis overreads the effect of *Mullin* and appears to test the claim on its merits, rather than on its plausibility—the standard required on a motion to dismiss. Procedurally, the dismissal occurred with scant briefing by the government (the government's motion to dismiss dedicates only two sentences to the animus claim, Dkt. 110 at 25–26), no briefing by Plaintiffs, and little to no argument by either party.

As to Plaintiffs' procedural due process claim, the Court mistakenly held that the judicial review bar applied to aspects of Plaintiffs' arguments, characterizing them as challenges to the substantive aspects of the Termination. But Plaintiffs' due process challenge is about whether or not the government provided the procedures Congress mandated—procedures which guard against the erroneous deprivation of TPS holders' protected liberty and property interests. Plaintiffs do not challenge the underlying reasoning of the government's decisionmaking. And regardless, the TPS statute's jurisdiction-stripping provision does not apply to constitutional claims; thus, neither process-based nor substantive challenges regarding constitutional issues are barred. Moreover, the

Court did not consider how the Termination implicates the individual property and liberty interests of thousands of TPS holders, which is the reason why due process must be afforded here.

## PROCEDURAL BACKGROUND

Plaintiffs, six Burmese TPS holders, brought this class action to challenge the unlawful termination of TPS for Burma, a country deep in the throes of humanitarian crisis. After the Supreme Court's ruling in *Mullin v. Doe*, 146 S. Ct. 2121 (2026), interpreted the TPS statute's jurisdictional bar to preclude Plaintiffs' non-constitutional claims, Plaintiffs filed an amended complaint on July 14, 2026, alleging new claims, including arguments that the DHS Secretary's termination of Burma's TPS was *ultra vires*, violated Plaintiffs' procedural due process rights, and was unconstitutionally motivated by the government's animus toward TPS holders. *See* Dkt. 90. On July 15, 2026, Plaintiffs moved for an administrative stay and an expedited briefing schedule for their forthcoming renewed motion to postpone based on the *ultra vires* and procedural due process claims alone. Dkt. 92. The Court granted the administrative stay to allow for fulsome consideration of the motion (Dkt. 97), which was filed on July 20, 2026 (Dkt. 99), and heard by the Court on August 4, 2026. Dkt. 113. The Court ordered the administrative stay to remain in effect until August 7, 2026, with the understanding that the Court would rule on the renewed motion to postpone prior to its expiration. *Id.*

Shortly before the hearing, on July 28, 2026, Defendants filed motions to stay discovery and to dismiss all of Plaintiffs' claims, including the equal protection arguments. Dkt. 108, Dkt. 110. The government did not seek expedited resolution of either motion. *Id.* The next day, the Court issued a text-only order, advising the parties that their "discovery-related motions and the defendants' motion to dismiss (the motion to dismiss at least preliminarily) may also be discussed

at the in-person hearing" set for August 4, 2026. Dkt 111. The Court did not set a briefing schedule on the government's new motions ahead of the hearing.

At the hearing, the parties primarily focused their arguments on Plaintiffs' *ultra vires* and procedural due process claims, the two claims that were the subject of Plaintiffs' renewed motion to postpone. *See* Hearing Transcript, August 4, 2026 ("Hearing Tr."), Ex. 1. Discussion of Plaintiffs' equal protection claims was limited to two brief exchanges between the Court and Plaintiffs' counsel prompted by the Court's questions about the impact of *Mullin*'s equal protection analysis. *Id.* at 13:8–16:5, 29:1–30:6. The government's counsel did not discuss the equal protection claims at all, nor did he affirmatively argue the motion to dismiss related to any claim. At the conclusion of the hearing, the Court reiterated that it would issue a decision before expiration of the administrative stay on Friday. Hearing Tr. 35:7–9. The Court's subsequent minute entry summarizing the proceedings stated: "In person motion hearing held on 8/4/2026. Oral argument heard on the plaintiff's motion for preliminary injunction [98]. The matter is taken under advisement." Dkt. 113. On August 7, 2026, this Court denied Plaintiffs' postponement motion and dismissed all claims aside from the race-based equal protection claim. Dkt. 115 ("Order").

