UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AUNG DOE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 25 C 15483 |
| | ) | |
| MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*, | ) | Judge Kennelly |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO RECONSIDER</u>**

Plaintiffs' motion to reconsider the court's August 7, 2026, dismissal of two of the plaintiffs' claims rests on two flawed premises. The first is procedural: that this court dismissed their animus equal protection claim before they "had an opportunity to fully brief or respond to Defendants' motion to dismiss the claim." Dkt. 117 ("Pls.' Mot.") at 5. The second is substantive: that this court "misapprehended" plaintiffs' procedural due process claim and "erroneously held elements of the argument were barred from review." *Id.* at 10. But the hearing transcript refutes plaintiffs' first premise, while this court's opinion refutes the second.

On the animus claim, the record shows the opposite of what plaintiffs' motion asserts. This court advised the parties in advance that the motion to dismiss would be discussed at the hearing. Dkt. 111. This court then asked plaintiffs' counsel at the outset whether he was "also going to talk about things that are relevant on the motion to dismiss," and counsel responded that he was "certainly happy to do that as well." Dkt. 117-1 ("Hearing Tr.") at 4. This court then raised the equal protection claims on its own and asked counsel how they "differ[ed] from the one that the Supreme Court said was insufficient." *Id.* at 13. Plaintiffs' counsel then discussed the bare-animus

theory in rebuttal, *id.* at 29; this court asked him to tell it "what you mean by 'bare animus,'" *id.* at 30; and this court read aloud the very passage of *Mullin v. Doe*, 146 S. Ct. 2121 (2026), that it found dispositive before asking counsel "why doesn't that dispose of the sort of modified equal protection claim that you referenced?" *Id.* at 34. Plaintiffs' counsel answered. *See id.* And at no point (either before the hearing, during the hearing, or in the days between the hearing and this court's ruling) did the plaintiffs ask for supplemental briefing or object that any claim was not ripe for decision.

Regarding plaintiffs' due process claim, this court did not misunderstand anything. It described the plaintiffs' theory accurately, assumed in the plaintiffs' favor that they held a protected interest and that the termination was adjudicative rather than legislative, and held that the procedural defects they allege do not amount to a constitutional violation. Dkt. 115 ("Order") at 20–21. That is a merits holding the plaintiffs dislike, not any sort of misapprehension over their argument.

Finally, and independently, plaintiffs' reconsideration motion should be denied because reconsideration would be futile. Even crediting every argument the plaintiffs now advance, both claims fail as a matter of law. Neither presents the "rare circumstances" that reconsideration demands. *Bedford v. DeWitt*, 695 F. Supp. 3d 998, 1001 (N.D. Ill. 2023).

**Background**

This court is familiar with the background of this matter, and defendants refer the court to the corresponding portions of their most recent opposition to plaintiffs' renewed motion for preliminary relief, Dkt. 106, as well as the memorandum defendants filed in support of their motion to dismiss, Dkt. 110. For present purposes, defendants will keep the relevant procedural history here brief.

On August 7, 2026, this court denied plaintiffs' renewed postponement motion and dismissed every claim but one. *See generally* Order. More specifically, this court dismissed the plaintiffs' ultra vires claim on the merits, holding that the Homeland Security Act transferred authority over the administration of the Temporary Protected Status ("TPS") program to the Secretary; held that 8 U.S.C. § 1254a(b)(5)(A), as construed in *Mullin v. Doe*, accordingly bars plaintiffs' APA claims; and dismissed plaintiffs' procedural due process and bare-animus equal protection claims on the merits. *Id.* at 12–25. However, this court denied dismissal of plaintiffs' race-based equal protection claim. *Id.* at 22–25. At the same time, this court *sua sponte* certified its decision for interlocutory appeal under 28 U.S.C. § 1292(b). *Id.* at 25.

On August 17, 2026, defendants petitioned the Seventh Circuit to take up this matter as an interlocutory appeal under § 1292(b) and to stay this litigation before this court. *See* Dkt. 118. That same day, though, plaintiffs moved for reconsideration under Federal Rule of Civil Procedure 54(b). Dkt. 117. The petition for interlocutory appeal is pending before the Seventh Circuit.

