**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Aung DOE; Nina DOE; Thura DOE; Khin Thet DOE; Chu Let DOE; and Maung DOE, on their own behalf and on behalf of others similarly situated,<br><br>*Plaintiffs*,<br><br>– *versus* –<br><br>Markwayne MULLIN, Secretary, United States Department of Homeland Security, in his official capacity; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; and UNITED STATES OF AMERICA,<br><br>*Defendants*. | Case No. 1:25-cv-15483<br><br>Judge Matthew F. Kennelly |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO RECONSIDER DISMISSAL**

## INTRODUCTION

The government offers no compelling rebuttal to Plaintiffs' arguments demonstrating their entitlement to reconsideration of the Court's premature dismissal of their animus-based equal protection and procedural due process claims. Instead, the government attempts to downplay the fact that Plaintiffs did not have the opportunity to fully oppose dismissal of their claims. It also fails to contend seriously with the substance of the animus claim under the correct legal standard, insisting on a reading of *Mullin v. Doe* that stretches the Supreme Court's ruling far beyond its procedural context. On the procedural due process claim, the government ignores the issues at the core of Plaintiffs' request for reconsideration and restates arguments that disregard Burmese TPS holders' constitutionally protected interests. Finally, contrary to the government's contention, reconsideration of the Court's dismissal order would not be futile; rather, Plaintiffs' arguments, if properly considered, warrant a reversal allowing both the animus and procedural due process claims to proceed.

## ARGUMENT

### I. Dismissal of Plaintiffs' Animus Claim Was Procedurally and Substantively Erroneous

#### A. Plaintiffs Did Not Have a Fair Opportunity to Oppose Dismissal

At bottom, Plaintiffs did not have a full and fair opportunity to respond to the government's motion to dismiss their animus claim. Plaintiffs undisputedly did not have the opportunity to file a brief opposing the motion prior to the Court's dismissal order, and the government's arguments that this does not constitute a procedural error warranting reconsideration are unavailing.

The government contends that Plaintiffs themselves are to blame for this procedural deficiency because they "demanded a ruling on a compressed timeline." Defs.' Resp. to Pls.' Mot. to Reconsider 6 ("Defs.' Resp."), Dkt. 120. But the government misrepresents the facts. Plaintiffs

sought an expedited timeline *only* on their renewed motion to postpone—and they did so on the ground that Burmese TPS holders would be irreparably harmed if the termination went into effect before adjudication of Plaintiffs' new grounds for preliminary relief. Pls.' Renewed Mot. to Postpone, Dkt. 92. Indeed, the government's motion to dismiss was not even pending when the parties discussed—and the Court set—an expedited briefing schedule and hearing on Plaintiffs' renewed motion to postpone. Min. Entry, Dkt. 96; Order, Dkt. 97. And at no subsequent point did Plaintiffs or the government ask the Court to expedite the government's motion to dismiss either. Rather, the parties had agreed to a non-expedited proposed briefing schedule shortly before the Court decided Plaintiffs' motion to postpone and the government's motion to dismiss.

The government also faults Plaintiffs for not filing a request to brief the motion in the three-day window between the hearing and the Court's dismissal order. Defs.' Resp. 4–5, Dkt. 120. This argument is of no moment. Plaintiffs were not on notice that the Court would rule on the government's motion to dismiss on the same expedited timeline as their motion seeking preliminary relief. Consequently, they did not know they needed to act urgently or risk missing the chance to respond to the motion to dismiss. Instead, consistent with this Court's local rules that encourage parties to wait for the setting of a briefing schedule "within a reasonable time after [the] filing of [a] motion," *see* J. Kennelly Case P., Mot. Prac. (N.D. Ill.) (last visited September 3, 2026), Plaintiffs intended to present a stipulated briefing schedule to the Court for consideration on August 10, the first business day following the expected ruling on the motion to postpone. Plaintiffs reasonably believed—based on the Court's past practice in this case; the lack of any request, or other apparent reason, for expedited treatment of the motion to dismiss; the Court's notice explicitly stating that any discussion of the motion to dismiss at the August 4 hearing would be "preliminar[y]," Min. Entry, Dkt. 111; and the Court's post-hearing notice that it was taking

only the motion to postponement under advisement, Min. Entry, Dkt. 113—that the Court would not consider and decide the government's motion to dismiss without the benefit of full briefing. That Plaintiffs did not request a briefing schedule within three days after the August 4 hearing simply did not, under these circumstances, constitute unreasonable delay on their part.