## ARGUMENT

### I. Legal Standard

#### A. Motion to Reconsider

Federal Rule of Civil Procedure 54(b) allows for non-final orders to "be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." A party moving for reconsideration "must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 955 (7th Cir. 2013). "A manifest error of law or fact under this standard occurs 'when there has been a significant change in the law or facts since the parties

presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it.'" *Hendricks v. Lauber*, No. 16 C 627, 2017 WL 4899301, at *1 (N.D. Ill. Oct. 24, 2017) (quoting *United States v. Ligas*, 549 F.3d 497, 501–02 (7th Cir. 2008)). This includes instances when a court "misapprehend[s] the limited scope of [a] claim." *Mitchell v. JCG Industries*, 842 F.Supp.2d 1080, 1087 (N.D. Ill. 2012) (granting reconsideration when court mistook the nature of the movant's claim, which concerned the establishment of an unpaid wage violation under state law rather than a determination of the appropriate wages under a collective bargaining agreement). In cases where a party did not have the opportunity to fully brief the issues presented for reconsideration, courts need not strictly apply the standards governing motions for reconsideration. *See Flanagan v. Methodist Hosp. of Chicago*, No. 95 C 7287, 1996 WL 374131, at *1, n.1 (N.D. Ill. June 28, 1996); *Molex v. Wyler*, 334 F.Supp.2d 1083, 1085 (N.D. Ill. 2004).

**B. Rule 12(b)(6) Motion to Dismiss**

A motion under Rule 12(b)(6) tests the sufficiency of the complaint under the plausibility standard, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), not based on the merits of the suit, *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation modified). Under this standard, "a plaintiff's claim need not be probable, only plausible: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). Thus, to survive a motion to dismiss, Plaintiffs' "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To meet this plausibility standard, the complaint must supply "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting Plaintiffs' allegations. *Id.* at 556. In deciding a Rule 12(b)(6) motion, this Court must accept as true all well-

pleaded facts in Plaintiffs' complaint and draw all reasonable inferences in their favor. *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (citation modified).

## II. This Court Should Not Dismiss Plaintiffs' Animus Claim

### A. Plaintiffs Did Not Have an Opportunity to Brief the Claim

Reconsideration is warranted because the Court dismissed Plaintiffs' animus-based equal protection claim before Plaintiffs had an opportunity to fully brief or respond to Defendants' motion to dismiss the claim. A court can "commit[] manifest error by making its decision outside the adversarial issues properly presented by the parties." *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Intern. Inc.*, 616 F.Supp.2d 805, 829 (N.D. Ill. 2009), on reconsideration in part (May 13, 2009) (granting reconsideration when summary judgment relied on an argument raised for the first time on reply with no opportunity for response); *Moreno v. Napolitano*, No. 11 C 5452, 2019 WL 13496797, at *1 (N.D. Ill. July 22, 2019) ("The Court acknowledges that granting an opposed motion without briefing or argument could be a compelling basis for a motion for reconsideration."); *Molex*, 334 F.Supp.2d at 1090 (granting motion to reconsider in part after previously dismissing complaint without allowing claimant opportunity to brief the issues).

Plaintiffs' request for reconsideration does not constitute an attempt to "rehash[] previously rejected arguments or argu[e] matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Rather, Plaintiffs raise arguments in support of their animus claim for the first time because they were never afforded an opportunity to file a brief opposing dismissal. (Nor did Plaintiffs ever affirmatively brief the claim since it was not a basis for their renewed motion to postpone.) And while Plaintiffs touched on the animus claim at the postponement motion hearing

(Hearing Tr. at 13:8–16:5, 29:1–30:6), they reasonably believed—based on both standard practice and the Court's explicit representation that argument on the motion to dismiss was only preliminary—that they would have an opportunity to fully address the government's motion to dismiss in a response brief.[1] The Court's Order itself makes clear that the Court dismissed the animus claim without the benefit of the "adversarial issues [being] properly presented by the parties." *Del Monte*, 616 F.Supp.2d at 829. Specifically, the Order dedicated a scant three sentences to the animus claim, dismissing it as foreclosed by the preliminary factual findings in *Mullin.* Dkt. 115 at 25. Justice requires that the Court reconsider dismissal of the animus claim, taking into account Plaintiffs' arguments, *infra* II.B., that explain the distinctions in procedural posture, legal argument, and facts between this case and *Mullin.*