**Legal Standard**

Because this court's Order did not arrive at a final adjudication for all of the plaintiffs' claims, Rule 54(b) supplies the vehicle for reconsideration. *See, e.g.*, *Tapia-Rendon v. United Tape & Finishing Co.*, No. 21 C 3400, 2024 WL 406513, at *2 (N.D. Ill. Feb. 2, 2024) (Kennelly, J.) ("Federal Rule of Civil Procedure 54(b) permits a district court to revise a non-final order at any time before entering judgment."). Motions for reconsideration serve a limited purpose: "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (citation omitted). To that end, a motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale*

*de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Rather, "a motion to reconsider is only appropriate where a court has misunderstood a party, where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011), *overruled in part on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). And the movant bears a "heavy burden." *Bedford*, 695 F. Supp. 3d at 1001 (citing *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954–55 (7th Cir. 2013); *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006)).

**Argument**

**I. Plaintiffs Had Notice and a Full Opportunity to Be Heard on Their Animus Claim.**

Plaintiffs' motion's procedural argument depends on their assertion that this court decided the animus equal protection claim "outside the adversarial issues properly presented by the parties." Pls.' Mot. at 5 (quoting *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*, 616 F. Supp. 2d 805, 829 (N.D. Ill. 2009)). Yet the transcript attached to plaintiffs' motion shows that plaintiffs' animus claim was squarely presented, argued by their counsel, and probed by this court.

Start with notice. On July 29, 2026, this court issued an order explicitly advising the parties that their "discovery-related motions and the defendants' motion to dismiss . . . may" also "be discussed . . . at the in-person hearing[.]" Dkt. 111; *see also* Pls.' Mot. at 2–3 (acknowledging the order). Plaintiffs thus knew, nearly a week in advance, that defendants' motion to dismiss was on the agenda—partially due to the accelerated timetable that *they* had previously requested vis-à-vis their renewed motion for preliminary relief. *See* Dkt. 92, 94, 95, 96. And at the hearing itself, this

court asked plaintiffs' counsel whether he intended to address issues "relevant on the motion to dismiss" because the motions "kind of overlap," and counsel agreed to do so. Hearing Tr. at 4. At no point did plaintiffs' counsel ask for a briefing schedule regarding dismissal, request that the motion to dismiss be deferred, or even suggest that argument on the issues presented within defendants' motion to dismiss would be premature.

Turning to substance, this court raised the equal protection claims on its own initiative and pressed plaintiffs' counsel on how they "differ from the one that the Supreme Court said was insufficient." Hearing Tr. at 13. Counsel responded at length, conceding that "some of the statements are very similar" to those directly addressed by the Supreme Court in *Mullin v. Doe*, and that the plaintiffs' remaining hope was "that there may be evidence in discovery." *Id.* at 14. This court then observed that it was "having a hard time seeing daylight between" the plaintiffs' equal protection theories "and the one that got rejected in that case." *Id.* at 15.

In addition, plaintiffs' counsel specifically discussed plaintiffs' bare-animus theory. Hearing Tr. at 29 (noting how plaintiffs amended their "complaint to add a claim based on bare animus against a politically unpopular group, TPS holders"). This court then engaged that theory directly, asking "[a]nd therefore what?" and whether there was "a law that says that that gives rise to an equal protection claim because you're politically unpopular." *Id.* Counsel answered. This court then asked counsel to tell it "what you mean by 'bare animus,'" *id.* at 30, and counsel invoked *Romer v. Evans*, 517 U.S. 620 (1996), which is the same authority plaintiffs' motion now points to, *see* Pls.' Mot. at 6. Finally, this court located and read aloud the passage of *Mullin v. Doe* on which its ruling would turn, including the Supreme Court's observation that "one may oppose TPS in favor of tighter restrictions on immigration for economic or other reasons that have nothing to do with race," and directly asked plaintiffs' counsel: "why doesn't that dispose of the sort of

modified equal protection claim that you referenced?" *Id.* at 34. Again, plaintiffs' counsel responded with an answer. *Id.*

The transcript thus refutes the notion that any decision by this court was made "outside the adversarial issues properly presented." Pls.' Mot. at 5. Rather, a decision was made after this court identified the dispositive authority, put questions regarding that authority to counsel, and heard responses to those questions. With this in mind, the cases plaintiffs cite are nothing like this one. *See* Pls.' Mot. at 5. In *Del Monte*, for example, the court relied on an argument raised for the first time in a reply brief, where there was no opportunity for any response. 616 F. Supp. 2d at 828–29. In *Molex v. Wyler*, the claimant had no opportunity to address the issue at all. *See* 334 F. Supp. 2d 1083, 1085, 1090 (N.D. Ill. 2004). And the court in *Moreno v. Napolitano* dealt with "granting an opposed motion *without briefing or argument*." No. 11 C 5452, 2019 WL 13496797, at *1 (N.D. Ill. July 22, 2019) (emphasis added). In this case, there *was* an argument, including argument by the plaintiffs' counsel on this precise claim and in response to this court's direct questions.