Finally, discussion of the animus claim at the August 4 hearing was inadequate to fully address the myriad issues raised in the motion to dismiss. This is especially so because Plaintiffs believed any discussion of the motion to dismiss was preliminary, and as a result, counsel *only* addressed questions about the animus claim specifically raised by this Court. And even if that were not the case, Plaintiffs would nonetheless still be prejudiced by the inability to fully brief the issues. Briefing enables parties to present facts, arguments, case law, and other legal authority to the court in a comprehensive and cogent manner that oral argument simply does not. The Seventh Circuit's discussion of the relatively minor role that oral argument plays in appellate decisionmaking underscores this point: "While oral argument is important, it often comprises only a small percentage of the time judges spend on an appeal. Most of our time is spent reading briefs, reviewing the record, case law, statutes, and discussing the case with our law clerks." *U.S. v. Clark*, 134 F.4th 480, 482 (7th Cir. 2025). Thus, this Court's dismissal of Plaintiffs' animus claim without the benefit of full briefing by the parties constitutes procedural error warranting reconsideration.

**B. Plaintiffs Have Demonstrated that the Animus Claim is Facially Plausible**

The Court erred in rejecting the plausibility of Plaintiffs' animus claim based solely on the alternative explanation of antipathy towards TPS policy. The Supreme Court credited this alternative explanation as a "race-neutral" explanation in *Mullin* in the context of evaluating Haitian TPS holders' likelihood of success on a race-based equal protection claim. By contrast, the Court's task here was to assess whether Plaintiffs sufficiently stated a bare animus claim

against TPS holders under a plausibility standard. That procedural difference alone is dispositive, and this Court recognized as much in declining to dismiss Plaintiffs' own race-based equal protection claim, notwithstanding *Mullin*'s crediting of TPS program hostility as a "race-neutral" explanation for the termination of TPS for Haiti. Mem. Op. and Order 23, Dkt. 115 at 23–25. Moreover, since no equal protection claim based on animus against TPS holders was even before the Supreme Court, *Mullin* is also not substantively controlling here. Consequently, analysis of Plaintiffs' animus claim under federal pleading standards should fare similarly to their race-based equal protection claim at this stage of proceedings, even if the two claims may later fare differently on the merits. Specifically, on a 12(b)(6) motion to dismiss, the Court must "assume the well-pleaded factual allegations in the complaint are true," "draw reasonable inferences in [Plaintiffs'] favor, and "consider the allegations as a whole." *Nat'l Rifle Ass. of Amer. v Vullo*, 602 U.S. 175, 195 (2024). This Court's acceptance of the government's antipathy towards TPS policy as an alternative explanation that defeats Plaintiffs' animus claim runs counter to these obligations.

The Supreme Court's holding in *Vullo* illustrates this point. In *Vullo*—which postdates and applies the pleading standard articulated in *Twombly* and *Iqbal*—the Supreme Court concluded that it would be improper to "simply credit" the "obvious alternative explanation" proffered by the defendant to defeat the plaintiff's First Amendment claim on a motion to dismiss. *Id.* In a similar vein, the Seventh Circuit, in interpreting the "plausibility" standard in *Twombly* and *Iqbal,* has clarified that the Supreme Court did not intend for district courts "to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Instead, courts should simply ask "*could* these things have happened, not *did* they happen." *Id.* (emphasis in original); *see also In re Broiler Chicken Antitrust Litigation*, 290 F.Supp.3d 772, 802 (N.D. Ill.

2017) (where plaintiff's allegation of a conspiracy and defendants' innocent explanations for their conduct were *both* plausible, defendants' alternative explanations did not undermine the plausibility of plaintiff's conspiracy claims); *In re Plasma-Derivative Protein Therapies Antitrust Litigation*, 764 F.Supp.2d 991, 1002 (N.D. Ill. 2011) (To survive a motion to dismiss, "[i]t is not necessary that the factual allegations tend to exclude the alternative explanation offered by defendants. That is the standard appropriate for a summary judgment motion.").