**B. Plaintiffs Have Plausibly Alleged Animus Toward TPS Holders**

Plaintiffs have sufficiently stated a claim that the government terminated TPS for Burma based on animus towards TPS holders themselves, rather than just hostility towards TPS as a policy. Government actions "born of animosity towards the class of persons affected" cannot withstand constitutional scrutiny. *Romer v. Evans*, 517 U.S. 620, 634 (1996). "[T]he hallmark of animus jurisprudence is its focus on actual . . . *motive*," and the "types of motive [that] may be equated with animus" have fallen "somewhere on a continuum of hostility towards a particular group." *Bishop v. Smith*, 760 F.3d 1070, 1099 (10th Cir. 2014) (Holmes, J. concurring) (emphasis in original). On the more extreme end of that continuum is animus that manifests as "a bare . . . desire to harm a politically unpopular group." *U.S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 534 (1973); *see also Esmail v. Macrane*, 53 F.3d 176, 179–80 (7th Cir. 1995) (finding a plausible equal protection claim where the challenged action was alleged to be based on a government

[1] Indeed, the parties had agreed to a briefing schedule on the government's motion to dismiss, which they intended to present to the Court, that contemplated two weeks for Plaintiffs' response brief.

official's "malignant animosity" towards the person harmed); *Olech v. Village of Willowbrook*, 160 F.3d 386 (7th Cir. 1998), *aff'd on other grounds*, 528 U.S. 562 (2000) (plaintiff sufficiently alleged an equal protection claim that the government refused to provide him services "for no reason other than a baseless hatred"). The Supreme Court has also found unconstitutional animus where the objective was to exclude a particular group from a community based on an "irrational prejudice" against that group, *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 449 (1985), and where the classification of persons was "undertaken for its own sake," *Romer*, 517 at 635. Regardless of where along the continuum it falls, governmental motivation that "involves hostility to a particular group . . . implicates the animus doctrine." *Bishop*, 750 F.3d at 1100 (Holmes, J. concurring). And animus towards a particular group "can never be a legitimate governmental interest." *Moreno*, 413 U.S. at 534.

Plaintiffs' amended complaint is replete with facts that, accepted as true, plausibly allege that the government terminated TPS for Burma due to animus towards TPS holders. These facts include a mismatch between the termination decision and the factual record pertaining to conditions in Burma, *see* Dkt. 90 ¶¶ 52-54, 56-57,60-67; multiple inflammatory statements from former DHS Secretary Noem, President Trump, and other administration officials disparaging TPS holders and immigrants from TPS-designated countries, *id.* ¶¶ 124, 127, 130, 136, 138, 144, 148, 152–155; the termination of TPS for more than a dozen countries that remain in crisis, *id.* ¶¶ 93–120, 164; President Trump's Travel Ban covering nationals from several TPS-designated countries, *id.* ¶¶ 157, 158; the administration's efforts to indefinitely suspend immigration benefits for nationals from Travel Ban countries, thus preventing TPS holders from obtaining permanent or otherwise stable status, *id.* ¶¶ 158, 160; and the government's significant exertion to strip TPS holders of all protections as quickly as possible in the wake of the *Mullin* decision. *Id.* ¶ 163. In

stark contrast to its hostile conduct towards TPS holders, the government has prioritized humanitarian relief for Afrikaners in South Africa. *Id.* ¶ 150. This constellation of facts allows this Court to draw the reasonable inference that the government's termination of TPS for Burma was "born of animosity" towards TPS holders. That is sufficient to survive a motion to dismiss.