Two further points confirm that no unfairness occurred. First, the plaintiffs are the parties who sought expedition. They moved for an administrative stay and an expedited schedule, Dkt. 92, and this court told them at the close of the hearing that "the stay only goes through this Friday, so you're going to get a decision before that." Hearing Tr. at 35. Fairness dictates that a party should not be allowed to demand a ruling on a compressed timeline and then complain that the ruling came too quickly. If plaintiffs believed their animus-based equal protection claim required briefing before any decision, the time to say so was during the days that followed this court's hearing, yet they filed nothing. Second, defendants did not argue the motion to dismiss at the hearing because this court told the government that the "other stuff I think is sufficiently covered

in the briefs." *Id.* at 28. Rather than any sort of unfairness to the plaintiffs, their observation that the "government's counsel did not discuss the equal protection claims at all," Pls.' Mot. at 3, reflects this court's management of its own hearing (that is, that this court only wanted to interrogate each counsel about certain merits issues) and not any procedural defect.

Finally, the argument that plaintiffs' animus claim was unbriefed is inaccurate. *See* Pls.' Mot. at 1. Defendants' memorandum addressed the equal protection count across four pages, including the rational-basis framework governing it, and expressly argued that the plaintiffs' "theory of hostility . . . equally fails because hostility *to a program* is policy disagreement, not animus toward persons," and that *Mullin v. Doe* "forecloses the inference of bare animus under *Romer v. Evans*." Dkt. 110 at 17–18 (emphasis in original). That the argument was made economically does not mean it was not briefed.

**II. There Was No Manifest Error in Dismissing Plaintiffs' Bare-Animus Claim.**

Even if the plaintiffs' new arguments were properly before this court, they would not change the result for at least three reasons. First, this court's Order drew exactly the distinction that *Romer* requires and that plaintiffs are pushing for. *See* Order at 25; Pls.' Mot. at 6–7, 9–10. Animus doctrine condemns "a bare . . . desire to harm a politically unpopular group." *USDA v. Moreno*, 413 U.S. 528, 534 (1973); *see also Romer*, 517 U.S. at 634–35. Applying that doctrine, this court held that "there is a distinction between bare desire to harm TPS holders and animus against TPS policy (and immigration as a whole)," and that the Supreme Court's reasoning in *Mullin v. Doe* "points to the latter, not the former" as the relevant choice made by the Secretary in this instance. Order at 25. That is not a merits determination smuggled into a Rule 12(b)(6) ruling, but a recognition that the plaintiffs' allegations, taken as true, are equally consistent with (indeed, better explained by) opposition to a program rather than hostility toward particular persons. *See*

*Romer*, 517 U.S. at 635 (discussing "legitimate public policies which justify the incidental disadvantages . . . impose[d] on certain persons"). And this is significant because under Supreme Court precedent, allegations that are "merely consistent with" liability, and for which an "obvious alternative explanation" exists, do not cross "the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 682 (2009).

Plaintiffs' motion never confronts this distinction. It instead catalogs allegations of hostility toward TPS and toward immigration generally—statements disparaging TPS-designated countries, the termination of designations for numerous countries, the so-called travel ban, and the pace of Homeland Security's implementation after *Mullin v. Doe*. *See* Pls.' Mot. at 7–8. But each one of these allegations is as consistent with a policy opposition to the expansive use of the TPS program as it is with animus toward foreign nationals who hold that status. And disagreement with a policy is not a constitutionally forbidden purpose. Were it otherwise, any decision to end a benefit program could simply be recast as animus against its beneficiaries.

Second, the authorities on which plaintiffs' motion depends arise in a different constitutional setting. This is shown by how the decisions plaintiffs point to all involved state or local action directed at people within the domestic community. *See* Pls.' Mot. at 6–9. None involved an Executive Branch judgment about which foreign states should remain designated under a discretionary humanitarian program. *See Mullin v. Doe*, 146 S. Ct. at 2138–39 (concluding that the immigration context dictates a slightly different analysis from the typical tests analyzing purported discrimination by state action). In that domain, rational-basis review governs, and the political branches receive substantial deference. *See Trump v. Hawaii*, 585 U.S. 667, 702, 704–05 (2018); *Fiallo v. Bell*, 430 U.S. 787, 792–93 (1977); *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976); *City of Chicago v. Shalala*, 189 F.3d 598, 609 (7th Cir. 1999). Terminating a TPS

designation under the statute's own review criteria is rationally related to legitimate governmental purposes, including enforcing the program's inherently temporary character.