As relevant here, these cases illustrate why this Court need not credit TPS program hostility as an alternative explanation for the government's conduct on a 12(b)(6) motion even if *Mullin* did so while reviewing a grant of preliminary relief. Specifically, *Vullo*, *Swanson*, and other decisions from this district make clear that an alternative—or even better—explanation for the government's conduct does not necessarily render Plaintiffs' animus claim implausible. Under the plausibility standard, Plaintiffs' factual allegations need not exclude hostility towards TPS policy as an alternative explanation for the government's conduct*, see In re Plasma-Derivative*, 764 F.Supp.2d at 1002; rather, they need only "give enough details" about the government's animus towards TPS holders "to present a story that holds together." *Swanson*, 614 F.3d at 404. Plaintiffs' hefty complaint detailing numerous disparaging statements about TPS holders and immigrants from TPS-designated countries; the administration's termination of TPS for Burma and numerous other countries that remain unsafe for return; other government actions targeting TPS holders and their access to immigration benefits; and the government's aggressive efforts to dismantle TPS protections to harm TPS holders as quickly as possible, Pls.' Mot. to Reconsider 8, Dkt. 117, easily clears that bar. And contrary to the government's suggestion otherwise, Plaintiffs do not rely on the prospect of discovery to establish plausibility. Instead, Plaintiffs' reference to discovery presupposes that the complaint's factual allegations satisfy the plausibility standard while

illustrating a *more* than "reasonable expectation that discovery will reveal evidence," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), that supports their facially plausible claim. Am. Compl., Dkt. 90; Pls.' Mot. to Reconsider 6–10, Dkt. 117.

The government alternatively argues that the animus doctrine cannot apply here because the challenged conduct involves an "Executive Branch judgment" in the immigration context and can thus only be subject to traditional rational-basis review. Defs.' Resp. 8, Dkt. 120. This argument fails for several reasons. First, the government is patently wrong that traditional rational-basis review always applies in the immigration context. Indeed, *Mullin* itself—which assumed that the *Arlington Heights* standard applies to the Haitian plaintiffs' equal protection claim—disproves the government's point. So does *Dep't of Homeland Sec. v. Regents of the Univ. of Ca.*, 591 U.S. 1, 34 (2020), which also applied *Arlington Heights* to evaluate an equal protection challenge to the government's rescission of DACA, an immigration program. Second, *Trump v. Hawaii*, 585 U.S. 667 (2018)—which the government cites in support of its position—is a case involving "immigration policymaking by the political branches," Defs.' Resp. 9, Dkt. 120, where the Supreme Court does in fact appear to apply "rational basis with teeth."

In *Hawaii*, while examining a presidential proclamation restricting entry into the United States from certain countries, the Supreme Court chose to depart from the deferential standard of review typically employed in cases involving the executive's discretion to admit or exclude foreign nationals. 585 U.S. at 702–05. Under that standard of review, articulated in *Kleindienst v. Mandel*, 408 U.S. 753, 769 (1972), courts ask only whether the executive gave a "facially legitimate and bona fide reason for its action." In *Hawaii*, instead of applying the *Mandel* standard, the Supreme Court stated it would "look behind the face of the [p]roclamation to the extent of applying rational basis review." 585 U.S. at 704. And to illustrate the type of the review it would conduct, the Court

pointed to three cases—*Romer*, *Moreno*, and *Cleburne*—in which it ostensibly applied rational-basis review yet struck down laws found to be animated by a desire to hurt a politically unpopular group *Id.* at 705. Even though the *Hawaii* Court ultimately found that the proclamation did not fit the pattern identified across *Romer, Moreno,* and *Cleburne*, its invocation of these cases suggests that the Court intended to apply the "rational basis plus" review employed in animus jurisprudence in an immigration context. In sum, that this case, unlike the animus cases Plaintiffs cite, involves immigration policymaking is a distinction that does not bear on the plausibility of Plaintiffs' claim.

## II. This Court Should Reconsider Dismissal of the Procedural Due Process Claim

Where TPS holders have constitutionally protected liberty and property interests, due process requires protections to limit the risk of erroneous deprivation. Here, Congress enacted procedures in the TPS statute that the government must heed when deciding whether to terminate TPS, and compliance with those procedures is consistent with the purpose of the Fifth Amendment. Yet, the Court misapprehended Plaintiffs' due process claim by disregarding aspects of the claim as judicially barred and failing to apply the *Mathews* framework to Plaintiffs' protected interests. The government fails to meaningfully address these issues in its response; it does not speak to the core aspects of Plaintiffs' arguments for reconsideration and instead further mischaracterizes Plaintiffs' claim.

First, the government begins by emphasizing that the Court described elements of Plaintiffs' claim accurately and assumed multiple issues in Plaintiffs' favor. Defs.' Resp. 10. Dkt. 120. But those issues are irrelevant to the Plaintiffs' arguments for reconsideration here. Plaintiffs' arguments are not about every assumption the Court made. Instead, Plaintiffs identified fundamental errors in the Court's analysis that mistakenly undermined the procedural due process claim. Pls.' Mot. to Reconsider 11, Dkt. 117. After correctly assuming that the TPS statute's jurisdictional bar does not apply to constitutional claims, the Court nonetheless held that *Mullin*

bars Plaintiffs' argument that the "rationale in the federal register was not the *actual* basis for the decision." Mem. Op. and Order 21, Dkt. 115. But this holding misinterprets Plaintiffs' due process claim as a challenge to the "merits of the decision," *id.* at 20, when it, in fact, is a challenge to the government's failure to follow required procedures. The Court's conclusion that it cannot review the government's failure to follow statutory process is also inconsistent with its own acknowledgment that the TPS judicial-review bar does not prohibit constitutional claims. *Id.* (adhering to the assumption that constitutional review is permitted under the TPS statute).