*Mullin* does not compel a different result. The government argues that *Mullin*'s recognition of the government's hostility towards TPS policy as a plausible race-neutral explanation for the TPS terminations forecloses any inference of "bare animus" towards TPS holders. Dkt. 110 at 17–18. But consistent with this Court's reasons for declining dismissal of Plaintiffs' race-discrimination claim, *Mullin* does not control the government's motion to dismiss Plaintiffs' animus claim. Dkt. 115 at 24–25. Specifically, the procedural posture of the *Mullin* decision limits its import in the motion to dismiss context. *Mullin* was "decided under a different standard"—a likelihood of success standard—rather than the plausibility standard that governs here. *Id.* at 25. And under the plausibility standard, the complaint need only supply "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting Plaintiffs' allegations. *Twombly*, 550 U.S. at 556. Here, Plaintiffs have already advanced discovery requests—such as requests for documents and communications concerning the government's efforts to end or limit TPS—that are likely to yield more evidence of the government's bare animus towards TPS holders beyond what is reflected in public statements. Dkt. 101 at 8-11. Discovery obtained pertaining to the government's termination of TPS for other countries underscores that likelihood. For example, discovery about the government's decisionmaking in parallel TPS litigation revealed emails among DHS officials confirming a last minute, 180-degree reversal from a recommendation to automatically extend Haiti's TPS to the decision to terminate it. Dkt. 88 at 4. Moreover, in permitting Plaintiffs' race-discrimination claim to move forward, this Court already recognized

the plausibility of Plaintiffs uncovering evidence to prove that claim under the "sensitive inquiry" required by *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977). Dkt. 115 at 24. Plaintiffs' animus claim, which rests on similar factual content, should fare no differently at the motion to dismiss stage. Indeed, *Mullin*'s equal protection analysis bears even less on Plaintiffs' animus claim, as the only equal protection claim that *Mullin* even considered was a race-based one.

That *Arlington Heights* does not apply to Plaintiffs' animus claim is of no moment, as animus jurisprudence also demands a more searching inquiry that, unlike traditional rational-basis, permits the Court to root out the government's actual motive. *See Lawrence v. Texas*, 539 U.S. 558, 580 (2003) (O'Conner, J. concurring) (where a law exhibits "a desire to harm a politically unpopular group," the Supreme Court has "applied a more searching form of rational basis review to strike down such laws under the Equal Protection Clause."); *Bishop*, 760 F.3d at 1099 (Holmes, J. concurring) ("Sometimes the animus cases are said to apply 'heightened rational-basis review,' or—more colorfully—'rational basis with teeth, or 'rational basis plus.'") (citation modified); *Romer*, 517 U.S. at 633 ("If the adverse impact on the disfavored class is the apparent aim of the legislature, its impartiality would be suspect.") (quoting *U.S. R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 181 (Stevens, J. concurring)); *Halgren v. City of Naperville*, 577 F.Supp.3d 700, 753 (N.D. Ill. 2021) (recognizing that if the purpose of the law was to punish a "politically demonized" group, the court should conduct a more searching form of judicial inquiry than traditional rational-basis review). And under this heightened rational-basis review, courts have probed beneath stated government interests that are innocuous on their face to surface unconstitutional animus. *See e.g.*, *Cleburne*, 473 U.S. at 448–50 (rejecting several facially legitimate reasons the city gave for requiring a special permit for a home for mentally disabled people because the court's analysis

revealed that the requirement, at its core, "rest[ed] on an irrational prejudice"); *Romer*, 517 U.S. at 635 (court declined to credit the rationale of freedom of association as a legitimate justification for a law prohibiting any anti-discrimination protections for LGBTQ individuals because the breadth of the law demonstrated the real purpose was to make the LGBTQ "unequal to everyone else"). Consequently, the Supreme Court's acceptance of antipathy towards TPS policy as a plausible justification for the government's decisionmaking does not necessarily defeat Plaintiffs' animus claim on the merits, much less on a motion to dismiss. Instead, this Court can and should—when the time comes—conduct a searching inquiry into whether animus against TPS holders underlies the government's animus against the policy. Put differently, if the government's hostility towards the policy is determined to be rooted in animus towards TPS holders as a group, Plaintiffs will prevail on their animus claim. But at this stage, Plaintiffs need only allege sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiffs' complaint clears that bar.

Finally, the *Mullin* decision itself recognizes the limits of its findings. Specifically, *Mullin* was a decision pertaining to interim—not final—relief, wherein the Supreme Court made "only a predictive—not a final—decision about the outcome of the case." *Mullin v. Doe*, 146 S. Ct. 2121, 2137 (2026). Consequently, this Court is not bound by the Supreme Court's preliminary factual findings.

**III. This Court Should Reconsider Dismissal of the Procedural Due Process Claim**

This Court dismissed Plaintiffs' procedural due process claim on the grounds that the government's failure to follow the TPS statute's mandated periodic review procedure does not rise to a constitutional violation. *See* Dkt. 115 at 21. However, the Court misapprehended Plaintiffs' arguments and erroneously held elements of the argument were barred from review.