Plaintiffs' response to this problem is to invoke a "more searching" or "heightened" rational-basis review. *See* Pls.' Mot. at 9. But the authorities plaintiffs' motion cites for that proposition are separate opinions (such as Justice O'Connor's concurrence in *Lawrence v. Texas*, 539 U.S. 558, 580 (2003), and Judge Holmes's concurrence in *Bishop v. Smith*, 760 F.3d 1070, 1099 (10th Cir. 2014)), not *holdings*. Moreover, none applies "rational basis with teeth" to immigration policymaking by the political branches. *See, e.g.*, *Diaz*, 426 U.S. at 79–80 ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens. . . . The fact that an Act of Congress treats aliens differently from citizens does not in itself imply that such disparate treatment is 'invidious.'"). The plaintiffs identify no decision of the Supreme Court or the Seventh Circuit doing so.

Third, the plaintiffs' reliance on the prospect of discovery to buttress their claims inverts the proper pleading standard. Specifically, plaintiffs' motion argues that their complaint need only supply "enough fact to raise a reasonable expectation that discovery will reveal evidence," Pls.' Mot. at 8 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)), and then points to discovery requests they have served and to materials produced in other TPS litigation, *id.* But *Twombly* conditions discovery on a party's ability to state a plausible claim. As the Supreme Court wrote just a few years after *Twombly*: "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. And the material the plaintiffs describe from parallel litigation (internal deliberations said to reflect a reversal of a recommendation concerning a different country that had TPS, *see* Pls.' Mot. at 8) relates to whether

the agency's stated rationale was pretextual, which itself is a non-constitutional challenge to a TPS determination that is unreviewable after *Mullin v. Doe*. *See* Order at 19.

### III. This Court Correctly Rejected Plaintiffs' Due Process Claim.

Plaintiffs' reconsideration motion fares no better on due process. Their argument on that score is that this court "misapprehended" the limited scope of their claim by treating parts of it as a barred challenge to the substance of the termination. *See* Pls.' Mot. at 10–11. But the Order shows otherwise, and plaintiffs' claim fails for at least six reasons. First, this court described the plaintiffs' due process claim just as the plaintiffs frame it now: that the Secretary's alleged failure to consult appropriate agencies, review country conditions, and publish the actual basis for the determination rendered the process constitutionally inadequate. Order at 19. This court then assumed in plaintiffs' favor that they possess a protected interest and declined to resolve whether the termination is legislative or adjudicative, holding instead that "[e]ven assuming that the plaintiffs prevail on those points, their alleged procedural defects do not state a due process violation." *Id.* at 20. A holding that assumes away the movant's hardest questions and rules against it anyway is not a misapprehension.

Second, this court correctly identified which components of the plaintiffs' due process claim are barred. More specifically, this court held that the assertion that "the rationale in the federal register was not the *actual* basis for the decision" amounts to "a challenge to the merits of the decision or APA review—both barred after *Mullin*—not a due process claim," and found the same of the purported failure to assess country conditions. Order at 21. Plaintiffs' motion does not identify any error with that reasoning but merely repeats that a constitutional label should change the analysis. *See* Pls.' Mot. at 11–12 & n.2. But this court separately reached the merits

of the due process theory, so the review-bar holding was not the sole basis for dismissal. Order at 20–21.

Third, the plaintiffs' due process claim remains a statutory-based claim cloaked in constitutional garb. *See* Pls.' Mot. at 12–14. And plaintiffs' counsel conceded as much at the hearing. Asked whether "the due process that you're contending that they're entitled to is the same due process that was previously the subject of the statutory claim," counsel answered "that's correct." Hearing Tr. at 6. When this court identified the three components—consultation, consideration of country conditions, and publication of the actual basis—and observed "[t]hat's the same thing," counsel agreed: "Those three elements are the same." *Id.* at 7. And asked whether there is "some case that says that a statutory process is what the due process clause requires," counsel acknowledged: "there is no case that specifically says exactly that." *Id.* at 8. The Seventh Circuit has held that "it is appropriate to consider the Constitution only if the statute and regulations are deficient," and that "intoning 'due process'" adds nothing to a claim that an agency failed to follow the process a statute requires. *Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011); *accord Czerkies v. U.S. Dep't of Labor*, 73 F.3d 1435, 1443 (7th Cir. 1996) (en banc) (discussing the impropriety of injecting "a claim for benefits 'cloaked in constitutional terms'" where there is a jurisdiction-stripping statute barring statutory claims).