Second, given the jurisdictional bar does not apply, the notice's failure to set forth the real reasons for the termination is material to due process. The Due Process Clause requires notice that is "reasonably calculated" to "convey the required information," *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950), and that provides a "meaningful opportunity to respond," *Senra v. Town of Smithfield*, 715 F.3d 34, 39 (1st Cir. 2013); *see also Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). The Court already held that it "cannot discern a genuine basis for the Secretary's action in the record and finds it more likely that the decision to terminate TPS was not actually rooted in the reasons cited in the notice." Dkt. 51 at 44. The government has no response to this discussion other than to reiterate its argument that the entire issue is not reviewable and point out the Court's findings on other aspects of the claim. *See* Defs.' Resp. 10–11, Dkt. 120.

Third, Plaintiffs have not simply "constitutionalized" what is otherwise an argument based only on a violation of statutory process. The TPS statute includes benefits that, once granted to individuals, are not purely discretionary. "[C]ontinued receipt of those benefits . . . is safeguarded by procedural due process." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972). The government cites to the discussion of the claim at the hearing as decisive, but the fact that the "elements" of the procedural due process claim are based on "the same" statutory provisions that

were relevant to Plaintiffs' APA argument does not render them purely "statutory." *See* Defs. Resp. 11, Dkt. 120 (citing Hearing Tr. 7, Dkt. 117-1). A procedural due process violation based on statutory or regulatory violations can overlap with an APA claim. *See, e.g., Mansor v. United States Citizenship & Immigr. Servs.*, 830 F. Supp. 3d 1082, 1091-95 (W.D. Wash. 2025), amended, 824 F. Supp. 3d 1155 (W.D. Wash. 2026) (holding failure to provide work authorization to prima facie eligible TPS applicants was both a statutory violation under the APA and a Fifth Amendment due process violation); *Latif v. Holder*, 28 F. Supp. 3d 1134, 1163 (D. Or. 2014) (holding procedural deficiencies in no-fly list redress violated both the APA and Fifth Amendment).

Fourth, Plaintiffs have protected interests in the continued receipt of benefits consistent with the application of the procedural requirements in the TPS statute. TPS beneficiaries are entitled to employment authorization and protection from immigration detention and removal. 8 U.S.C. § 1254a(a)(1), (d)(4). TPS holders retain protected interests while Burma's designation remains in effect, even though the Attorney General may later determine that the statutory conditions for termination are met. Contrary to the government's argument, *see* Defs.' Opp 11–12, Dkt. 120, as well as other courts' analyses, *see African Cmtys. Together v. Mullin*, No. 26-cv-11201, 2026 WL 2364398, at *7, *8 (D. Mass. Aug. 14, 2026), that the government can make a future decision to terminate based on the statutory criteria does not render current TPS protections discretionary. *See Rock River Health Care, LLC v. Eagleson* 14 F.4th 768, 773–76 (7th Cir. 2021) (holding that nursing-care facility operators had a protected entitlement to Medicaid reimbursement at the legally prescribed rate, even though a later audit could establish a lawful basis for reducing that rate). Here, the TPS statute provides that the government "shall review" current conditions and "shall determine" whether the statutory conditions continue; absent a negative determination, the designation "is extended." 8 U.S.C. § 1254a(b)(3)(A)–(C). These are

"substantive predicates" with a mandated outcome, not decisions purely at the discretion of the agency. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 462-63 (1989). This Court previously held that the government neither engaged in a review of country conditions nor likely provided the real basis for its decisionmaking. *See* Mem. Op. and Order, Dkt. 51 at 36, 44. Those findings remain relevant here as applied to the due process challenge.