The Court rejected Plaintiffs' procedural due process claim in part because it held that Plaintiffs' arguments regarding the government's insufficient notice and assessments of country conditions are "challenge[s] to the merits of the decision or APA review—both barred after *Mullin*—not . . . due process claim[s]." Dkt. 115 at 20. But the TPS statute does not bar review of violations of TPS holders' constitutional rights. *See id.* (adhering to the assumption that constitutional review is permitted under the TPS statute and noting the government's concession to the Supreme Court on the matter). And the challenge is not to the government's substantive determination itself but to whether it provided the statutorily required process. Regarding notice, this Court previously held that "the Court cannot discern a genuine basis for the Secretary's action in the record and finds it more likely that the decision to terminate TPS was not actually rooted in the reasons cited in the notice." Dkt. 51 at 44. And regarding country conditions, the Court held that the record "suggests that the Secretary did not review the evidence regarding any of these countries." *Id.* at 36. These holdings still apply in the context of review of a constitutional claim, because the question of whether the government engaged in the constitutionally required process is not barred.[2] Limiting constitutional review of whether the government complied with Congress's mandated process here would render the text of 8 U.S.C. § 1254a(b)(3) meaningless—Congress did not intend to remove any teeth for the structure it created to protect TPS holders from arbitrary deprivations of their benefits. *See* 135 Cong. Rec. H7477 (Oct. 25, 1989) (discussing how future nationality-based protections would be based on "objective factors" and "identifiable conditions" rather than "the vagaries of our domestic politics.")

---

[2] While Plaintiffs are not challenging the substance of Defendants' decisionmaking as part of their procedural due process claim, constitutional claims that include challenges to substantive aspects of the TPS termination are not barred by 8 U.S.C. § 1254a(b)(5)(A). Substantive evidence may support Plaintiffs' equal protection claim where it reveals unconstitutional discriminatory motives for the decision to end TPS.

In addition, the Court mistakenly held that the alleged statutory violations do not amount to a due process violation. But once a protected interest is established,[3] courts must determine "what process the State provided, and whether it was constitutionally adequate." *Orozco v. Dart*, 64 F.4th 806, 817 (7th Cir. 2023). The Plaintiffs do not argue for a rule that *every* failure to follow Congress's enacted statutory procedures would create a constitutional issue, but here, those failures violated Plaintiffs' due process rights where (1) Plaintiffs held constitutionally protected interests and (2) the statutory scheme is consistent with core aspects of due process.

Under the test from *Mathews v. Eldridge,* courts consider "1) the private interest affected; 2) the risk of erroneous deprivation, and the probable value, if any, of additional or substitute procedural safeguards; and 3) the government's interest, which may include the fiscal and administrative burdens that additional procedures would impose." 424 U.S. at 335. *Mathews* recognized that "(d)ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Id.* at 334 (citation modified). Instead, "due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (citation modified). "[A] person receiving . . . benefits under statutory and administrative standards defining eligibility for them has an interest in continued receipt of those benefits that is safeguarded by procedural due process." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972). Indeed, a fundamental purpose of the Due Process Clause is "to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined." *See id.* at 577.

[3] Plaintiffs renew their prior arguments regarding why TPS holders have established liberty and property interests given the mandatory benefits conferred under the statutory scheme. *See* Pls'. Renewed Mem. in Supp. of Mot. to Postpone, Dkt. 99 at 17–19; *see also* Pls.' Reply in Supp. of Renewed Mot. to Postpone, Dkt. 112 at 9–10.

Because TPS holders have protected liberty and property interests, Congress provided a process that is consistent with the flexibility described in *Mathews* and still ensures sufficient process to ensure TPS holders are not arbitrarily and unconstitutionally stripped of their status. The process afforded here is unique to the circumstances of the TPS program—final TPS designations and terminations are made by a single authorized decisionmaker who is required to engage in fact-finding regarding country conditions in consultation with other agencies. *See* 8 U.S.C. § 1254a(b)(3)(A) (The Attorney General "*shall* review the conditions in the foreign state . . . and *shall* determine whether the conditions for such designation under this subsection continue to be met.") (emphasis in original). This fact-finding is not based on assessments of individual TPS holders' circumstances, but the Attorney General's decision regarding a country designation or termination, and the resulting conferral or ending of benefits based on that decision, significantly impacts the property and liberty interests of thousands of individuals and has constitutional weight. Thus, due process requires compliance with the statutory requirement of an objective assessment of Burma's country conditions to mitigate the risk of biased and erroneous deprivation of property and liberty interests. *See Withrow v. Larkin,* 421 U.S. 35, 47 (1975) (due process forbids practice that poses "risk of actual bias or prejudgment").