Fourth, the plaintiffs have no protected interest in the continuation of Burma's TPS designation. A benefit is not an entitlement "if government officials may grant or deny it in their discretion," *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005), and an entitlement arises only where a statute places "substantive limitations" on discretion and mandates a particular outcome upon specified findings, *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *see also Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 462–63 (1989). The TPS statute does neither with

respect to extending a TPS designation. And other district courts have rejected the identical property- and liberty-interest theory in challenges to the termination of other countries' TPS designations, reasoning that because beneficiaries receive future benefits only if the Secretary decides to extend a designation, they have nothing "more than a unilateral expectation" in future eligibility, and that a termination "does not deprive anyone of" liberty interests but "merely makes them susceptible to future deprivations." *African Cmtys. Together v. Mullin*, No. 26-cv-11201, 2026 WL 2364398, at *7, *8 (D. Mass. Aug. 14, 2026); *see also African Cmtys. Together v. Mullin*, No. 26-cv-10278, 2026 WL 2408737, at *6 (D. Mass. Aug. 18, 2026); *African Cmtys. Together v. Mullin*, No. 25-cv-13939, 2026 WL 2274504, at *5 (D. Mass. Aug. 7, 2026) ("Plaintiffs . . . have no invocable individual liberty or property interests in the TPS designation itself."). This problem boils down to how an interest in the procedures themselves is not "property." *Olim*, 461 U.S. at 250 ("Process is not an end in itself.").

Fifth, the plaintiffs' invocation of *Mathews v. Eldridge*, 424 U.S. 319 (1976), remains misplaced. *See* Pls.' Mot. at 12. A country-wide designation decision rests on country conditions, applies uniformly to all Burmese beneficiaries, and adjudicates no individual's circumstances. Due process in that setting is legislative-style notice, which Congress made sure would be supplied in this context through *Federal Register* publication and a statutory wind-down period. *See United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 245–46 (1973); *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915); *Goros v. County of Cook*, 489 F.3d 857, 859–60 (7th Cir. 2007) ("[I]t has been understood for a long time that the due process clauses do not require hearings to resolve disputes about the meaning and effect of laws, regulations, and contracts."); *Dawson v. Milwaukee Hous. Auth.*, 930 F.2d 1283, 1286 (7th Cir. 1991). Plaintiffs do not contend

they were entitled to hearings before the TPS termination for Burma, and notice in the *Federal Register* was indisputably published. *See* Order at 20–21.

Sixth, the regulatory-compliance habeas cases plaintiffs marshal do not bridge the gap, *see* Pls.' Mot. at 13–14, as each involved an individualized detention or removal action in which the agency disregarded procedures owed to a particular (detained) person. None holds that a generally applicable determination about an entire country's designation triggers individualized processes, and none supports converting the TPS statute's interagency-consultation requirement into a commandment under the Fifth Amendment. As this court observed, if consultation were a due process requirement for every decision made by the federal government, "it presumably would apply to all sorts of government decisionmaking." Order at 21.

## IV. Reconsideration Would Not Alter the Outcome.

In sum, reconsideration is improper here because both of the claims discussed above fail on the merits and granting plaintiffs' motion would accomplish nothing beyond delay. Reconsideration relief is supposed "to correct manifest errors of law or fact," not to permit a losing party to supplement the record with arguments it could have made when the court asked about them directly. *Caisse Nationale*, 90 F.3d at 1269. And here, plaintiffs' motion identifies no controlling precedent this court disregarded, no fact it overlooked, and no new evidence. That is not enough. *See Burritt v. Ditlefsen*, 807 F.3d 239, 253–54 (7th Cir. 2015). What they have identified instead is their disagreement with the result, which is not a sufficient basis for reconsideration. *See, e.g.*, *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000).

**Conclusion**

For the foregoing reasons, plaintiffs' reconsideration motion should be denied.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Joshua S. Press

JOSHUA S. PRESS
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-7625
joshua.press@usdoj.gov