Fifth, Plaintiffs' discussion of *Mathews v. Eldridge*, 424 U.S. 319 (1976), is directly relevant to the Court's misapprehension of Plaintiffs' claims. While the government incorrectly focuses on the argument that TPS termination decisions are "legislative," Defs.' Resp. 12, Dkt. 120, it does not address the substance of Plaintiffs' discussion of *Mathews*.[1] What Plaintiffs argue is that where constitutionally protected property and liberty interests are at stake, statutory procedures imposed by Congress that track *Mathews*' requirements of notice and an opportunity to be heard provide a constitutional floor for government action. *See* Pls.' Mot. to Reconsider 12–13, Dkt. 117. The government must follow the procedural requirements in 8 U.S.C. § 1254a(b)(3)(A) because the statutory requirements are consistent with Congress's flexibility to enact due process protections. *See Mathews*, 424 U.S. at 334 ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."). To hold otherwise, and provide no review of whether the government followed the statutory procedures Congress required, renders those statutory provisions toothless. *See* Pls.' Mot. to Reconsider 11, Dkt. 117. The government has no explanation for why Congress would include process steps that are unreviewable and leave complete, unlimited discretion to the Executive Branch. Congress intended

[1] Furthermore, the TPS termination decision is adjudicative, rather than legislative, in nature. Where Congress supplied the governing policy specifying when a designation continues, the grounds permitting termination, a specific decisionmaker, and the country-level process for determining whether those grounds exist, the decisionmaking is fact-bound and not a legislative-type judgment. 8 U.S.C. § 1254a(b)(2)(B), (b)(3)(A)–(C).

for the statute to afford real assurances to TPS holders, as indicated by the legislative history. *See* 135 Cong. Rec. H7477 (Oct. 25, 1989) (discussing prior to TPS enactment how nationality-based protections would be changed to be based on "objective factors" and "identifiable conditions" rather than "the vagaries of our domestic politics.").

Sixth, the government argues that cases involving procedural due process violations in the context of regulatory violations are inapposite. *See* Defs.' Resp. 13, Dkt. 120. The government emphasizes that those cases relate only to procedures owed to individuals but do not seriously address why procedural due process does not also apply to *statutory* protections designed to prevent erroneously stripping benefits from a group of people who each individually holds a constitutionally protected interest. *See, e.g.*, *Vicente v. Kelly*, No. 1:26-CV-00598-TWP-MG, 2026 WL 969704, at *5 (S.D. Ind. Apr. 10, 2026) (recognizing in habeas challenge brought under Fifth Amendment and APA the need for "agencies to abide by their own regulations to ensure that people are afforded with some due process protections"). They also cite this Court's holding to argue that if consultation were a due process requirement for every decision made by the federal government, "it presumably would apply to all sorts of government decisionmaking." Defs.' Resp. 13, Dkt. 120 (citing Mem. Op. and Order 21, Dkt. 115). But Plaintiffs do not argue that *every* government decision requires consultation based on due process, nor that every time Congress includes a consultation requirement in the statute, the failure to consult would rise to a constitutional violation. What Plaintiffs argue is that *where constitutionally protected property and liberty interests are at stake*, mandatory statutory procedures implemented by Congress to protect those interests—consistent with the flexible standard in *Mathews*—must be heeded. Once the government confers a benefit and associated protected interests, it may not terminate that benefit in an arbitrary manner. *See Roth*, 408 U.S. at 576–77 (describing required process elements after

a benefit derived by statute is conferred). The government ignored statutorily mandated procedures when it terminated TPS for Burma and, in doing so, violated Plaintiffs' due process rights.

For these reasons and those discussed in Plaintiffs' opening brief, the Court should reconsider its dismissal of Plaintiffs' procedural due process claim and allow that claim to move forward.

**CONCLUSION**

Based on the foregoing, Plaintiffs respectfully ask the Court to reconsider and reverse its dismissal of the animus and procedural due process claims.

Dated: September 8, 2026

Respectfully submitted,

ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
*/s/ Dinesh McCoy*
Dinesh McCoy
Phi Nguyen
Helen Anne Schutz Lo
Razeen Zaman
Niji Jain
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 922-5932
dmccoy@aaldef.org
pnguyen@aaldef.org
alo@aaldef.org
rzaman@aaldef.org
njain@aaldef.org

THE LAW OFFICES OF JUNE J. HTUN
/s/ *June Htun*
June Htun
3643 West Belmont Avenue
Chicago, Illinois 60618
(773) 362-5000
june@htunlaw.com

INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
/s/ *Guadalupe Aguirre*
Guadalupe Aguirre
Pedro Sepulveda
One Battery Park Plaza, Fl 33
New York, NY 10004
(929) 246-0154
laguirre@refugeerights.org
psepulveda@refugeerights.org

Megan Hauptman
650 Massachusetts Ave NW
Suite 600
Washington, D.C. 20001
(646) 939-7329
mhauptman@refugeerights.org

*Counsel for Plaintiffs*