Statutory and regulatory procedures can reflect procedural due process protections such that violating those procedures violates the Due Process Clause. *See, e.g.*, *Vicente v. Kelly*, No. 1:26-CV-00598-TWP-MG, 2026 WL 969704, at *5 (S.D. Ind. Apr. 10, 2026) (recognizing in habeas challenge brought under Fifth Amendment and APA the need for "agencies to abide by their own regulations to ensure that people are afforded with some due process protections"); *N.A.L.R. v. Bondi*, No. 4:25-CV-00192-SEB-KMB, 2025 WL 2987239, at *2 (S.D. Ind. Oct. 23, 2025) ("Based upon the record provided, no reasons were provided by ICE and no informal

interview promptly occurred....ICE's failure to follow their own regulations violate the *Accardi* doctrine and [the plaintiff's] procedural due process rights.") (quoting *K.E.O. v. Woosley*, No. 4:25-CV-74-RGJ, 2025 WL 2553394, at *6–7 (W.D. Ky. Sept. 4, 2025); *Rombot v. Souza*, 296 F.Supp.3d 383, 388 (D. Mass. 2017) ("[W]here an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, like the opportunity to be heard, and [ICE] fails to adhere to it," the challenged action violates due process.) (citation modified).

The procedural protections in the TPS statute are consistent with the Court's recognition that "[t]he core of due process is notice and an opportunity to be heard." Dkt. 115 at 20 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). Beginning with notice, the notice here was insufficient because it failed to provide the true reasons for the decision. The Due Process Clause requires notice that is "reasonably calculated" to "convey the required information," *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950), and which provides a "meaningful opportunity to respond," *Senra v. Town of Smithfield*, 715 F.3d 34, 39 (1st Cir. 2013); *see also Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). A notice that is inaccurate, false, or misleading does not satisfy those requirements. And the statutorily required review of country conditions is an analog to "the opportunity to be heard" because this review serves as the basis upon which the government either confers or ends constitutionally-protected benefits. The government's failure to assess country conditions flouts the intention of Congress to ensure TPS holders are protected from "erroneous deprivation" in situations where country conditions still indicate return would be extremely dangerous.

In sum, Plaintiffs have stated a due process claim, and Defendants' failure to provide the process Congress required rises to a constitutional violation given the protected interests at stake

and the flexible nature of what due process requires. To decide otherwise renders 8 U.S.C. § 1254a(b)(3) meaningless, and Congress did not intend to include procedural protections that provide no recourse to TPS holders when their constitutional rights are violated.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully ask the Court to reconsider and reverse its dismissal of the procedural due process and animus claims.

Dated: August 17, 2026

Respectfully submitted,

ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
*/s/ Phi Nguyen*
Phi Nguyen
Dinesh McCoy
Helen Anne Schutz Lo
Razeen Zaman
Niji Jain
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 922-5932
dmccoy@aaldef.org
pnguyen@aaldef.org
alo@aaldef.org
rzaman@aaldef.org
njain@aaldef.org

THE LAW OFFICES OF JUNE J. HTUN
*/s/ June Htun*
June Htun
3643 West Belmont Avenue
Chicago, Illinois 60618
(773) 362-5000
june@htunlaw.com

INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
*/s/ Guadalupe Aguirre*
Guadalupe Aguirre
Pedro Sepulveda
One Battery Park Plaza, Fl 33
New York, NY 10004
(929) 246-0154
laguirre@refugeerights.org
psepulveda@refugeerights.org

Megan Hauptman
650 Massachusetts Ave NW
Suite 600
Washington, D.C. 20001
(646) 939-7329
mhauptman@refugeerights.org

*Counsel for Plaintiffs*